1
2
3
4
5
6
7
8     IN THE UNITED STATES DISTRICT COURT
9     FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11
12    DAVID J. CARPENTER,                          NO. C 98-2444 MJJ
13                    Petitioner,                  ORDER
14        v.
15    ROBERT L. AYERS, Jr., Acting Warden          **DEATH PENALTY CASE**
      of California State Prison at San Quentin,
16
                      Respondent.
17
18
                            **Introduction**
19
20         The instant case arises from petitioner's conviction and death sentence for the first degree

21    murders of Ellen Hansen and Heather Scaggs, the attempted murder of Steven Haertle, the attempted

22    rape of Hansen, and the rape of Scaggs. *See People v. Carpenter*, 15 Cal.4th 312 (1997).  The

23    crimes were committed in Santa Cruz County, but following a change of venue, the case was tried in

24    Los Angeles County.[1]  The California Supreme Court affirmed petitioner's conviction and sentence

25    on direct appeal on April 28, 1997.  *Id.*  Petitioner's subsequent certiorari petition to the United

26    States Supreme Court was denied on January 20, 1998.  *See Carpenter v. California*, 522 U.S. 1078

27    (1998).

28
          [1] Following his trial in Los Angeles County, petitioner was tried, convicted, and sentenced
      to death in San Diego County for five murders that occurred in Marin County.  *See Carpenter*, 15
      Cal.4th at 344 n.1.

Petitioner filed his first state habeas petition on December 24, 1996; it was denied by the California Supreme Court on May 27, 1998. Prior to the denial of his state habeas petition, petitioner filed in the United States District Court for the Central District of California a request for the appointment of federal habeas counsel and a motion for change of venue. Petitioner's change of venue motion was granted on June 12, 1998, thereby transferring the instant habeas case to the Northern District.

Under the one-year limitation period set forth in 28 U.S.C. § 2244(d), petitioner's federal habeas petition was due by May 27, 1999. The Court, however, granted petitioner's motion to equitably toll the statute of limitations for five months, to and including October 27, 1999. *See* Order Denying Motion to Vacate and Granting in Part and Denying in Part Motion for Equitable Tolling at 38.[2] On October 22, 1999, petitioner filed in this Court a Petition for Writ of Habeas Corpus ("Original Petition")[3], a Notice of Additional Claims, and a Motion to Hold Proceedings in Abeyance, and filed in state court his second state habeas petition. On December 1, 1999, the California Supreme Court denied petitioner's second state habeas petition. On December 6, 1999, petitioner filed his First Amended Verified Petition for Writ of Habeas Corpus ("First Amended Petition") and withdrew the Motion to Hold Proceedings in Abeyance.

Respondent has filed a Motion to Dismiss First Amended Petition and Memorandum of Points and Authorities in Support Thereof ("Motion"). In his motion, respondent asserts a variety of procedural grounds that he contends requires dismissal of at least certain portions of petitioner's First Amended Petition. Petitioner has opposed respondent's motion. In addition to the first round of briefing, the parties have filed several rounds of supplemental briefing as well.

Respondent argues that certain of petitioner's claims should be dismissed because they are procedurally defaulted, because they fail to state a federal claim, or because they improperly rely on

---

[2] In the same order, the Court denied petitioner's request to toll the statue of limitations with regard to his unexhausted claims to and including thirty days from an order identifying unexhausted claims. *Id*.

[3] Because petitioner filed his federal petition after April 24, 1996, the date when the provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") went into effect, those provisions apply to the proceedings in this Court. *See Lindh v. Murphy*, 521 U.S. 320.

incorporation by reference to other claims. For the following reasons, respondent's motion to dismiss on these grounds is GRANTED in part and DENIED in part. This order resolves all of the procedural issues and outstanding motions that have been briefed by the parties.

**Discussion**

**I.      Cognizability and Incorporation by Reference**

**A.      Failure to State a Federal Question**

Respondent contends that federal habeas relief is only available for errors of federal law and that because a number of petitioner's claims allege a violation of state law only, they are not cognizable on federal habeas. Petitioner does not dispute that federal habeas relief is only available for errors of federal law but contends that all the claims cited by respondent do in fact involve a violation of federal law.

Certainly, it is true that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United Sates." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see Lewis v. Jeffers*, 497 U.S. 764, 78 (1990) ("federal habeas corpus relief does not lie for errors of state law"); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("[o]n federal habeas we may only consider whether the petitioner's conviction violated constitutional norms"). In *Jammal*, where the petitioner on federal habeas asserted that certain evidence was improperly admitted against him at his state trial in violation of his right to a fair trial, the Ninth Circuit elaborated on the interplay between state law and federal habeas corpus:

> [W]e note that failure to comply with state rules of evidence is neither a necessary nor sufficient basis for granting habeas relief. While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point.

*Jammal*, 926 F.3d at 919-20. Thus, the relevant question in the instant case is whether any of petitioner's claims for relief fail to assert a violation of federal law.

Respondent contends that Claims 2, 5, 10, 20, 22, 23, 24, 29, 32, 34, 36, 37, 38 and 44 allege violations of state law only. All of these claims, save Claim 2 (failure to instruct on diminished capacity defense) and Claim 32 (prosecutorial misconduct during rebuttal argument), involve challenges to the admissibility (or exclusion) of certain evidence at the guilt and/or penalty phases of petitioner's trial. Relying on *Estelle v. McGuire*, 502 U.S. at 67-68, respondent maintains that federal habeas corpus may not be invoked to review a trial court's decision regarding the admission of evidence. Respondent is incorrect.

In *McGuire*, a California state prisoner filed a federal habeas petition challenging his second-degree murder conviction for killing his daughter on the ground that prior injury evidence was erroneously admitted to establish battered child syndrome. *McGuire*, 502 U.S. at 66. The Supreme Court reversed the Ninth Circuit's holding that the admission of this evidence denied McGuire due process. *Id*. at 67. It began its analysis by criticizing the court of appeals for basing its conclusion in part on the finding that the evidence was admitted in violation of California law, and re-emphasized that "in conducting federal habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68. The Supreme Court then "turn[ed] to the question whether the admission of the evidence violated McGuire's federal constitutional rights." *Id*. Finding the evidence relevant to, and probative of, the issue of intent, the Supreme Court found that McGuire had not been denied due process. *Id*. at 69-70. The Supreme Court never called into question whether the admission of evidence at state trial *can* rise to the level of a federal due process violation. Indeed, a simple search of Ninth Circuit case law clearly establishes that the admission of evidence at a state trial can violate due process and is, therefore, a cognizable claim on federal habeas review. *See Jammal*, 926 F.2d at 919-21 (considering on federal habeas review whether admission of evidence at state trial rendered proceedings fundamentally unfair and in violation of due process); *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986) ("Kealohapauole claims that the admission of the videotape recording deprived him of due process under the fourteenth amendment, which is a cognizable claim under [28 U.S.C.] § 2254").

Respondent's related contentions regarding Claims 2 and 32, that alleged errors in the jury instructions at the state trial and prosecutorial misconduct during argument are not cognizable on federal habeas, are likewise devoid of merit.   The Supreme Court has reviewed federal habeas petitions filed by state prisoners involving claims that the failure to give a particular instruction and the prosecutor's closing argument rendered the petitioner's state trial fundamentally unfair and violative of due process.  *See e.g. Henderson v. Kibbe*, 431 U.S. 145, 154-55 (1977) (noting that relevant inquiry on federal habeas to challenge to state court's failure to give a particular "causation" instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process"); *Darden v. Wainwright,* 477 U.S. 168, 178-83 (1986) (analyzing whether prosecutor's comments during closing argument at state trial "so infected the trial with unfairness as to make resulting conviction a denial of due process," entitling Darden to federal habeas relief).  While both of these cases emphasize the limited role of federal habeas review in these contexts, *see Henderson*, 431 U.S. at 154,  *Darden*, 477  U.S. at 179-81, neither of these cases, nor any other case cited by respondent, establish that federal due process challenges to alleged instructional errors or prosecutorial misconduct during closing argument are not cognizable on federal habeas.

The Supreme Court and Ninth Circuit have recognized that the admission or exclusion of certain evidence, jury instructions, and the prosecutor's closing argument, even if occurring at a state trial, can amount to a federal due process violation in certain circumstances.  Petitioner alleges such circumstances were present in his case.   Those allegations may or may not be true, but it is not open to dispute that a federal due process violation is cognizable on federal habeas.  Ultimately, respondent fails to cite any authority that refutes petitioner's analysis and supports his own contention.  Therefore, respondent's motion to dismiss on this ground must be DENIED.

**B.     Incorporation by Reference**

Respondent objects to petitioner's practice of incorporating by reference the allegations from one claim into another claim.[4] The cases cited by respondent in support of his objection, however, address a different issue than the use of incorporation by reference. In *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995), the petitioner alleged that the prosecution's failure to turn over the arrest record of one its witnesses constituted a *Brady* violation but did not identify what arrests or convictions the witness had, or even whether the witness had any arrests or convictions at all. In *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994), the petitioner alleged that he was denied ineffective assistance of trial counsel when trial counsel failed to present evidence petitioner was not the shooter, but never identified what evidence trial counsel should have presented to show that petitioner was not the shooter. In both cases, the Ninth Circuit stated that such conclusory allegations, without any specific allegations as to what evidence existed and how it was favorable, were insufficiently specific to warrant habeas relief. *Id*; *Jones*, 66 F.3d at 204.

In *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990), also cited by respondent, the habeas petition was summarily dismissed because it stated only a state law claim and, therefore, petitioner was not entitled to habeas relief as a matter of law. Accordingly, the Ninth Circuit cases relied on by respondent do not support dismissal of the federal petition or striking portions of it that use the incorporation by reference procedure. Respondent's motion on this ground must be DENIED.

## II.     Procedural Default

### A.     Legal Framework

Under the doctrine of procedural default, federal courts will not review "a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Thus, if petitioner failed to comply with state procedural rules and was barred from litigating a constitutional claim in state court, the claim may be considered on federal habeas only if petitioner shows "cause" for the default and "actual prejudice" from failure to raise

---

[4] Respondent raises her incorporation by reference argument in Claims 1, 3-9, 11-18, 25, 26, 29, 35, 36, 38, 39, 40, 42, 44-48, 50-53, 55, 56, 61, 62, 64, 65, 67 and 68.

the claim, or demonstrates that failure to consider the claim will result in a fundamental miscarriage of justice. *See id.* at 750.[5]

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." *LaCrosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001), *citing Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983). A state law ground is interwoven with federal law if application of the state procedural rule requires the state court to resolve a question of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000), *citing Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). If the state court does not make clear that it is resting its decision on an independent and adequate state ground, it is presumed that the state denial was based at least in part upon federal grounds. *Calderon v. United States District Court ("Bean")*, 96 F.3d 1126, 1129 (9th Cir. 1996).

For a state procedural rule to be "adequate," it must be clear, well-established and consistently applied. *Id.* The issue of whether a state procedural rule is adequate to foreclose federal review is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965). The adequacy of a state procedural rule must be assessed as of the time when the petitioner committed the default. *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997).

The burden of proving the adequacy of a state procedural rule lies with the state. *Bennett v. Mueller*, 322 F.3d 573, 585–86 (9th Cir. 2003). Once the state has adequately pled the existence of an independent and adequate procedural ground as a defense, the burden to place that defense at issue shifts to petitioner, who "may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* at 586. The ultimate burden of proving adequacy, however, is the state's. *Id.*

### B.    Analysis

---

[5] Petitioner argues that even if the Court finds any of the state procedural rules to constitute an adequate and independent state ground, his claims are not subject to dismissal if petitioner is able to demonstrate that either the "cause and prejudice" or the "miscarriage of justice" exceptions are applicable. Petitioner also maintains that, as those exceptions typically require extra-record evidence, their applicability must await subsequent motions. Petitioner is correct on both fronts; accordingly, the parties have not briefed the "cause and prejudice" and "miscarriage of justice" exceptions. The Court will address those issues after further motions by the parties.

**1.** **Federal Procedural Bar**

Respondent contends that Claims 10, 21, 26-28, 30, 31, 44 and 47.H must be dismissed for failing to comply with California's established appellate procedure. Specifically, respondent maintains that those claims were asserted for the first time in state collateral proceedings, when they could have been raised on direct appeal. According to respondent, *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) established a federal procedural bar preventing habeas review of claims that were not raised in compliance with a state established appellate review process. Petitioner disputes respondent's interpretation of *Boerckel*, arguing that it did not establish a federal procedural bar, but rather simply addressed whether a petitioner in a non-capital case had to seek discretionary review of his or her claims from the state supreme court in order to satisfy the exhaustion requirement. Petitioner further argues that his case is distinguishable from *Boerckel* and that the Ninth Circuit's decision in *Park v. California,* 202 F.3d 1146 (9th Cir. 2000), demonstrates that respondent's argument is without merit.

Petitioner is correct. Nowhere in *Boerckel* does the Supreme Court indicate that it is announcing, for the first time, a federal procedural default rule separate from the established procedural default jurisprudence. Rather, *Boerckel* primarily addresses the exhaustion requirement, and specifically, whether a non-capital state prisoner must seek discretionary review before the state supreme court to satisfy the exhaustion requirement. There is no indication from *Boerckel* or subsequent cases that *Boerckel* created any new or additional procedural hurdles for federal habeas review. Accordingly, respondent's motion to dismiss Claims 10, 21, 26, 27, 28, 30, 31, 44 and 47.H on this ground is DENIED.

**2.** **State Procedural Bars**

**a.** **Contemporaneous Objection Rule**

Respondent contends that portions of Claims 5, 7, 21, 23, 28, 32, 34, 37, 38, 40, 41, 47.C, 50, 54 and 57 are procedurally barred on the ground that a contemporaneous objection was not made at

1   trial on the same ground asserted on direct appeal.[6]  Respondent also maintains that the

2   contemporaneous objection rule is an adequate and independent state ground.  Petitioner counters

3   that, at the time of his trial in 1984, the contemporaneous objection rule had a capital case exception

4   whose parameters were not clear and thus, this rule is not adequate to bar federal review.  He

5   additionally argues that more recent decisions by the California Supreme Court demonstrate that

6   California's contemporaneous objection rule is applied inconsistently and irregularly, that the state

7   supreme court's statutory duty to examine the complete record of proceedings to ensure the

8   defendant received a fair trial prevents a bar on federal habeas review, and that in certain claims

9   there are specific reasons why the contemporaneous objection rule, even if it were an adequate state

10  ground generally, does not bar consideration of those particular claims.

11      Petitioner's trial, including both the guilt and penalty phases, commenced in May of 1984

12  and concluded with imposition of the jury's death judgment on November 16, 1984.  First Amended

13  Petition at 2.  Accordingly, the relevant time for assessing the adequacy of California's

14  contemporaneous objection rule is May 1984.

15      It is well-established that California's contemporaneous objection requirement is

16  independent of federal law.  California law has long required a defendant to make a timely and

17  specific objection at trial in order to preserve a claim for appellate review.  *See, e.g.*, Cal. Evid. Code

18  § 353; *People v. Ramos*, 15 Cal. 4th 1133, 1171 (1997); *People v. Green*, 27 Cal. 3d 1, 27 (1980).

19  The United States Supreme Court has acknowledged that a state court's application of the

20  contemporaneous objection rule may constitute grounds for default.  *See Wainwright v. Sykes*, 433

21  U.S. 72, 87 (1977).  The Ninth Circuit has confirmed that the contemporaneous rule is independent,

22  and has honored defaults for failure to comply with the rule.  *See Vansickel v. White*, 166 F.3d 953,

23  957-58 (9th Cir. 1999); *Bonin v. Calderon*, 59 F.3d 815, 842-43 (9th Cir. 1995); *Hines v. Enomoto*,

24  658 F.2d 667, 673 (9th Cir. 1981).

25

26  _____

27      [6] The portions of each Claim that Respondent contends are barred by the contemporaneous
    objection rule are detailed in Respondent's Motion to Dismiss First Amended Petition, pages 73-

28  160.

Petitioner nonetheless argues that at the time of his trial in 1984, the contemporaneous objection rule was inadequate because it was inconsistently and irregularly applied. Specifically he maintains that, at the time of his trial, California's contemporaneous objection rule had a "capital case exception," the parameters of which were not clear. According to petitioner, this exception was created in *People v. Bob*, 29 Cal. 2d 321 (1946), and reaffirmed in *People v. Frank*, 38 Cal. 3d 711 (1985), where the California Supreme Court held that "[o]n an appeal from a judgment imposing the penalty of death a technical insufficiency in the form of an objection will be disregarded and the entire record will be examined to determine if a miscarriage of justice resulted." *Frank*, 38 Cal. 3d at 729 n. 3.

Although neither *Bob* nor *Frank* defined what a "technical insufficiency" might be, petitioner maintains that the California Supreme Court applied the alleged capital case exception to a situation where no objection was raised at trial in *People v. Easley*, 34 Cal. 3d 858 (1983). In *Easley*, the state court reached the merits of defendant's claims despite trial counsel's failure to object at trial, and in so doing cited *Bob*. 34 Cal. 3d at 863-64. Furthermore, the *Frank* court cited *Easley* and *Bob* in a footnote stating "[i]ndeed, this court recently cited *Bob* in support of its promise that in capital cases it will review trial errors even when defense counsel has failed to complain of them on appeal. (*People v. Easley* (1983) 34 Cal. 3d 858, 864.)". 38 Cal. 3d at 729 n. 3. Petitioner concludes that if a "technical insufficiency" includes the total failure to object, then at the time of petitioner's trial in 1984, the contemporaneous objection rule was neither clearly articulated nor consistently applied.

Respondent replies that petitioner's argument that *Bob* created a "capital case exception" is mistaken and the Court agrees. In *Bob*, defendant's trial counsel objected to the admission of a co-defendant's prior statement, arguing that the co-defendant was available to testify. Although the statement was clearly hearsay, counsel failed to specifically object on that basis. On appeal, the court observed that although counsel did not use the word "hearsay," a review of the record showed that the character of counsel's objection "must have fully apprized the trial court of the hearsay nature of the testimony called for." *Bob*, 29 Cal. 2d at 326. The court thus found counsel's objection sufficient and noted that it was appropriate to take a "liberal view of technical rules applicable to criminal cases generally." *Id.* at 328. Thus, a close read of *Bob* demonstrates that, at

10

most, it stands for the proposition that in a criminal case, an inartful objection will be deemed preserved if the record shows that the court understood the issue presented. *Bob* did not create a capital case exception, nor did it address a situation where no objection was raised at trial.

Similarly, *Easley* did not apply *Bob* to a situation in which no objection was raised at trial. The *Easley* court reviewed objections which had not been raised at trial within the context of an ineffective assistance of counsel claim. *Easley*, 34 Cal. 3d 870–72. The court reached the merits of defendant's claims only in the context of concluding that his counsel's performance was reasonably competent. *Id.* As such, *Easley* is consistent with the application of the contemporaneous objection rule.

Finally, *Frank* does not explain that *Bob* was the basis of its consideration of the merits of claims not objected to at trial in *Easley*, thus extending the "capital case exception" to total failures to object at trial. In *Frank*, the California Supreme Court discusses *Easley*'s citation to *Bob* and states that it cited *Bob* in support of its promise to review trial errors even when the defendant "has failed to complain of them on appeal." *See Frank*, 38 Cal. 3d at 729 n.3, *citing People v. Easley*, 34 Cal. 3d 858, 864 (1983). It is clear that the court was referring to its willingness in *Easley* to entertain arguments on appeal raised by the state public defender in an *amicus curiae* brief, even though the arguments had not been raised by the parties. The footnote cites the section of *Easley* in which the California Supreme Court discussed its decision to grant rehearing to address the issues raised in the *amicus curiae* brief, and not the section in which the court reviewed the merits of claims unobjected to at trial. *See Frank*, 38 Cal. 3d at 729 n.3, *citing Easley*, 34 Cal. 3d at 864. Thus, *Frank*'s discussion of *Easley*'s citation to *Bob* does not support the proposition that claims unobjected to at trial may be reviewed on appeal. The cases are anomalies, as is demonstrated by the many capital cases where the California Supreme Court refused to apply *Bob* or *Frank*. *See, e.g., People v. Poggi*, 45 Cal. 3d 306, 331 (1989) (rejecting petitioner's reliance on *Frank* and holding that, as here, "there was not a 'technical insufficiency in the form of an objection'; there was no objection at all"); *People v. Coleman*, 46 Cal. 3d 749, 777 (1988), *cert. denied*, 489 U.S. 1100 (1989); *People v. Anderson*, 43 Cal. 3d 1104 (1987).

1　　　Furthermore, as respondent correctly notes, there are numerous capital cases from the

2　California Supreme Court where, prior to petitioner's trial, the court consistently imposed the

3　contemporaneous objection rule and found that the petitioner's claims had been waived.  *See*

4　Respondent's Supplemental Response Brief for Motion to Dismiss First Amended Petition at pages

5　17-20 and cases cited therein.

6　　　In sum, *Bob, Easley* and *Frank* do not create an ambiguity in California's contemporaneous

7　objection rule.  These cases do not demonstrate that at the time of petitioner's trial in 1984, the

8　contemporaneous objection rule was inconsistently or irregularly applied in capital cases.

9　　　Petitioner also maintains that the contemporaneous objection requirement is inconsistently

10　and irregularly applied in non-capital cases.  In support of this argument, petitioner relies on *People*

11　*v. Hill*, 17 Cal. 4th 800, 820-22 (1998), where he maintains the California Supreme Court considered

12　the merits of a claim on appeal despite the absence of a contemporaneous objection.  This argument

13　may be quickly dismissed.  The California Supreme Court later found that *Hill* represented an

14　"extreme" situation.  *People v. Riel*, 22 Cal. 4th 1153, 1212-13 (2000).  Furthermore, a close look at

15　*Hill* shows that the court excused the lack of a contemporaneous objection to prosecutorial

16　misconduct in that particular case because it would have been futile, as the trial court had overruled

17　related objections and criticized defense counsel in the process.  *Id.* at 820-21.  The same is not true

18　here, and the isolated case of *Hill* does not render the contemporaneous objection requirement in

19　non-capital cases either inconsistent or irregular.

20　　　Petitioner also cites to *People v. Williams*, 17 Cal. 4th 148, 161 n.6 (Cal. 1998), for the

21　proposition that California courts consider claims advanced for the first time on appeal as a matter of

22　discretion, and are not guided by any particular rules.  Petitioner reads *Williams* too broadly.  To

23　begin with, to read it in such a way would require this Court to ignore the long line of California

24　cases confirming the contemporaneous objection rule, as well as Ninth Circuit authority recognizing

25　the bar as independent and adequate.  *See, e.g., Bonin v. Calderon*, 59 F.3d 815, 842-43 (9th Cir.

26　1995); *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981).  In addition, the *Williams* court

27　specifically stated that even if an appellate court is not prohibited generally from reaching a question

28

1   not preserved for appeal, this guideline did not apply to claims involving either the admission or

2   exclusion of evidence.

3       Petitioner also contends that, because the California Supreme Court has held it has a duty to

4   make an examination of the complete record in capital cases (*see Easley*, 34 Cal. 3d at 863-64), that

5   all record-based claims have been considered on the merits and thus that federal review is not

6   barred.  In support of this argument, petitioner cites *Beam v. Paskett*, 3 F.3d 1301, 1306-07 (9th Cir.

7   1993), where the court examined Idaho's mandatory review system, which requires the state

8   supreme court to examine the record *sua sponte* in order to determine whether certain errors have

9   occurred.  Based on this, the Ninth Circuit concluded that by affirming petitioner's death sentence,

10  the state court necessarily found that not only were his claims without merit, "but further that his

11  sentence was not based on any arbitrary factor."  *Id.*  The *Beam* court, however, specifically

12  distinguished California law, noting that in California, "the content of the appeal does not appear to

13  be prescribed by statute, and affirmance by the court does not appear to require rejection of any

14  particular claim on the merits.  A procedural default arising from a failure to present a claim

15  pursuant to this type of appellate process would raise different issues than are presented here."  *Id.* at

16  1306, n.3.  Petitioner attempts to argue that the *Beam* court was incorrect in its conclusion that

17  California's procedure is different from

18  Idaho's, but this Court must rely on Ninth Circuit authority.  Petitioner's argument here is without

19  merit, and does not demonstrate that California's contemporaneous objection rule is inadequate.[7]

20      The Court finds that respondent has met his burden under *Bennett* of proving adequacy of the

21  contemporaneous objection rule.  Thus, respondent's motion to dismiss portions of Claims 21, 23,

22  32, 34, 37, 38, 40, 41, 47.C and 57 for failure to raise contemporaneous objections at trial is

23  GRANTED.

24

25  [7] Petitioner also points out that at least one court in this district has previously held in an
    unpublished decision that the contemporaneous objection rule in capital cases was not adequate.  *See*
    *Ashmus v. Calderon*, Case No. 93-0594 (TEH) (N.D. Cal. May 24, 1999).  For the reasons discussed

26  above, this Court respectfully disagrees with the conclusion of the *Ashmus* court.  In addition, more
    recently at least three courts in this district have held that the contemporaneous objection rule in

27  capital cases is adequate.  *See Mitcham v. Woodford*, Case. No. 97-3825 (VRW) (N.D. Cal. Oct. 28,
    2002); *Taylor v. Brown*, Case No. 92-2627 (MHP) (N.D. Cal. May 17, 2005); *Walker v. Ornoski*,

28  Case No. 94-1997 (SBA) (N.D. Cal. Oct. 14, 2005).

Petitioner argues, however, that even if the contemporaneous objection rule is an adequate and independent state ground generally, there are specific reasons it does not apply to Claims 5, 7, 28, 50 and 54. Each of the specific reasons is addressed in below.

### i.    Claim 5

Petitioner contends that Claim 5 is not procedurally defaulted by the contemporaneous objection rule because, although the California Supreme Court relied on this procedural rule on direct appeal, it subsequently reached the merits of this claim in denying his first state habeas petition. According to petitioner, this vitiates the procedural bar. Petitioner is partially correct.

In Claim 5, petitioner contends that his federal constitutional rights were violated because the prosecutor knowingly presented false evidence during the rebuttal portion of the penalty phase by having Detective Robert Tanner testify that the killer of Ellen Hansen returned to the scene of the crime a weekend after the shooting and urinated on the spot where Hansen's head lay after she had been shot. First Amended Petition at 47-48.[8] On direct appeal, the state supreme court held that petitioner's *Brady* claim based on the admission of this allegedly false evidence had been waived by a failure to object at trial. *Carpenter*, 15 Cal.4th at 411. The state supreme court also found that petitioner's claim that the trial court erred in admitting this evidence because there was a lack of proper foundation that the shoeprints from the two different dates were made by the same shoes, had likewise been waived by a failure to object. *Id.* In his first state habeas petition, petitioner again asserted his federal constitutional rights, including his *Brady/*false evidence claim; he did not reassert his claim that the trial court erred in admitting the testimony because a proper foundation had not been established. *See* Doc. C1 at 158-67. The state supreme court denied the claim raised in the first state habeas petition solely on the merits. *See* Doc. C8.

In *Ylst v. Nunnemaker*, 501 U.S. 797, 799 (1991), the state appellate court held on direct appeal that Nunnemaker had waived his *Miranda* claim because he failed to object at trial. Nunnemaker re-raised his *Miranda* claim in several subsequent state habeas petitions, all of which

---

[8] The prosecution supported Tanner's testimony by introducing photographs of the footprints found at the scene of the crime when Hansen was originally found and of the footprints found at the scene of the crime approximately a week later. First Amended Petition at 47-48. Claim 5 goes to both Tanner's testimony and the admission of these photographs. *Id.*

were denied essentially without explanation. The issue before the United State Supreme Court was "whether the California Supreme Court's unexplained order denying his second state habeas petition to that court . . . constituted a 'decision on the merits' of that claim sufficient to lift the procedural bar imposed on direct appeal." *Nunnemaker*, 501 U.S. at 801. Although the Supreme Court concluded that an unexplained order did not constitute a decision on the merits, it noted that:

> State procedural bars are not immortal, however; they may expire because of later actions by the state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available.

*Id.*

Here, because petitioner reasserted his *Brady*/false evidence claim in his first state habeas petition and the state supreme court reached (and rejected) the merits of that claim, *Nunnemaker* applies and the procedural bar based on the contemporaneous objection rule for petitioner's knowing presentation of false evidence claim has been lifted. However, because petitioner's claim that the trial court erred in admitting Tanner's testimony and the photographs because a proper foundation had not been laid was not included in the first state habeas petition, *Nunnemaker* is inapplicable and the procedural bar based on the contemporaneous objection rule has not been lifted for that portion of the claim. In sum, respondent's motion to dismiss the portion of Claim 5 dealing with *Brady/*false evidence is DENIED; respondent's motion to dismiss the portion of Claim 5 dealing with the admission of photographs and Tanner's testimony is GRANTED**.**

### ii. Claim 7

Claim 7 contends that penalty phase juror Valerie Rodgers was improperly instructed by the trial judge that if petitioner was sentenced to life without possibility of parole ("LWOP"), his sentence might be commuted by the governor. Petitioner argues that Claim 7 is not barred by the contemporaneous objection rule asserted against it on direct appeal because: 1) the specific contemporaneous objection rule applied to this claim is not consistently and regularly applied by the California Supreme Court; and 2) petitioner reasserted this claim in his first state habeas petition and provided an affidavit from his trial counsel demonstrating that he had interposed a timely objection.

Petitioner's first argument may be quickly dismissed, as he fails to cite to any cases that demonstrate a lack of consistent and regular application of the contemporaneous objection bar to similar claims.

Petitioner's second argument must also fail. Petitioner maintains that in submitting his trial counsel's declaration stating that counsel did not intend to limit his objection, that he had no strategic reason for doing so, and that he did in fact object to the trial court's statement to Juror Rogers, petitioner demonstrated that he did in fact object and preserve this issue. In rejecting this claim in the first state habeas petition, the state supreme court cited *In re Waltreus*, 62 Cal. 2d 218, 225 (1962). *See* Doc. C8. "California's *Waltreus* rule holds that 'any issue that was actually raised and rejected on appeal cannot be renewed in a petition for writ of habeas corpus.'" *Forrest*, 75 F.3d at 563 (citing *In re Harris*, 5 Cal.4th 813, 829 (1993)). As both parties agree, and as *Forrest* holds, *see* 75 F.3d at 564, a federal court will "look through" a citation to *Waltreus* and conclude that the claim was denied for the reasons (procedural or substantive) set forth in the opinion on direct appeal.

Petitioner maintains that the submission of counsel's declaration renders the state court's default inapplicable. Petitioner is incorrect. The California Supreme Court has confirmed that "[w]hen a petitioner attempts to avoid the bars of . . . *Waltreus, supra,* 62 Cal. 2d 218, by relying upon an exhibit (in the form of a declaration or other information) from outside the appellate record, we nevertheless apply the bar if the exhibit contains nothing of substance outside not already in the appellate record." *In re Robbins*, 18 Cal. 4th 770, 814 n.34 (1998). In this case, trial counsel's declaration (Doc. C2) added nothing of significance to the appellate record. As a result, the application of *Waltreus* to this claim in the first state habeas petition was proper and did not change the procedural bar based on petitioner's failure to object imposed by the California Supreme Court on appeal. Respondent's motion to dismiss this claim is GRANTED.

### iii.     Claim 28

Claim 28 contends that the trial court violated petitioner's constitutional rights because it failed to properly instruct the jury that to convict him of the rape of Heather Scaggs, it had to find that non-consensual intercourse occurred prior to death. In discussing this claim on direct appeal, the state supreme court stated first that: "[w]e agree that this is the law . . . [b]ut the instructions adequately conveyed the law" and then added:

> "If defendant believed that the instruction was incomplete or needed elaboration, it was his responsibility to request an additional or clarifying instruction." (*People v. Bell* (1989) 49 Cal.3d 502, 550 . . . He made no such request, undoubtedly because the standard instructions were clear enough, and the defense theory of the case was not that the defendant killed Scaggs and then had intercourse, but that he did not have intercourse.

*Carpenter*, 15 Cal.4th at 391-92.

Under the applicable law, the state court decision must "explicitly invoke[] a state procedural bar rule as a separate basis for its decision." *McKenna*, 65 F.3d at 1488. Federal review will not be precluded "unless the state court makes clear that it is resting its decision denying relief on an independent and adequate state ground." *Siripongs,* 35 F.3d 1308, 1317 (9th Cir. 1994). The preceding passage from the state court's opinion contains no express or explicit statement, or any other clear indication, that it was denying petitioner's claim **because of** his failure to request a clarifying or additional instruction. The passage does not state the claim is denied, waived, forfeited, not cognizable, barred, will not be considered, or use any other similar language that demonstrates the state supreme court rejected petitioner's claim because he did not request a clarifying instruction. Instead, it simply noted that he had not requested such an instruction and then speculated as to why. In short, federal review of Claim 28 is not precluded by the contemporaneous objection rule because it was not clearly or explicitly relied on by the state supreme court as a basis for its decision denying the claim. Respondent's motion to dismiss Claim 28 is DENIED.

### iv.    Claim 50

Petitioner contends that Claim 50.D, the portion of Claim 50 against which the contemporaneous objection bar was asserted, is not barred because it is based on state court decisions issued after his trial and that, therefore, it would have been futile for him to object. Petitioner maintains that California's contemporaneous objection rule does not require counsel to anticipate future decisions, and that a failure to object is overlooked if it occurred before issuance of the decision announcing the relevant legal principle.

Claim 50 identifies various alleged errors in the selection of the guilt phase jurors and Claim 50.D specifically alleges that the trial court violated petitioner's constitutional rights when it "excused chosen guilt phase juror Dana Blavat for hardship . . . without inquiring whether or not she

would actually suffer the financial hardship she feared" and then failed to reopen jury selection and allow petitioner to exercise any or all remaining peremptory challenges.  First Amended Petition at 255-56.   Regarding petitioner's argument concerning the trial court's failure to reopen jury selection, the state supreme court stated:

> Defendant also argues that because the jury was not yet sworn, he had the right to reopen jury selection and use his remaining peremptory challenges. (*People v. Armendariz* (1984) 37 Cal.3d 573, 578-84 [209 Cal.Rptr. 664, 693 P.2d 243]).  He did not, however, request to do so or express dissatisfaction with the remaining jurors.  He may not complain on appeal of the court's failure to do what he did not request.  (*People v. Caro* (1988) 46 Cal.3d 1035, 1046-47 [251 Cal.Rptr. 757, 761 P.2d 680].)

*Carpenter*, 15 Cal.4th at 356-57.

The California Supreme Court has stated that "[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence."  *People v. Welch*, 5 Cal.4th 228, 237-38 (1993) (refusing to find a waiver of Welch's challenge to the conditions of his probation, even though no objection was made in the sentencing court, because case law existing up until *Welch* had said that no objection was required to preserve the issue); *see also People v. Collins*, 42 Cal.3d 378, 388-89 (1986) (refusing to apply rule announced in *Collins* – that to preserve claim based on denial of a motion to exclude a prior conviction offered for impeachment the defendant must testify – to Collins because existing case law had said that a defendant need not testify to preserve such a claim); *People v. Turner*, 50 Cal.3d 668, 703  ("[t]hough evidentiary challenges are usually waived unless timely raised in the trial court, this is not so when the pertinent law later changed so unforeseeably that it is unreasonable to expect trial counsel to have anticipated the change").

Claim 50.D involves the claim that once chosen guilt phase Juror Blavat was discharged, petitioner had a right, recognized in *Armendariz*, to reopen jury selection and to exercise any or all of his remaining peremptory challenges against members of the guilt phase jury.  First Amended Petition at 255.   The state supreme court found this claim to have been forfeited because petitioner did not request an opportunity to reopen jury selection and exercise remaining peremptory challenges, and did not otherwise express dissatisfaction with the jury.  To come within the "futility" exception to the contemporaneous objection rule, petitioner must show that the law existing at the

1    time of the guilt phase jury selection would have made such a request futile or wholly unsupported

2    by the law.   That was not the case here.

3        In *Armendariz*, after the guilt phase jury had been chosen and sworn but before the

4    alternates had been sworn, the trial court discharged two of the regular jurors.  *Armendariz*, 37

5    Cal.3d at 579.  Armendariz  "moved to reopen selection of the regular jury and to be allowed to

6    exercise his 22 unused [peremptory] challenges."  *Id*. at 579.  The trial court denied this motion.  *Id*.

7    On appeal, in finding the trial court committed error in denying the motion, the state supreme court

8    explained:

9            The [trial] court's ruling made clear that it believed it had no authority to
         grant any of defense counsel's requests.  Unfortunately, the [trial] court was
10        apparently            unaware that this court had held a year earlier that a trial court
         *does* have a power to reopen jury selection and authorize the use of unused
11        peremptory challenges             before all the alternates are sworn.  (*In re
         Mendes* (1979) 23 Cal.3d 847            [153 Cal.Rptr. 831, 592 P.2d 318].)

12

13   *Id*. at 580.   The court in *Armendariz* also explained that "[e]ven if the trial court had been aware of

14   the scope of its authority, denial of counsel's request to reopen jury selection would have been an

15   abuse of discretion under the circumstances of this case.   This conclusion is apparent from

16   *Mendes*."  *Id*. at 581-82 (noting that in *Mendes* – which was decided prior to Carpenter's trial –  the

17   court found "good cause" to reopen jury selection when only one regular juror was excused and that

18   *Mendes* demonstrates that "a party's right to exercise peremptory challenges to a full panel is

19   compromised when remaining challenges are disallowed at a time when there is less than a full

20   jury").  In *People v. Caro*, 46 Cal.3d 1035, 1046-47 (1988), the state supreme court described

21   *Armendariz* as a case where "we relied on *Mendes* to reverse a conviction where a trial court denied

22   a defendant's request to exercise . . .  unused peremptory challenges against already seated jurors

23   after two jurors were excused prior to the swearing of the five alternates."

24       Thus, the pertinent question regarding the applicability of the "futility" exception to the

25   contemporaneous objection rule is not whether *Armendariz* is identical to or simply a specific

26   application of *Mendes* to the facts in *Armendariz*.  Rather, the appropriate question is whether at the

27   time of the selection of the guilt phase jurors, a request to reopen jury selection and exercise any or

28   all remaining peremptory challenges "would have been futile or wholly unsupported by substantive

United States District Court
For the Northern District of California

law then in existence." *Welch*, 5 Cal.4th at 237-38. As the descriptions of the holdings in *Armendariz* and *Caro* make plain, that simply was not the case. Nor is there any suggestion by petitioner that the existing case law established that petitioner need not make a request to reopen jury selection or exercise remaining peremptories in order to preserve the claim for appeal.

In sum, petitioner has failed to establish the applicability of the "futility" exception to contemporaneous objection bar as it pertains to Claim 50.D. Respondent's motion to dismiss this claim is GRANTED.

### v. Claim 54

Claim 54 contends that the presence of the penalty phase jury during the guilt phase violated petitioner's constitutional rights because it impermissibly predisposed the guilt phase jury toward conviction and resulted in improper fraternization between the two juries. Petitioner contends that this claim is not barred by the contemporaneous objection rule because that bar was not asserted against any part of Claim 54.

On direct appeal, the state supreme court stated:

> [T]he court granted defendant's motion to have separate juries. [Defendant] now contends the court erred in allowing both juries to hear the guilt evidence. The Attorney General argues that he waived the contention by requesting separate guilt and penalty phase juries. Defendant has indeed waived any argument that the court erred in having separate juries, but his argument that the penalty jury had to be selected after the guilt verdict is preserved.

*Carpenter*, 15 Cal.4th at 370. Shortly thereafter, in response to petitioner's argument that once the trial court allowed the penalty phase jury to be present during the guilt phase he was worse off than if he had a death-qualified unitary jury, the state supreme court stated, "[t]o the extent defendant implies the court should not have allowed separate juries at all, he has waived the claim." *Id*. at 371. Petitioner is correct that neither of these waiver findings implicate any part of Claim 54.

In Claim 54, petitioner does not argue that his constitutional rights were violated because both juries heard the guilt evidence, nor does he argue that the trial court violated his constitutional rights in having separate juries at all. Those arguments, however, are precisely the ones that the state supreme court found to be waived. Rather, in Claim 54, petitioner asserts that his constitutional rights were violated because the presence of the penalty phase jury during the guilt-

phase: (1) predisposed the guilt phase jury towards conviction; and (2) allowed for improper fraternization between the juries. The former argument is specifically addressed on the merits by the state supreme court in the paragraph discussing the merits of the argument petitioner had preserved. *Carpenter*, 15 Cal.4th at 370-71. The latter argument is not mentioned at all. *See id*. Because a contemporaneous objection bar was not asserted by the state supreme court against either of the arguments contained in Claim 54, federal review of Claim 54 is not barred. Respondent's motion to dismiss this claim is DENIED.

### b. Timeliness Rule

In its order denying the second state habeas petition, the California Supreme Court stated that "[w]ith the exception of Claims 52, 53, 55, 56, all claims are denied as untimely (*In re Robbins* (1998) 18 Cal.4th 770 and *In re Clark* (1993) 5 Cal.4th 750) . . . ." Doc. D3. The parties agree that this denial on the basis of untimeliness applies to parts of Claims 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 18, 21, 26, 27, 28, 30, 31, 35, 44, 45, 47.H, 53, 54 and 65 in the First Amended Petition. Respondent contends that this denial constitutes an independent and adequate procedural bar prohibiting federal review of these claims.

Because the adequacy of a state procedural rule must be measured as of the time that petitioner purportedly committed the default, *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997), the Court must first determine the time of petitioner's alleged default. Here, the parties agree that the relevant point in time for assessing the adequacy of the timeliness rule is 90 days from the due date of the reply brief on direct appeal, which in this case is December 24, 1996.

The Ninth Circuit has determined that, prior to the issuance of *In re Clark*, 5 Cal. 4th 750 (1993), California's untimeliness rule was not adequate and could not preclude federal review. *Morales v. Calderon*, 85 F.3d 1387, 1293 (9th Cir. 1996). Respondent maintains that the timeliness rule was adequate at the time of petitioner's default, which occurred subsequent to the issuance of *Clark*. Petitioner counters that even after *Clark*, the untimeliness rule was inconsistently applied, and thus is inadequate to bar federal review of his claims.

Petitioner is correct. Respondent cannot meet his burden under *Bennett* of demonstrating that the untimeliness rule was clear, well-established or consistently applied in a capital case such as

the one at bar. *See Bennett*, 322 F.23d at 586. As at least one other judge in this District has held, even subsequent to *Clark*, the California Supreme Court has not applied the untimeliness bar consistently in capital cases. *See*, *e.g.*, *Dennis v. Brown*, 361 F.Supp. 2d 1124, 1130-34 (N.D. Cal. 2005). Therefore, the bar is inadequate and does not preclude petitioner from pursuing in federal court his claims denied as untimely by the state court.

### c. Successiveness Rule

California's successiveness rule bars consideration of claims asserted for the first time in a second or subsequent state petition if petitioner knew of the grounds for the claims at the time of the first petition. *See In re Horowitz*, 33 Cal.2d 534, 546-47 (1949); *Clark*, 5 Cal.4th at 767-68. In its order denying the second state habeas petition, the California Supreme Court stated that "[w]ith the exception of claims 52, 53, 55, 56, all claims are denied as . . . successive (*In re Robbins*, *supra*, 18 Cal.4th at p.788, fn. 9; *In re Clark*, *supra*, 5 Cal.4th at pages 768, 782; *In re Horowitz* (1949) 33 Cal.2d 534, 546-47)." Doc. D3. The successiveness rule was asserted against exactly the same claims that were subject to the timeliness rule. *See* Doc. D3.

Respondent contends that California law has long barred consideration of successive petitions and that petitioner has defaulted all the claims against which the successiveness bar was asserted. *See Clark*, 5. Cal. 4th at 768. Petitioner maintains that California's timeliness and successiveness rules are closely linked and thus, to the extent that the timeliness rule is inadequate, the successiveness rule is as well. Respondent concedes that the timeliness rule and successiveness rule are sufficiently linked such that arguments that apply to the timeliness rule apply to the successiveness rule.

Petitioner is correct that the timeliness rule and successiveness rule are closely related. Indeed the California Supreme Court has stated that "[a] successive petition presenting additional claims that could have been presented in an earlier attack on judgment is, of necessity, a delayed petition." *Clark*, 5 Cal.4th at 770. Moreover, the timeliness rule and the successiveness rule were asserted against the exact same claims in the second state habeas petition. *See* Doc. D3.

As this Court has already concluded, *supra*, California's untimeliness rule is not adequate to bar federal review of habeas claims. *See*, *e.g.*, *Dennis*, 361 F.Supp. 2d at 1135. As the *Dennis* court

also found, California's successiveness rule is not adequate to bar federal review. *Id.* Respondent cannot demonstrate that the successiveness rule was clear, well-established or consistently applied in capital cases, and thus his motion to dismiss on this ground is DENIED.

### d. *Dixon* Rule

Under California's so-called *Dixon* (or pretermitted) rule, a petitioner is barred from raising a claim of error in a state habeas petition if the claim could have been, but was not, raised on direct appeal. *See In re Dixon*, 42 Cal. 2d 756, 759 (1953); *Fields v. Calderon*, 125 F.3d 757, 759 (9th Cir. 1997). The California Supreme Court invoked the *Dixon* rule to deny several claims of error that were raised in the second state habeas petition; those claims correspond to portions of Claims 7, 21, 26, 27, 28, 30, 31 and 47.H, and all of Claim 44, in the federal habeas petition. Respondent maintains that the afore-mentioned claims are therefore procedurally barred from federal review; petitioner counters that the *Dixon* bar is inadequate to bar federal review because it was not consistently and regularly applied at the relevant time.

"With respect to the *Dixon* rule, [the Ninth Circuit has] held that a relevant point of reference for assessing its application is the time at which the petitioner 'had an opportunity to raise the claims on direct appeal.'" *Fields*, 125 F.3d at 760-61 (quoting *Calderon v. Bean*, 96 F.3d 1126, 1131 (9th Cir. 1996). The parties disagree as to the applicable date; the Court has determined that it is either November 1996, when a supplemental brief with new claims was filed, or January 9, 1997, when the supplemental reply brief was filed. As neither the parties' arguments nor the relevant caselaw hinge on the interval between these two dates, the November 1996 date will be used as the appropriate reference point for assessing the adequacy of the *Dixon* rule.

It is undisputed that the *Dixon* rule was not clearly and adequately applied prior to 1993. *See Fields*, 125 F.3d at 762. Although the Ninth Circuit has not addressed the adequacy of the *Dixon* bar since that time, at least one judge in this District has. *See, e.g.*, *Dennis*, 361 F. Supp. 2d at 1135. As the *Dennis* court confirmed, California's *Dixon* bar, like the timeliness and successiveness bars, is also not adequate to preclude federal review. *Id.* As respondent cannot demonstrate that the *Dixon* bar was clear, well-established or consistently applied in capital cases, his motion to dismiss on this ground is DENIED and petitioner is not barred from federal review of the claims at issue.

### e. *Waltreus* Rule

The so-called *Waltreus* rule, derived from *In re Waltreus*, 62 Cal.2d 218, 225 (1962), is "California's procedural rule that generally prevents a petitioner from a raising a claim for [state] habeas review that was previously heard and decided on direct appeal." *Fields*, 125 F.3d at 762. In the instant case, the state supreme court rejected claims 3.B-D, 17, and 20 in the first state habeas petition, and claims 43 and 46 in the second habeas petition to the extent they were raised and rejected on direct appeal, on *Waltreus* grounds. *See* Docs. C8, D3. These state habeas claims correspond to Claims 7, 26-31, 42, and 56 in the First Amended Petition.

The Ninth Circuit has held that "[t]he California Supreme Court's reliance on *In re Waltreus* does not [] bar federal review." *Hill v. Roe*, 321 F.3d 787, 789 (2003). *See also Nunnemaker*, 501 U.S. at 805 (confirming that a citation to *Waltreus* does not preclude federal review of a claim because it is neither a ruling on the merits nor a denial on procedural grounds). Though respondent concedes that a *Waltreus* denial on state habeas in a capital case does not preclude federal review of the claim in question, he nonetheless argues that to the extent that petitioner attempted to add new allegations to his state habeas claim that were not in his appellate claim, his corresponding federal claim should be circumscribed by the parameters of his appellate claim. Respondent's argument is based on the following statement by the California Supreme Court: "[w]hen a petitioner attempts to avoid the bar[] of . . . *Waltreus, supra*, 62 Cal.2d 218, by relying upon an exhibit (in the form of a declaration or other information) from outside the appellate record, we nevertheless apply the bar if the exhibit contains nothing of substance not already in the appellate record." *Robbins*, 18 Cal.4th at 814-15, n.34. Respondent's argument is without merit.

Respondent's argument, that the invocation of the *Waltreus* bar against a claim in a state petition should circumscribe consideration of that claim in federal habeas to the parameters of the claim as raised on direct appeal, would be valid only if the state supreme court refused to consider the extra-record information. But the state supreme court does just the opposite. In order to determine whether the exhibit from outside the appellate record "contains nothing of substance not already in the appellate record", it necessarily must consider the extra-record information offered in state habeas. *See Robbins*, 18 Cal. 4th at 814-15, n.34. Indeed, as petitioner points out, it is difficult

24

1   to imagine how the state supreme court can determine whether the exhibit contains nothing of

2   substance not already in the appellate record without a consideration of the new material in light of

3   the underlying law which governs the merits of the claim.  That the state supreme court ultimately

4   refuses to reconsider the merits of the claim, despite the new material, means that the new material

5   has added "nothing of substance" to the claim and therefore, there is no reason to reconsider it

6   because it has been fully considered on direct appeal.

7        In sum, respondent identifies no state law authority for the proposition that the invocation of

8   the *Waltreus* bar on state habeas means that the state court refused to consider the new material

9   offered on state habeas, and the state supreme court's statement in *Robbins* reveals that it must

10  necessarily consider such information.  Accordingly, the state supreme court's invocation of the

11  *Waltreus* bar in the first and second state habeas petitions does not preclude consideration of any or

12  all of Claims 7, 26-31, 42, and 56 in the federal habeas petition.

13                              **f.      *Miller* Rule**

14       The *Miller* rule, based on the case of *In re Miller*, 17 Cal.2d 734, 735 (1941), is essentially a

15  variation on the *Waltreus* rule: it bars consideration of a claim raised in a second or subsequent state

16  habeas petition if the claim was raised in the first state habeas petition.  In its order denying

17  petitioner's second state habeas petition, the California Supreme Court stated "[a]ll claims are barred

18  by *In re Miller* (1941) 17 Cal. 2d 734 to the extent they duplicate claims raised and rejected in

19  petitioner's first petition for writ of habeas corpus challenging this judgment."  Doc. D3.  Based on

20  the state court's order, respondent invokes *Miller* as a bar to federal consideration of portions of

21  Claims 1, 3, 4, 5, 6, 7, 9, 11, 12, 13, 35, 50, 53 and 62.

22       Respondent incorrectly maintains that *Miller* acts as separate bar to federal habeas review.

23  The claims at issue would be barred from federal habeas review because, and only because, they

24  were denied on an adequate and independent state procedural ground in the first state habeas

25  petition.  By invoking *Miller* in the second state habeas petition, the state supreme court in effect is

26  "denying the petition for the same reasons that it denied the previous one," *Kim v. Villalobos*, 799

27  F.2d 1317, 1319, n.1 (9th Cir. 1986), be it for substantive reasons, procedural reasons, or both.  *See*

28  *also Karis*, 828 F. Supp. at 1457 (federal court will look through a state-court citation to *Miller* to

see ground for decision in the first state petition).  Therefore, *Miller* merely maintains the status quo of what occurred when the same claims were raised in the first state habeas petition, and does not act as a separate procedural bar to federal habeas review.   Respondent's motion to dismiss based on *Miller* must be DENIED.

### Conclusion

For the foregoing reasons, respondent's motion to dismiss is GRANTED in part and DENIED in part.  Respondent's motion to dismiss portions of Claims 7, 21, 23, 32, 34, 37, 38, 40, 41, 47.C, 50, and 57 for failure to raise contemporaneous objections at trial is GRANTED. Respondent's motion to dismiss Claims 28 and 54 for failure to raise contemporaneous objections at trial is DENIED.  As to Claim 5, respondent's motion to dismiss the portion dealing with *Brady/*false evidence is DENIED; respondent's motion to dismiss the portion dealing with admission of photographs and Tanner's testimony is GRANTED.

Respondent's motion to dismiss on all other grounds is DENIED.

**IT IS SO ORDERED.**

DATED:    3/5/2008                                    _____

                                                                 MARTIN J. JENKINS
                                                                 UNITED STATES DISTRICT JUDGE