United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID J. CARPENTER,

Petitioner,

v.

MICHAEL MARTEL., Acting Warden of
California State Prison at San Quentin,

Respondent.

NO. C 98-2444 MMC

ORDER DENYING GROUP I CLAIMS

**DEATH PENALTY CASE**

**Introduction**

The instant case arises from petitioner's conviction and death sentence for the first degree murders of Ellen Hansen and Heather Scaggs, the attempted murder of Steven Haertle, the attempted rape of Ellen Hansen, and the rape of Heather Scaggs.  *See People v. Carpenter*, 15 Cal.4th 312 (1997).  The crimes were committed in Santa Cruz County, and following a change of venue, the case was tried in Los Angeles County.[1]  On April 28, 1997, the California Supreme Court affirmed petitioner's conviction and sentence on direct appeal, *id.*; petitioner's subsequent certiorari petition

---

[1]  Following his trial in Los Angeles County, petitioner was tried, convicted, and sentenced to death in San Diego County for five murders that occurred in Marin County.  *See Carpenter*, 15 Cal.4th at 344 n.1.

United States District Court

For the Northern District of California

to the United States Supreme Court was denied on January 20, 1998. *See Carpenter v. California*, 522 U.S. 1078 (1998).

Petitioner filed his first state habeas petition on December 24, 1996; it was denied by the California Supreme Court on May 27, 1998. Prior to the denial of his state habeas petition, petitioner filed in the United States District Court for the Central District of California a request for appointment of federal habeas counsel and a motion for change of venue. Petitioner's change of venue motion was granted on June 12, 1998, thereby transferring the instant habeas case to the Northern District.

Under the one-year limitations period set forth in 28 U.S.C. § 2244(d), petitioner's federal habeas petition was due by May 27, 1999. The Court, however, granted petitioner's motion to equitably toll the running of the statute of limitations for five months, to and including October 27, 1999. *(See* Order Denying Motion to Vacate and Granting in Part and Denying in Part Motion for Equitable Tolling, filed June 14, 1999, at 38.)[2] On October 22, 1999, petitioner filed in this court a Petition for Writ of Habeas Corpus ("Original Petition")[3], a Notice of Additional Claims, and a Motion to Hold Proceedings in Abeyance; that same date, he filed in state court his second state habeas petition. On December 1, 1999, the California Supreme Court denied petitioner's second state habeas petition. On December 6, 1999, petitioner filed his First Amended Verified Petition for Writ of Habeas Corpus ("First Amended Petition") and withdrew the Motion to Hold Proceedings in Abeyance.

Respondent subsequently filed a Motion to Dismiss First Amended Petition, by which motion respondent argued various procedural grounds for dismissal of portions of petitioner's First

_____

[2] In the same order, the Court denied petitioner's request for tolling as to his unexhausted claims. *Id.*

[3] Because petitioner filed his federal petition after April 24, 1996, the date on which the provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") went into effect, those provisions apply to the proceedings in this court. *See Lindh v. Murphy*, 521 U.S. 320.

United States District Court
For the Northern District of California

Amended Petition.  The Court addressed all of the procedural issues in a series of orders.  *See, e.g. Carpenter v. Ayers*, 548 F. Supp. 2d 736 (N.D. Cal. 2008).

In 2008, based on certain allegations contained in the First Amended Petition, and under applicable law, the Court issued an order requiring petitioner be examined and his competency determined in a timely manner.  *See Rohan ex, rel. Gates v. Woodford*, 334 F. 3d 803, 817 (9th Cir. 2003) (holding petitioners have "statutory right to competence in [their] habeas proceedings").  Thereafter, based on the record of the case and the report of stipulated expert Dr. Robert Roesch, this Court found petitioner competent to pursue his habeas claims.[4]

The parties subsequently met and conferred, and agreed to a briefing schedule to address the remainder of petitioner's claims.  Under the schedule, each of the claims was allocated to one of nine separate groups.[5]  The instant Order addresses Group I Claims 42, 43, 46, 59, 62 and 63.[6]  For the following reasons, Claims 42, 43, 46, 59, 62 and 63 will be denied.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal district court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C § 2254(d).[7]  A federal court must presume the correctness of the state court's

---

[4] Petitioner appealed certain of the Court's orders concerning the competency determination, and in the alternative, sought mandamus relief.  On July 3, 2009, in an unpublished memorandum decision, the appeal was dismissed and mandamus denied.  *See Carpenter v. Ayers*, Nos. 08-99019 & 08-99020, 2009 WL 2387288 (9th Cir. 2009).

[5] The briefing schedule dates subsequently were amended by the Court.

[6] Group I Claim 47 will be addressed in a subsequent order.

[7] The parties agree AEDPA applies to this matter.

**United States District Court**
For the Northern District of California

1   factual findings, and the presumption of correctness may only be rebutted by clear and convincing

2   evidence.  28 U.S.C. § 2254(e)(1).

3        The "contrary to" and "unreasonable application" clauses of § 2254(d) have separate and

4   distinct meanings.  *See Williams v. Taylor*, 529 U.S. 362, 404 (2000).  A state court's decision is

5   "contrary to" clearly established United States Supreme Court law if it fails to apply the correct

6   controlling authority or if it applies the controlling authority to a case involving facts materially

7   indistinguishable from those in a controlling case, but nonetheless reaches a different result.  *Id*. at

8   413-414.  A decision is an "unreasonable application" of United States Supreme Court law if "the

9   state court identifies the correct governing legal principle . . .  but unreasonably applies that

10  principle to the facts of the prisoner's case."  *Id.* at 414.  A federal court must bear in mind,

11  however, that "'an *unreasonable* application of federal law is different from an *incorrect* application

12  of federal law.'"  *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (citing *Williams*, 529 U.S. at

13  410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal

14  habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

15  decision."  *Id.* at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 653, 664 (2004)).

16       In that regard, "a federal habeas court may not issue the writ simply because the court

17  concludes in its independent judgment that the relevant state-court decision applied clearly

18  established federal law erroneously or incorrectly[;] [r]ather, that application must be objectively

19  unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  "While the 'objectively

20  unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of

21  deference to the state courts" than previously had been accorded them.  *Clark v. Murphy*, 331 F.3d

22  1062, 1068 (9th Cir. 2003).

23       Holdings of the Supreme Court at the time of the state court decision are the only definitive

24  source of clearly established federal law under AEDPA.  *See Williams*, 529 U.S. at 412.  While

25  circuit law may be "persuasive authority" for purposes of determining whether a state court decision

26  is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are

27  binding on the state courts and only those holdings need be reasonably applied.  *See Clark*, 331 F.3d

28  at 1070.  A state court's decision need not cite to and a state court need not be aware of federal law

4

**United States District Court**
For the Northern District of California

1  to pass muster under AEDPA; rather, "so long as neither the reasoning nor the result of the state-

2  court decision contradicts [federal law]", the decision may be upheld.  *Early v. Packer*, 537 U.S. 3, 8

3  (2002).

4       When a federal court is presented with a state court decision that is unaccompanied by a

5  rationale for its conclusions, the court has no basis other than the record "for knowing whether the

6  state court correctly identified the governing legal principle or was extending the principle into a

7  new context."  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  In such situations, federal

8  courts must conduct an independent review of the record to determine whether the state court

9  decision is objectively unreasonable.  *Id.*  Specifically, "where a state court's decision is

10  unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there

11  was no reasonable basis for the state court to deny relief."  *Richter*, 131 S. Ct. at 784.

12       Moreover, even where a petitioner meets the requirements of § 2254(d), habeas relief is

13  warranted only if the constitutional error at issue had a substantial and injurious effect or influence

14  in determining the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Under this

15  standard, petitioners "may obtain plenary review of their constitutional claims, but they are not

16  entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual

17  prejudice.'"  *Brecht*, 507 U.S. at 637 (citing *United States v. Lane*, 474 U.S. 438, 439 (1986)).

**Analysis**

18

19  **I.       Claim 42: Jury Instructions Relating to Aggravating and Mitigating Factors**

20       In Claim 42, petitioner asserts that certain of the trial court's instructions regarding

21  aggravating and mitigating factors, including the trial court's refusal to give petitioner's requested

22  instructions, violated his constitutional rights.  This issue was addressed as follows by the California

23  Supreme Court in a reasoned opinion on direct appeal.

24           11.    *Instructions on Mitigating Evidence*

25            The court gave the "catch-all" mitigation instruction we recommended in
       *People v. Easley* (1983) 34 Cal. 3d 858, 878.  Defendant also requested many special
26       instructions pinpointing mitigating evidence the jury could consider.  He complains
       the court refused to give most of them.  The court, however, did not have to give *any*
27       of them.  (*People v. Daniels, supra*, 52 Cal. 3d at 870, 871 [additional citations
       omitted]).  "The *Easley* instruction . . . is sufficient to advise the jury of the full range
28       of mitigating evidence, and nothing more is required."  (*People v. Edwards*, *supra*, 54

United States District Court

For the Northern District of California

Cal. 3d at ¶. 841-842; see also *Boyde v. California* (1990) 494 U.S. 370, 377-383 [parallel citations omitted]).  Defendant also contends the court erred by refusing to delete the word "extreme" from "extreme mental or emotional disturbance."  (Pen. Code, § 190.3, factor (d).)  It did not.  (*Blystone v. Pennsylvania* (1990) 494 U.S. 299, 308 [paralllel citations omitted]; *People v. Benson, supra*, 52 Cal. 3d at ¶. 803-804.)

Defendant complains that the court gave "a pinpoint instruction on the prosecution's aggravating evidence while denying reciprocal rights to such an instruction to a capital defendant."  But there is a critical difference between mitigating evidence and aggravating evidence.  The jury may consider in aggravation only evidence relevant to the factors listed in Penal Code section 190.3 (*People v. Boyd*, *supra*, 38 Cal. 3d 762.)  By contrast, the jury may consider any mitigating evidence.  To inform the jury, the court had to define and limit what aggravating evidence it could consider, but it did not have to define and could not limit the range of mitigating evidence.  The lack of symmetry in the jury's consideration of the aggravating and mitigating factors explains the lack of symmetry in the instructions.  (See also *People v. Benson*, *supra*, 52 Cal. 3d at p. 806.)

Defendant also complains the court itemized the other crimes involving force or violence for which evidence was presented and told the jury not to consider evidence of any other criminal acts.  Although there is no sua sponte duty to identify the other crimes (*People v. Hardy, supra*, 2 Cal. 4th at ¶. 205-206), doing so is not error.  (*People v. Phillips, supra*, 41 Cal 3d at ¶.  72-73, fn. 25.)

The court instructed the jury it could consider the other crimes only if it found defendant committed them beyond a reasonable doubt.  It also instructed that as to "all other aggravating or mitigating circumstances, the standard of proof is by a preponderance of the evidence"; and that in deciding this question, the jury "should consider all of the evidence bearing upon that issue regardless of who produced it."  Defendant contends the court erred in instructing on the preponderance of the evidence standard.

It is clear that there was no federal constitutional violation.  The United States Supreme Court has stated that, although it "has refused to countenance state-imposed restrictions on what mitigating circumstances may be considered in deciding whether to impose the death penalty," the state may impose "on defendants the burden of establishing, by preponderance of the evidence, the existence of mitigating circumstances sufficiently substantial to call for leniency."  (*Walton v. Arizona*, (1990) 497 U.S. 639, 649 [parallel citations omitted]).  "So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency."  (*Walton v. California*, *supra*, 497 U.S. at p. 650 [parallel citations omitted]; see also *Delo v. Lashley*, (1993) 507 U.S. 272, 276 [parallel citations omitted] ["In *Walton* we rejected  a challenge to a state statute that imposed on capital defendants the burden of establishing the existence of mitigating circumstances by a preponderance of the evidence. . . ."].)

The California death penalty statute is silent on the burden of proof, and we have not squarely considered the question.  As defendant points out, we have stated that "the jury is not limited in its consideration of any evidence in mitigation which could serve as a justification for imposition of a penalty less than death." (*People v. Bonillas* (1989) 48 Cal. 3d 757, 790 [parallel citations omitted].)  However, the court did not limit what the jury could consider but merely defined the burden of proof. Indeed, it specifically told the jury to "consider all of the evidence. . . ."  The real

United States District Court

For the Northern District of California

problem is that the instruction does not readily apply to the decisionmaking process involved in the penalty phase of a capital trial.  "[T]he sentencing function is inherently moral and normative, not factual; the sentencer's power and discretion under [California's death penalty law] is to decide the appropriate penalty for the particular offense and offender under all the relevant circumstances." (*People v. Rodriguez, supra,* 42 Cal. 3d at p. 779.)  Because of this, instructions associated with the usual fact-finding process --- such as burden of proof -- are not necessary. [citations omitted]  Except for the other crimes, the court should not have instructed at all on the burden of proving mitigating or aggravating circumstances.

Nevertheless, the instruction did not prejudice defendant.  It was logically relevant only to mitigating circumstances for which the evidence was conflicting, primarily the evidence of defendant's mental state.  It told the jury to consider all the evidence and made clear the defendant did not have the burden of proving a mitigating circumstance beyond a reasonable doubt.  Even without the instruction, we doubt that any jury would give an aggravating or mitigating circumstance significant weight if, after considering the evidence supporting that circumstance, it found the contrary evidence preponderated.  Therefore, we find no reasonable possibility the instruction affected the penalty verdict. (*People v. Brown, supra,* 46 Cal. 3d at ¶. 446-448.)  It was inapplicable, but not prejudicial.

*Carpenter,* 15 Cal. 4th at 416-418.

To obtain federal collateral relief for instructional error, a petitioner must show the challenged instruction, or lack of instruction, by itself so infected the entire trial that the resulting conviction violates due process.  *See Estelle v. McGuire,* 502 U.S. 62, 72 (1991); *Cupp v. Naughten,* 414 U.S. 141, 147 (1973); see also *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974) ("'I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'").  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  *See Estelle,* 502 U.S. 62, 72 (1991).  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady,* 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977)); *Prantil v. California,* 843 F.2d 314, 317 (9th Cir.), *cert denied,* 488 U.S. 861 (1988); *see, e.g., Middleton v McNeil,* 541 U.S. 433, 434-435 (2004) (per curiam) (holding, where three other instructions correctly stated law, no reasonable likelihood jury misled by single contrary imperfect self-defense instruction on "imminent peril"); *Mayfield v. Woodford,* 270 F. 3d 915, 922-924 (9th Cir. 2001) (holding no error shown where guilt-phase instructions precluded consideration of such factors as sympathy and trial court allowed jury to consider at penalty phase "such guilt phase

United States District Court

For the Northern District of California

1  instructions as it found applicable"; finding instructions, when viewed as a whole, required jury to

2  consider all relevant mitigating evidence for penalty phase).

3        In the instant petition, petitioner makes several related claims of instructional error, all of

4  which are without merit.[8]  First, petitioner contends the trial court's refusal to give most of

5  petitioner's requested instructions regarding mitigating evidence violated his due process rights.  A

6  state trial court's refusal to give an instruction, however, does not by itself raise a ground cognizable

7  in federal habeas corpus proceedings.  *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).

8  Rather, the error must so infect the trial that the defendant was deprived of the fair trial guaranteed

9  by the Fourteenth Amendment.  *See id.*

10        Here, petitioner has not shown the trial court's decision not to give certain of petitioner's

11  requested pinpoint instructions deprived him of a fair trial, nor has petitioner shown the state court's

12  reasoned determination, holding there was no error, is contrary to, or an unreasonable application of,

13  clearly established United States Supreme Court law.  Petitioner likewise fails to demonstrate the

14  state court's opinion relied on an unreasonable determination of the facts.  The Supreme Court has

15  held instructions regarding mitigation must permit the jury to consider all relevant mitigating

16  evidence.  *Boyde v. California*, 494 U.S. 370, 377-383 (1990).  As the state court concluded, the

17  instruction given was "'sufficient to advise the jury of the full range of mitigating evidence, and

18  nothing more is required.'"  *Carpenter*, 15 Cal. 4th at 416 (citing *Edwards*, 54 Cal. 3d at 841-842;

19  *Boyde*, 494 U.S. at 377-383).

20        Petitioner's argument that the trial court erred by refusing to delete the word "extreme" from

21  "extreme mental or emotional disturbance" similarly fails.  Petitioner has not shown the trial court's

22  decision not to omit a single word so infected the entire trial that the resulting conviction violates

23  due process, see *Estelle v. McGuire*, 502 U.S. at 72, nor has petitioner shown the state court's

24  reasoned opinion is contrary to, or an unreasonable application of, clearly established United States

25  Supreme Court law.

26

27        [8] Respondent argues petitioner's claims of instructional error are *Teague*-barred, *see Teague
28  v. Lane,* 489 U.S. 288 (1989); because this Court denies the claims on the merits, it need not address
   respondent's *Teague* arguments.

**United States District Court**
For the Northern District of California

1    Lastly, petitioner maintains it was prejudicial error for the trial court to instruct that as to "all

2   other aggravating or mitigating circumstances,[9] the standard of proof is by a preponderance of the

3   evidence."  The Supreme Court has held, however, that "so long as a State's method of allocating

4   the burdens of proof does not lessen the State's burden to prove every element of the offense

5   charged,  . . . a defendant's constitutional rights are not violated by placing on him the burden of

6   proving mitigating circumstances sufficiently substantial to call for leniency."  *Walton v. Arizona*,

7   497 U.S. 639, 650 (1990), *overruled on other grounds by Ring v. Arizona*, 436 U.S. 584 (2002).  The

8   California Supreme Court's reasoned opinion was in accord with *Walton*, stating that "the court did

9   not limit what the jury could consider but merely defined the burden of proof."  *Carpenter*, 15 Cal.

10   4th at 417.  Petitioner thus cannot demonstrate the state court's opinion was an unreasonable

11   application of clearly established law, or an unreasonable determination of the facts.

12    For all of the above reasons, petitioner's claim will be denied.

13    Moreover, petitioner has not shown he suffered any prejudice as a result of any instructional

14   error on which he bases the instant claim.  Even if a petitioner meets the requirements of § 2254(d),

15   habeas relief is warranted only if the constitutional error at issue had a substantial and injurious

16   effect or influence in determining the jury's verdict.  *Brecht,* 507 U.S. at 638.  Under such standard,

17   petitioners "may obtain plenary review of their constitutional claims, but they are not entitled to

18   habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"

19   *Brecht*, 507 U.S. at 637, citing *United States v. Lane*, 474 U.S. 438, 439 (1986).  In this case,

20   petitioner has not demonstrated that a change in the mitigation instructions would have convinced

21   the jury to return a sentence of life without parole as opposed to death.  Petitioner was permitted to

22   introduce relevant mitigating evidence, and the instructions given by the court, as required by the

23   Constitution, permitted the jury to consider all of the relevant mitigating evidence.  *See Boyde*, 494

24   U.S. at 377-383.  As the state court reasonably confirmed, there was "no reasonable probability the

25

26

27

28    [9]The jury was instructed that any history of violent criminal activity had to be proved beyond a reasonable doubt.

9

1    instruction affected the penalty verdict."[10]  *Carpenter*, 15 Cal. 4th at 418.

2         In short, any instructional error does not rise to the level of a due process violation and, for

3    this additional reason, petitioner's claim will be denied.

4    **II.    Claim 43: Jury Instructions Regarding Weighing of Aggravating and Mitigating
            Factors**

5
6         In Claim 43, petitioner contends the trial court erred when it instructed the jury that it "shall

7    impose a sentence of death" if the aggravating factors outweighed the mitigating factors.  According

8    to petitioner, this instruction, combined with comments by the trial judge and the prosecutor,

9    violated his due process and other rights.  This issue was addressed as follows in a reasoned opinion

10   by the California Supreme Court on direct appeal.

11              12.    *Instruction on Weighing Aggravating and Mitigating Factors*

12         As this case was tried before our decision in *People v. Brown, supra,* 40 Cal.
         3d 512, the court gave the then standard instruction: "If you conclude that the
13       aggravating circumstances outweigh the mitigating circumstances, you shall impose a
         sentence of death.  However, if you determine that the mitigating circumstances
14       outweigh the aggravating circumstances, you shall impose a sentence of confinement
         in the state prison for life without the possibility of parole."

15         Although the United States Supreme Court has upheld this instruction
         (*Blystone v. Pennsylvania*, *supra*, 494 U.S. 299; *Boyde v. California, supra*, 494 U.S.
16       at ¶. 374, 376 [parallel citation omitted]), we have found that it and "particularly use
         of the word 'shall' is potentially misleading in two respects.  First, the jury might
17       erroneously infer that it could perform the balancing or weighing process in a
         mechanical fashion by comparing the number of factors in aggravation with those in
18       mitigation, or by an arbitrary assignment of weights to the factors.  Second, the jury
         might fail to understand that a juror is not required to vote for the death penalty
19       unless, as a result of the weighing process, the juror personally determines that death
         in the appropriate penalty under all the circumstances.  To determine whether the jury
20       may have been misled to defendant's prejudice in either respect, we examine the
         entire record. [Citations.]" (*People v. Cooper, supra,* 53 Cal. 3d at ¶. 844-845.)

21         Here, additional instructions "virtually eliminated any risk that the jury would
22       be misled as to its sentencing discretion or as to the process of penalty
         determination."  (*People v. Cooper*, *supra*, 53 Cal. 3d at p. 845.)  The court instructed
23       that the jury "must not simply add up the number of circumstances on each side and
         make your determination based on the greater or lesser number of circumstances
24       involved. [¶] . . . [This] mean[s] that you are not to decide the penalty in this case by
         the simple process of counting the number of circumstances that have been proved by
25       the opposing sides. [¶] It means that the final test is not in the relative number of
         circumstances, whether mitigating or aggravating, but in their relative worth and

26

27         [10]The Court also notes there was extensive aggravating evidence against petitioner, including
         multiple victims, rape, and a lengthy criminal history, all of which further lessened any likelihood
28       that the mitigation instructions prejudiced petitioner in any way.

1
2
3

convincing force. Any circumstance, whether in mitigation or aggravation, standing alone may be sufficient to support a decision as to the penalty to be imposed, provided that the circumstance outweighs all of the circumstances in opposition to it." This instruction made clear the weighing process was not mechanical and, by informing the jurors they should decide the weight and force of the factors, ensured they understood they had discretion to determine the appropriate penalty. (*Ibid.*)

4
5
6
7
8
9
10
11

The prosecutor never suggested the weighing process was mechanical or the jury had no discretion. Defendant contends remarks near the end of the prosecution's jury argument were misleading. [Citation omitted]. We disagree. The prosecutor appropriately urged the jury to decide the penalty "on the basis of the evidence" and stated that its "responsibility is to weigh the evidence." Defendant argues that comments during the jury selection also misled the jury. Our review of the record convinces us otherwise. (See also *People v. Proctor*, *supra*, 4 Cal. 4th at ¶. 547-548; *People v. DeSantis*, *supra*, 2 Cal. 4th at ¶. 1243.) Defendant meritlessly argues the court should have instructed on what the jury should do if it found the aggravating and mitigating circumstances of equal weight. (*People v. Hayes* (1990) 52 Cal. 3d 577, 643 [parallel citation omitted].) Reviewing the entire record, we find no reasonable likelihood the jury was misled as to the scope of its sentencing responsibility. (*People v. Proctor*, *supra*, 4 Cal. 4th at 549.)

*Carpenter*, 15 Cal. 4th at 418-419.

12

Petitioner has not shown the state court's reasoned opinion holding there was no

13

instructional error is contrary to, or an unreasonable application of, clearly established United States

14

Supreme Court law. Petitioner also fails to demonstrate the state court's opinion relied on an

15

unreasonable determination of the facts.

16

17

To begin with, as the California Supreme Court correctly stated, the instruction in question

18

has been upheld by the United States Supreme Court. *See Boyde*, 494 U.S. at 374-377 (holding

19

"shall impose" language of California's death penalty sentencing instructions does not violate

20

Eighth Amendment); *Blystone v. Pennsylvania,* 494 U.S. 299, 307 (1990) (holding no Eighth

21

Amendment violation where court instructed under Pennsylvania statute mandating death penalty if

22

one aggravating and no mitigating factors shown). As the Ninth Circuit has recognized, arguments

23

such as petitioner's here are "foreclosed" by *Boyde* and *Blystone. See Bonin v. Calderon*, 59 F. 3d

24

815, 849 (9th Cir. 1995).

25

In addition, as noted, to obtain federal collateral relief for instructional error, a petitioner

26

must show that the challenged instruction, or lack of instruction, by itself so infected the entire trial

27

that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72; *Cupp v. Naughten*,

28

414 U.S. 141, 147 (1973); see also *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must

1  be established not merely that the instruction is undesirable, erroneous or even "universally

2  condemned," but that it violated some [constitutional right].'").  The instruction may not be judged

3  in artificial isolation, but must be considered in the context of the instructions as a whole and the

4  trial record.  *See Estelle*, 502 U.S. at 72.  Moreover, although, as noted, the instruction challenged by

5  petitioner already had been found constitutional by the United States Supreme Court, the state court

6  went further and determined that by reason of additional instructions read to the jury, "any risk that

7  the jury would be misled as to its sentencing discretion or as to the process of penalty determination"

8  was "virtually eliminated."  *Carpenter*, 15 Cal. 4th at 419 (citation omitted).  Consequently,

9  petitioner also fails to demonstrate he suffered any prejudice as a result of the alleged error.   Again,

10  as noted, even if a petitioner meets the requirements of § 2254(d), habeas relief is warranted only if

11  the constitutional error at issue had a substantial and injurious effect or influence in determining the

12  jury's verdict.  *Brecht*, 507 U.S. at 638.

13       Because petitioner cannot demonstrate the challenged instruction and the comments made by

14  the trial court and the prosecutor were in error, let alone that they rise to the level of prejudicial

15  error, this claim will be denied.

16  **III.    Claim 46: Constitutionality of Narrowing Provisions in California's Death Penalty
         Scheme**

17
18       In Claim 46, petitioner asserts that California's death penalty law is unconstitutional because

    it fails to narrow rationally the class of murderers eligible for the death sentence.  Petitioner makes a

19  specific challenge to the inclusion of lying in wait as a special circumstance.  The California

20  Supreme Court addressed this claim as follows in a reasoned opinion on direct appeal.

21
22            13. *Constitutionality of California's Death Penalty Law and Other Contentions*

23            Defendant argues the California death penalty law in general, and the lying-
         in-wait and rape-murder special circumstances in particular, do not meaningfully
         distinguish between first degree murders that are death eligible and those that are not.
24       We have rejected the contentions.  (*People v. Crittenden, supra*, 9 Cal. 4th at ¶. 154-
         156; *People v. Morales, supra*, 48 Cal. 3d at p. 557; *People v. Harris, supra*, 47 Cal.
25       3d at p. 1100.)  Moreover, the lying-in-wait and rape-murder special circumstances
         were not all that made defendant death eligible.  The jury also found true the special
26       circumstance of multiple murder, which dramatically distinguishes this case from
         other murder cases.  Defendant challenges our holding in *People v. Anderson* (1987)
27       43 Cal. 3d 1104 [parallel citation omitted] that intent to kill is not an element of a
         felony-based special circumstance.  The argument not only lacks merit for the reasons
28       stated in *Anderson*; it is irrelevant to this case.  As the trial was held before *Anderson*

12

United States District Court

For the Northern District of California

1
2

but after our decision in *Carlos v. Superior Court* (1983) 35 Cal. 3d 131 [paralllel citation omitted], the court instructed the jury that intent to kill *was* an element of the rape-murder special circumstance.

3

*Carpenter*, 15 Cal. 4th at 420.

4        Petitioner has not shown the state court's reasoned opinion is contrary to, or an unreasonable

5   application of, clearly established Supreme Court law, nor has petitioner shown the state court's

6   opinion relied on an unreasonable determination of the facts.   Petitioner claims the California death

7   penalty scheme fails to adequately narrow the class of first-degree murderers eligible for the death

8   penalty.  As petitioner points out, a state's death penalty scheme, in order to pass constitutional

9   muster, cannot "apply to every defendant convicted of murder" and instead "must apply only to a

10  subclass of defendants convicted of murder." *See Tuilaepa v. California,* 512 U.S. 967, 972 (1994).

11  The Supreme Court has held, however, that California's death penalty scheme as a whole does

12  appropriately narrow the class of death-eligible defendants and does not apply to every defendant

13  convicted of murder. *See id.* at 975-76, 979.  In addition, the Ninth Circuit has specifically held

14  California's lying-in-wait special circumstance is constitutional. *See, e.g.*, *Edwards v. Ayers,* 542 F.

15  3d 759, 766-768 (9th Cir. 2008) (holding "California's lying in wait special circumstance instruction

16  as interpreted by the California Supreme Court does sufficiently narrow the class of first degree

17  murders to satisfy the Eighth Amendment"). *Id.* at 767.

18        Moreover, as the California Supreme Court correctly noted and as petitioner cannot dispute,

19  petitioner was death-eligible not only because the jury found true the lying-in-wait and rape-murder

20  special circumstances, but also because the jury found true the multiple murder special

21  circumstance. *Carpenter*, 15 Cal. 4th at 420.  Thus, even if the lying-in-wait special circumstance

22  did not sufficiently narrow the class of death-eligible murders, an allegation that, as discussed above,

23  petitioner cannot support given the applicable case law, petitioner's death sentence would still

24  stand.[11]

25

26
27
28

[11] Petitioner cites to *Ashmus v. Martel*, C 93-594 TEH, which, according to petitioner, addresses a similar claim.  Petitioner also states the narrowing claim in *Ashmus* has been the subject of an evidentiary hearing, and informs the Court he will move for an evidentiary hearing on his claim.  As discussed above, this Court finds petitioner's claim suitable for dismissal on the record before it.  Furthermore, in the recent case of *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), the

**United States District Court**
For the Northern District of California

1    Accordingly, this claim will be denied.

2  **IV.    Claim 59: Execution Following Lengthy Confinement**

3        In Claim 59, petitioner argues that his execution after a lengthy period of confinement would

4  constitute cruel and unusual punishment in violation of the Eighth Amendment.  This claim was

5  denied by the California Supreme Court in a summary decision on habeas review.

6        Petitioner cannot demonstrate the state court's rejection of the claim was an unreasonable

7  application of clearly established Supreme Court law, for the reason that the claim is barred by

8  *Teague* and also is without merit.

9        As amended by AEDPA, 28 U.S.C. 2254(d) codifies and amends the non-retroactivity

10  principle announced in *Teague  v. Lane*, 489 U.S. 288 (1989).  *See Williams v. Taylor*, 529 U.S. 362,

11  379–380, 412 (2000).  Under *Teague,* a federal court is precluded from granting habeas relief to a

12  state prisoner based on a constitutional rule of criminal procedure announced after his conviction

13  and sentence became final.  *See Teague*, 489 U.S. at 310–316; *see also Penry v. Lynaugh*, 492 U.S.

14  302, 313–314 (1989) (holding non-retroactivity principle applicable in capital sentencing context).

15  Put another way, federal courts are prohibited from either creating or applying new rules on

16  collateral review.  *See Butler v. McKellar*, 494 U.S. 407, 412 (1990).  Section 2254(d) provides that

17  no habeas relief may be granted as to any claim that was adjudicated on the merits in state court

18  unless the prior decision was contrary to, or involved an unreasonable application of, clearly-

19  established federal law as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).

20  *Teague*'s prohibition against reliance on new rules is the functional equivalent of § 2254(d)'s

21  requirement of reliance on "clearly established law."  *Williams*, 529 U.S. at 379, 412.  Further,

22  AEDPA has added the requirement that the "clearly established law" be limited to that "determined

23  by the Supreme Court of the United States."  28 U.S.C. 2254(d)(1).  This additional requirement

24  extends the *Teague* principle "by limiting the source of doctrine on which a federal court may rely

25  in addressing the application for a writ."  *Williams*, 529 U.S. at 381–82.

26        Only "two narrow exceptions" exist as to *Teague's* non-retroactivity principle.  *See Caspar*

27  _____

28  Supreme Court held review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits."

*v. Bohlen*, 510 U.S. 383, 390 (1994).  The first exception is for new rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe."  *Teague*, 489 U.S. at 307 (internal quotation and citation omitted).  The second exception is for "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding."  *Saffle v. Parks*, 494 U.S. 484, 495 (1990) (quoting *Teague*, 489 U.S. at 311).  Such exceptions are rarely found.  *See, e.g.*, *O'Dell v. Netherland*, 521 U.S. 151, 167 (1997) (holding new rule, requiring capital defendant be permitted to inform jury he will be ineligible for parole if not sentenced to death, not within "watershed rules" exception to *Teague*, as it did not "alter the Supreme Court's understanding of the bedrock procedural elements" essential to fair trial) (internal quotations and citations omitted).

Moreover, the Ninth Circuit has concluded that, given the absence of any clearly established Supreme Court authority holding an execution following a long confinement violates the Eighth Amendment, such claims are *Teague*-barred.  *Smith v. Mahoney*, 611 F.3d 978, 998-999 (9th Cir. 2010) (citing *Allen v. Ornoski*, 435 F. 3d 946 (9th Cir. 2006) (noting "[t]he Supreme Court has never held that execution after a long tenure on death row is cruel and unusual punishment.")).  Nor does such a claim fall into one of *Teague's* narrow exceptions.

In short, there is no authority supporting petitioner's claim, and it will be denied.

## V.      Claim 62: Fairness of California Supreme Court's Adjudication of Death Penalty Cases

In Claim 62, petitioner argues the California Supreme Court is unable to fairly review capital cases, in part because, according to petitioner, the California judiciary does not act independent of external pressures.  This claim was rejected on the merits in a summary opinion by the California Supreme Court.

Petitioner has not shown the state court's decision is objectively unreasonable.  *See Delgado v. Lewis*, 223 F.3d at 982.  Moreover, this Court has conducted an independent review of the record, and as set forth below, petitioner's claim has no merit.

As a threshold matter, petitioner has not shown such claim is cognizable on federal habeas review.  As respondent correctly points out, to the extent petitioner is challenging the manner in which the state court conducted a habeas review of his claims, such challenge fails for the reason

1  that petitioner cannot demonstrate there is any federal constitutional right to state habeas

2  proceedings.  As a result, a claim "alleging errors in the state post-conviction review process is not

3  addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F. 2d 26. 26 (9th Cir.

4  1989).

5         Moreover, there is nothing in the California Supreme Court's lengthy and exhaustive opinion

6  on direct review indicating it did not meaningfully consider petitioner's claims.  *See Carpenter*, 15

7  Cal. 4th at 344-425.  Further, the Ninth Circuit has expressly held California's death penalty statute

8  "ensures meaningful appellate review." *Williams v. Calderon*, 52 F. 3d 1465, 1484 (9th Cir. 1995).

9         Nonetheless, petitioner maintains he was denied meaningful appellate review because "the

10  California Supreme Court labor[s] under political and economic pressures which no longer permit it

11  to decide death penalty cases in a fair and impartial manner."  (*See* First Amended Petition at 317.)

12  Such argument is wholly lacking in support.

13         There is a "general presumption that judges are unbiased and honest." *Ortiz v. Stewart*, 149

14  F.3d 923, 938 (1998) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).  Nothing in petitioner's

15  argument regarding political pressure suffices to overcome said general presumption.  Petitioner

16  identifies nothing in the record of his own case that might suggest, let alone demonstrate, any bias,

17  and petitioner cannot deny that although in many instances capital sentences have been upheld, the

18  California Supreme Court also has issued decisions in which capital sentences have been reversed.

19  Further, while petitioner notes that three justices of the California Supreme Court were removed in a

20  1986 retention election in which those justices' reversals of death penalty verdicts were criticized,

21  petitioner cannot demonstrate the justices who considered his case were in any manner influenced

22  by a fear of some future challenge and removal from the bench.

23         In sum, this Court having conducted an independent review of the record, finds petitioner

24  fails to demonstrate the state court's denial of his claim was objectively unreasonable, and,

25  accordingly, the claim will be denied.

26  **VI.    Claim 63: International Law**

27         In Claim 63, petitioner asserts his conviction and death sentence violate international law, in

28  particular, "customary international law," the "Universal Declaration of Human Rights," the

**United States District Court**
For the Northern District of California

1   "International Covenant on Civil and Political Rights," and the "American Declaration on the Rights

2   and Duties of Man." (*See* Pet.'s Brief Re: Group I Claims at 64.)  This claim was denied by the

3   California Supreme Court in a summary opinion on habeas review.

4          The claim borders on frivolous.  First, petitioner cannot demonstrate that any claim based on

5   a violation of international law is even cognizable on federal habeas review, given that such review

6   is expressly limited to claims that a petitioner is in custody "in violation of the Constitution or laws

7   or treaties of the United States."  *See* 28 U.S.C. § 2254(a).  Needless to say, International law is not

8   United States law, and petitioner admits that neither the Universal Declaration of Human Rights nor

9   the American Declaration on the Rights and Duties of Man are treaties that create forms of relief

10  enforceable in United States courts.

11         In addition, because there is no clearly established federal law holding California's death

12  penalty violates international law, or that such alleged violation gives rise to a cognizable claim on

13  habeas review, petitioner's claim is barred by *Teague*.  Lastly, the claim fails because such lack of

14  citation to authority precludes a finding that the state court's denial was objectively unreasonable.

15         In short, the claim is not cognizable, is meritless, and will be denied.

16                                   **Conclusion**

17         For the foregoing reasons, Claims 42, 43, 46, 59, 62 and 93 of petitioner's First Amended

18  Petition are hereby DENIED.

19         **IT IS SO ORDERED.**

20  DATED: September 28, 2011

    MAXINE M. CHESNEY
21  United States District Judge

22

23

24

25

26

27

28