United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9          IN THE UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13    DAVID J. CARPENTER,                    NO. C 98-2444 MMC

14              Petitioner,

15         v.                               ORDER RE: GROUP 2 CLAIMS

16    KEVIN CHAPPELLE, Acting Warden of      **DEATH PENALTY CASE**
      California State Prison at San Quentin,
17
                Respondent.
18

19                                    **Introduction**

20         The instant case arises from petitioner's conviction and death sentence for the first degree

21    murders of Ellen Hansen ("Hansen") and Heather Scaggs ("Scaggs"), the attempted murder of

22    Steven Haertle, the attempted rape of Hansen, and the rape of Scaggs. *See People v. Carpenter*, 15

23    Cal. 4th 312 (1997).  The crimes were committed in Santa Cruz County and, following a change of

24    venue, the case was tried in Los Angeles County.[1]  On April 28, 1997, the California Supreme Court

25    affirmed petitioner's conviction and sentence on direct appeal. *Id*.  Petitioner's subsequent petition

26    for a writ of certiorari was denied by the United States Supreme Court on January 20, 1998.  *See*

27

28         [1] Following his trial in Los Angeles County, petitioner was tried, convicted, and sentenced
      to death in San Diego County for five murders that were committed in Marin County.  *See
      Carpenter*, 15 Cal. 4th at 344 n.1.

*Carpenter v. California*, 522 U.S. 1078 (1998).

Petitioner filed his first state habeas petition on December 24, 1996; the petition was denied by the California Supreme Court on May 27, 1998.   Prior to the denial of his state habeas petition, petitioner filed in the United States District Court for the Central District of California a request for appointment of federal habeas counsel and a motion for change of venue.   On June 12, 1998, petitioner's venue motion was granted, and the instant habeas case was transferred to the Northern District.

Pursuant to the one-year statute of limitations set forth in 28 U.S.C. § 2244(d), petitioner's federal habeas petition was due by May 27, 1999.  The Court, however, granted petitioner's motion to  equitably toll the running of the limitations period for five months, to and including October 27, 1999. *See* Order Denying Motion to Vacate and Granting in Part and Denying in Part Motion for Equitable Tolling at 38.[2]   Petitioner subsequently filed in this court his Petition for Writ of Habeas Corpus ("Original Petition")[3], a Notice of Additional Claims, and a Motion to Hold Proceedings in Abeyance, and filed in state court his second state habeas petition.  On December 1, 1999, the California Supreme Court denied petitioner's second state habeas petition.  On December 6, 1999, petitioner filed his First Amended Verified Petition for Writ of Habeas Corpus ("First Amended Petition") and withdrew the Motion to Hold Proceedings in Abeyance.

Respondent subsequently filed a Motion to Dismiss First Amended Petition, which primarily asserted procedural grounds that, respondent argued, supported dismissal of at least certain portions of petitioner's First Amended Petition.  The Court thereafter addressed, in a series of orders, each of those procedural issues. *See, e.g. Carpenter v. Ayers*, 548 F. Supp. 2d 736 (N.D. Cal. 2008).

In 2008, based on allegations in the First Amended Petition and the applicable law, the Court issued an order requiring petitioner's competency be determined in a timely manner, pursuant to *Rohan ex. rel. Gates v. Woodford*, 334 F. 3d 803, 817 (9th Cir. 2003).  Based on the case record and

---

[2] By the same order, the Court, as to petitioner's unexhausted claims, denied petitioner's request for tolling to a date thirty days from an order identifying such claims. *Id.*

[3]Because petitioner filed his federal petition after April 24, 1996, the date on which the provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") went into effect, those provisions apply to the proceedings in this court. *See Lindh v. Murphy*, 521 U.S. 320.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   the report of stipulated expert Dr. Robert Roesch, the Court found petitioner competent to pursue his

2   habeas claims.[4]

3         The parties subsequently met and conferred, and agreed to a briefing schedule to address the

4   remainder of petitioner's claims.  The schedule also separated the claims into nine separate groups.

5   This briefing schedule was later amended by this Court.  An earlier Order denied Group I Claims 42,

6   43, 46, 59, 62 and 63.  This Order addresses Group II Claims 49, 50, 51, 52, 54 and 55.

7                                         **Legal Standard**

8         Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court

9   should not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits

10  in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

11  contrary to, or involved an unreasonable application of, clearly established Federal law, as

12  determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

13  on an unreasonable determination of the facts in light of the evidence presented in the State court

14  proceeding."  28 U.S.C § 2254(d).[5]  A federal court must presume the correctness of the state court's

15  factual findings, and the presumption of correctness may only be rebutted by clear and convincing

16  evidence.  28 U.S.C. § 2254(e)(1).

17        The "contrary to" and "unreasonable application" clauses of section 2254(d) have separate

18  and distinct meanings.  *See Williams v. Taylor*, 529 U.S. 362, 404 (2000).  A state court's decision is

19  "contrary to" clearly established United States Supreme Court law if it fails to apply the correct

20  controlling authority or if it applies the controlling authority to a case involving facts materially

21  indistinguishable from those in a controlling case, but nonetheless reaches a different result.  *Id.* at

22  413-414.  A decision is an "unreasonable application" of United States Supreme Court law if  "the

23  state court identifies the correct governing legal principle . . . but unreasonably applies that principle

24  to the facts of the prisoner's case."  *Id.* at 414.  In *Harrington v. Richter*, the Court further stresses

25  _____

26        [4] Petitioner appealed certain of the Court's orders regarding the competency determination to
    the Ninth Circuit Court of Appeals.  On July 31, 2009, the appeal was dismissed and denied in an
27  unpublished memorandum opinion.  *Carpenter v. Ayers*, Nos. 08-99019 & 08-99020, 2009 WL
    2387288 (9th Cir. 2009).

28        [5] The parties agree AEDPA applies to this matter.

1   that "'an *unreasonable* application of federal law is different from an *incorrect* application of federal

2   law.'" 131 S. Ct. 770, 785 (2011) (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state

3   court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

4   jurists could disagree' on the correctness of the state court's decision." *Id*. at 786 (citing

5   *Yarborough v. Alvarado*, 541 U.S. 653, 664 (2004)).

6        "[A] federal habeas court may not issue the writ simply because the court concludes in its

7   independent judgment that the relevant state-court decision applied clearly established federal law

8   erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyer v.*

9   *Andrade*, 538 U.S. 63, 75-76 (2003). "While the 'objectively unreasonable' standard is not self-

10  explanatory, at a minimum it denotes a great[] degree of deference to the state courts." *Clark v.*

11  *Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).

12       Holdings of the Supreme Court at the time of the state court decision are the only definitive

13  source of clearly established federal law under AEDPA. *See Williams*, 529 U.S. at 412. While

14  circuit law may be "persuasive authority" for purposes of determining whether a state court decision

15  is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are

16  binding on the state courts and only those holdings need be reasonably applied. *See Clark*, 331 F.3d

17  at 1070. A state court's decision need not cite to, and a state court need not be aware of federal law

18  to pass muster under AEDPA; rather, "so long as neither the reasoning nor the result of the state-

19  court decision contradicts [federal law]", the decision may be upheld. *Early v. Packer*, 537 U.S. 3, 8

20  (2002).

21       When a federal court is presented with a state court decision that is unaccompanied by a

22  rationale for its conclusions, the court has no basis other than the record "for knowing whether the

23  state court correctly identified the governing legal principle or was extending the principle into a

24  new context." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such situations, federal

25  courts must conduct an independent review of the record to determine whether the state court

26  decision is objectively unreasonable. *Id.* Specifically, "where a state court's decision is

27  unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there

28  was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

1  Even if a petitioner meets the requirements of section 2254(d), habeas relief is warranted

2  only if the constitutional error at issue had a substantial and injurious effect or influence in

3  determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Under this

4  standard, petitioners "may obtain plenary review of their constitutional claims, but they are not

5  entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual

6  prejudice.'" *Brecht*, 507 U.S. at 637 (citing *United States v. Lane*, 474 U.S. 438, 439 (1986)).

7  **Analysis**

8  **I.     Claim 49: Socioeconomic Data Regarding Prospective Jurors**

9  In Claim 49, petitioner claims the trial court erred in denying his motion for an order

10 requiring prospective jurors to complete a questionnaire asking for socioeconomic data; by such

11 motion petitioner also sought an order requiring payment of additional jury fees, to limit the number

12 of jurors excused for financial hardship. According to petitioner, the denial of his motion violated

13 his Sixth Amendment right to a jury selected from a fair cross-section of the community.

14 The California Supreme Court denied the claim in a reasoned decision on direct appeal,

15 holding the claim lacked merit for the following reasons:

16    The questionnaire could not have significantly aided any potentially
      meritorious challenge to the jury. In order to establish underrepresentation, and thus
17    denial of an impartial jury drawn from a fair cross-section of the community, a
      defendant must make a prima face showing: '(1) that the group alleged to be excluded
18    is a "distinctive" group in the community; (2) that the representation of this group in
      the venires from which juries are selected is not fair and reasonable in relation to the
19    number of such persons in the community; and (3) that this underrepresentation is
      due to a systematic exclusion of the group in the jury selection process.' (*Duran v.*
20    *Missouri* (1979) 439 U.S. 357, 364 [parallel citations omitted].) . . .

21    We have already held that persons excused for hardship or persons of low
      income do not constitute a cognizable class, and that the court need not pay jurors
22    more than the statutory amount. [citations omitted]. To the extent defendant argues
      to the contrary, the argument thus fails. . . .

23
      [W]e perceive no abuse of discretion.
24
   *Carpenter*, 15 Cal. 4th at 351-352.
25
   Petitioner fails to show the state court's denial of said claim is contrary to, or an
26
   unreasonable application of, clearly established United States Supreme Court law. Petitioner also
27
   fails to demonstrate the state court's denial relied on an unreasonable determination of the facts.
28

United States District Court

For the Northern District of California

1  Petitioner cites no case or statutory law supporting his assertion that the Sixth Amendment

2  requires the gathering of economic data from a jury pool in order to insure a fair cross-section.

3  Rather, the cases on which petitioner relies are inapposite.

4  In that regard, petitioner cites to *Thiel v. Southern Pacific Railroad Co.*, 328 U.S. 217, 220

5  (1946). In *Thiel,* which concerned a civil suit for damages and not a criminal trial, the court and the

6  jury commissioner testified that they intentionally excluded from the jury lists "all persons who

7  work for a daily wage," a practice the Supreme Court stated could not "be justified by state or

8  federal law." *Id.* at 221-222. The Supreme Court confirmed, however, "that a federal judge would

9  be justified in excusing a daily wage earner for whom jury service would entail an undue financial

10  hardship." *Id.* at 224. Here, petitioner does not allege and cannot show that persons of a certain

11  economic status were intentionally and completely excluded; consequently, his reliance on *Thiel* is

12  unavailing. Petitioner also cites to *Berghuis v. Smith*, 130 S. Ct 1382, 1395-1396 (2010). The

13  purpose of petitioner's citation to *Berghuis* is unclear, as the Supreme Court held the habeas

14  petitioner therein had *not* demonstrated there was clearly established precedent supporting his claim

15  that certain factors in jury selection had resulted in the unconstitutional representation of African-

16  Americans in the jury pool. *Id.* Indeed, *Berghuis* supports respondent's position that petitioner's

17  claim must be denied. *Id.* at 1395.

18  Moreover, petitioner cannot demonstrate that any such alleged error of the trial court was

19  prejudicial to him. *See Brecht*, 507 U.S. at 637. There is no evidence that, had petitioner's motion

20  requesting a questionnaire on socioeconomic data and/or additional jury fees been granted, the result

21  of petitioner's trial would have been different. *Id.*

22  Accordingly, this claim will be denied.

23  **II.  Claim 50: Selection of Guilt Phase Jury**

24  In Claim 50, petitioner claims there were numerous errors in the selection of the guilt phase

25  jury that violated his constitutional rights. First, he alleges it was constitutional error to excuse a

26  particular prospective juror for cause. Second, he alleges the denial of two defense challenges for

27  cause violated his constitutional rights. Third, he alleges the refusal to give a cautionary instruction

28  violated his constitutional rights. In particular, petitioner argues, the above-referenced errors were

violations of state law, that the state laws in question amounted to a state-created liberty interest

protected under the federal Due Process Clause, and that such errors violated his Eighth Amendment

right to a reliable process of adjudication.  Each said claim will be considered in turn.

### A.        Dismissal of Potential Juror Ignacio Castor for Cause

Petitioner claims a potential juror, Ignacio Castor ("Castor"), was excused for cause over

defense objection, in violation of state law.   Castor was excused because of his opposition to the

death penalty, and the trial judge did not permit petitioner's counsel to extensively question him

before he was excused; according to petitioner, said rulings violated former California Penal Code

section 1078.  Petitioner also contends the state law at issue amounted to a state-created liberty

interest protected by the due process clauses of the Fifth and Fourteenth Amendments.

The California Supreme Court denied this claim, reasoning as follows:

> 4. *Guilt Jury Selection*
>
> Defendant challenges several rulings during selection of the guilt jury.  He contends the court erroneously excused one prospective juror [Castor] for cause without allowing defense counsel to question him.  After that juror expressed opposition to the death penalty, the court asked, "Are you so opposed to the death penalty that you could not find a man guilty or find that special circumstances were true because somebody else might impose the death penalty if you did?"  The juror answered, "Yes."  The court explained that the juror would not be called upon to decide penalty but only guilt, and that, if the guilt verdict warranted it, another jury would decide the punishment.  When the court asked if the juror could "be fair in deciding is he guilty or not, knowing that if you did find him guilty, somebody else might say the death penalty," the juror answered, "I don't think I can."  Upon further questioning, he said he could not vote for guilt under such circumstances even if he were convinced beyond a reasonable doubt the defendant was guilty.  He could not vote guilty "if it is a decision between, you know, life in prison or death.  Maybe it would appear different if I knew which one they were going to do, you know.  Maybe it would be different."  Finally the court asked, "You feel so strongly that your conscience just wouldn't let you do anything else?"  The juror answered, "Yes, that's true."  The court refused to allow defense counsel to ask questions and excused the juror for cause.
>
> Defendant claims the questions were improper and the answers inadequate to support the challenge for cause.  We disagree.  "If the offense charged [is] punishable with death, the entertaining of such conscientious opinions as would preclude [the juror's] finding the defendant guilty" is grounds to remove the juror for cause. [Citations omitted.] The questions were reasonably directed to determining whether to excuse the juror under this standard, and the record amply supports the court's ruling. (*People v. Walsh* (1993) 6 Cal. 4th 215, 256 [parallel citations omitted].)
>
> Defendant also argues that the "court committed an even more basic error by excusing [the juror] prior to questioning by defense counsel."  Again, we disagree. The court has discretion to refuse to allow defense counsel to question jurors for the

United States District Court

For the Northern District of California

1
2
3
4

purpose of rehabilitation if their "answers made their disqualification unmistakably clear. . . ." *People v. Bittaker, supra*, 48 Cal. 3d at p. 1085 [additional citations omitted].) "We do not question a judge's discretion to decide that a juror's disqualification is so clear that further voir dire is pointless, and to excuse the juror. . . ." (*People v. Bittaker, supra*, at p. 1085.) Defendant argues that in some respects the juror's answers were equivocal, but as a whole the juror made clear he could not find defendant guilty if the death penalty were possible. We find no abuse of discretion.

5

*People v. Carpenter*, 15 Cal. 4th 31, 354-356 (1997*).*

6
7
8
9
10

Petitioner has not shown the state court's reasoned opinion holding there was no error in the removal of Castor is contrary to, or an unreasonable application of, clearly established United States Supreme Court law. Petitioner also fails to demonstrate the state court's opinion relied on an unreasonable determination of the facts.

11
12
13
14

Petitioner argues that, because the state court addressed his claim under state law, this Court is free to address his federal constitutional claims pertaining to Castor's dismissal *de novo*. In support of his argument, petitioner cites *Williams v. Cavazos*, 646 F.3d 626, 636-641 (9th Cir. 2011), *cert. granted* 181 L. Ed. 2d 806 (2012).

15
16
17
18
19
20
21
22
23
24
25

Petitioner's reliance on *Williams*, which currently is under review by the Supreme Court, is misplaced. Petitioner's federal constitutional claims of error are based solely on what he alleges is his "state-created liberty interest" under California statutes governing juror dismissal. As the Supreme Court has made clear, not every state law error is, *ipso facto*, a federal due process violation. *See Rivera v. Illinois*, 556 U.S. 148, 159 (2009). Rather, errors of state law implicate the federal constitution only if the error "so infused the trial with unfairness as to deny due process of law." *Estelle v. McQuire*, 502 U.S. 62, 75 (1991). More importantly, as the California Supreme Court's reasoned opinion confirmed, there was no violation of state law in the dismissal of Castor. A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988). Consequently, petitioner cannot persuasively argue that his federal due process rights were implicated.

26
27
28

Petitioner also states, without explanation, that he is bringing his claim in light of *Evans v. Lewis*, 855 F. 2d 631, 635 (9th Cir. 1998). In *Evans,* however, the Ninth Circuit held the removal of a guilt phase juror based on the juror's view of the death penalty, "even if for insufficient cause," did

1   not violate the defendant's right to an impartial jury.  *See id.*  *Evans* supports respondent's position

2   that this claim must be denied.

3        Further, petitioner has not shown he suffered any prejudice by reason of any such alleged

4   error on the part of the trial court.  *See Brecht*, 507 U.S. at 637.  There is no evidence that if

5   petitioner's counsel had been allowed to further question Castor, the result of petitioner's trial would

6   have been different.  *See Id.*

7        Accordingly, this claim will be denied.

8            **B.      Denial of Two Defense Challenges for Cause**

9        Petitioner claims the trial judge should have dismissed two prospective jurors for cause;

10  instead, they were dismissed after being peremptorily challenged by petitioner's counsel.  Petitioner

11  makes no real argument in support of this claim in either his opening or reply brief, opting instead to

12  submit the claim in light of *Rivera v. Illinois*, 556 U.S. 148, 158-159 (2009).

13       Petitioner cannot demonstrate the state court's rejection of this claim was an unreasonable

14  application of clearly established Supreme Court law.  *Rivera* offers no support for petitioner's

15  claim, and instead supports respondent's position that the claim must be denied.   In *Rivera*, the

16  Supreme Court cited approvingly to *Ross v. Oklahoma,* 487 U.S. 81, 86-88 (1988)*,* in which it held

17  the peremptory challenge of a juror that should have been removed for cause did not result in a

18  constitutional violation, because, ultimately, the jury did not include the juror in question and there

19  was no showing that any "member of the jury as finally composed was removable for cause." *See*

20  *Rivera,* 556 U.S. at 158.  Petitioner's case is no different in that regard.

21       Further, for similar reasons, petitioner has not demonstrated that any such alleged error was

22  prejudicial to him, as there is no evidence that the result of the trial would have been different had

23  petitioner's challenges for cause been granted.  *See Brecht*, 507 U.S. at 637.

24       Accordingly, this claim will be denied.

25           **C.      Trial Court's Refusal To Give A Cautionary Instruction**

26       Petitioner claims it was constitutional error for the trial judge to refuse to give a cautionary

27  instruction after a prospective juror stated she was terrified and would like to be excused. According

28  to petitioner, lack of a cautionary instruction after the prospective juror's statement violated his right

**United States District Court**
For the Northern District of California

9

1    to an impartial jury.

2        This claim was rejected by the California Supreme Court in its reasoned opinion on direct

3    appeal.  In particular, the state court held, the trial court's refusal to give a cautionary instruction to

4    the remaining members of the venire was reasonable because "the juror expressed a generalized fear

5    of sitting in a case such as this, not a specific fear of defendant," *Carpenter*, 15 Cal. 4th at 355-356,

6    and, in addition, "[t]he trial court was in the best position to judge the need or advisability of a

7    cautionary instruction," *id*.  Consequently, the California Supreme Court stated: "We find no abuse

8    of discretion."  *Id.*

9        Petitioner has not shown the state court's reasoned opinion was contrary to, or an

10   unreasonable application of, clearly established United States Supreme Court law.  Petitioner also

11   fails to demonstrate that the state court's opinion relied on an unreasonable determination of the

12   facts.   Petitioner does not, and indeed cannot, cite to any case establishing he was entitled to a

13   cautionary instruction, nor can petitioner show the alleged error was prejudicial to him.  *See Brecht*,

14   507 U.S. at 637.  Petitioner cites to no evidence suggesting the impartiality of the other prospective

15   jurors was compromised by the remark, nor has he shown the result of the trial would have been

16   different had the judge cautioned the remaining prospective jurors.

17       Accordingly, this claim will be denied.

18   **III.    Claim 51: Selection of Penalty Phase Jury**

19       In Claim 51, petitioner claims various errors in the selection of the penalty phase jury

20   violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.  In particular,

21   petitioner alleges, the trial court both improperly granted eleven prosecution challenges for cause

22   and improperly denied numerous defense challenges for cause.

23                   **A.       Prosecution Challenges**

24       Petitioner argues it was constitutional error for the trial court to dismiss eleven prospective

25   jurors who were challenged for cause by the prosecution on the basis of their views about the death

26   penalty.  The Supreme Court has held that potential jurors may be dismissed for cause if the juror's

27   views on the death penalty "would prevent or substantially impair the performance of his duties as a

28   juror in accordance with his instructions and his oath."  *Wainwright v. Witt*, 469 U.S. 412, 424

United States District Court

For the Northern District of California

10

United States District Court

For the Northern District of California

1  (1985).  This claim was denied by the California Supreme Court in a reasoned opinion on direct

2  appeal.  *Carpenter*, 15 Cal. 4th at 357.

3          To begin with, petitioner contends the views of the prospective jurors were tainted by an

4  instruction from the trial court that he calls a "mandatory sentencing formula."  Petitioner previously

5  made a claim regarding the constitutionality of the same instruction, which this Court denied.  *See*

6  Order Denying Group I Claims at 10-12, filed September 28, 2011.[6]

7          Petitioner argues the trial court further erred when it refused to allow defense counsel to ask

8  the jurors additional questions regarding the above-referenced instruction.  As the California

9  Supreme Court concluded, however, the instruction was permissible, and there was no further error

10 because the trial court "merely sustained objections it found misleading or ambiguous" and "did not

11 prevent the defense from effectively pursuing the subject."  *Carpenter*, 15 Cal. 4th at 358.   Petitioner

12 has not shown the state court's decision was an unreasonable application of clearly established

13 federal law.

14         Petitioner also argues it was error for the California Supreme Court to rely on *Wainwright w.*

15 *Witt*, 469 U.S. 412 (1985), to review the qualification process used in petitioner's case, when the

16 trial court relied on *Witherspoon v. Illinois*, 391 U.S. 510 (1968).  Specifically, petitioner challenges

17 the following determination:

18         A prospective juror may be excused for cause if that juror's views on the
       death penalty "would 'prevent or substantially impair the performance of his duties as
19     a juror in accordance with his instructions and his oath.'" (*Wainwright v. Witt* (1985)
       469 U.S. 412, 424 [additional citations omitted]).  We apply this standard even
20     though trial occurred before *Wainwright v. Witt*, *supra*, 469 U.S. 412, was decided.

21 *Carpenter*, 15 Cal. 4th at 357.

22         In support of such challenge, petitioner points out that *Witt* liberalized the standard from that

23 articulated in *Witherspoon;* specifically, a juror who might have been qualified under *Witherspoon*

24 could properly be excused under *Witt*.  Petitioner, however, can point to no case authority or

25

26 _____
       [6] As the California Supreme Court held, the trial court "never suggested that the death
27 penalty was mandatory."  *Carpenter*, 15 Cal. 4th at 357. Moreover, the instruction at issue has been
   upheld by the United States Supreme Court.  *See Blystone v. Pennsylvania,* 494 U.S. 299, 307
28 (1990). Petitioner thus was and remains unable to demonstrate the state court's denial of the claim
   was an unreasonable application of clearly established federal law.

11

United States District Court
For the Northern District of California

1   statutory law calling the state court's analysis into question, and, equally important, petitioner fails to

2   show the trial court erred under either standard.  Nor has petitioner shown he suffered any prejudice.

3       Lastly, petitioner argues that, even if there was no error as discussed above, certain of the

4   jurors challenged by the prosecution should not have been dismissed for cause.  The California

5   Supreme Court addressed this claim in its reasoned opinion on direct appeal as follows:

6       Defendant contends the answers of five of the jurors do not support their
        excusal.  Our review of the record convinces us otherwise.  The rulings come within
7       the trial court's wide discretion to determine the qualification of jurors. (*People v.
        Rodrigues, supra,* 8 Cal. 4th at p. 1146.)  Although some of the jurors were more
8       equivocal than others, the voir dire as a whole supports each of the rulings. (*People v.
        Livaditis,* (1992) 2 Cal. 4th 759, 772-773 [parallel citations omitted].)

9
        Defendant contends the court committed an additional error as to two of the
10      excused jurors.  After the individual voir dire concerning the death penalty, the
        parties did not challenge either of the two.  Later, during final stages of jury selection,
11      the court asked the entire remaining jury panel whether anyone's "attitude has
        changed toward serving on a panel that may be called upon to assess a penalty in this
12      case."  One of the two jurors raised her hand.  The second sent the court a note
        saying, "After long, careful thought, I know that I could not vote for the death
13      penalty."  Over defense objection, the court and parties requestioned both
        individually.   The court excused them for cause because of their newly expressed
14      views on the death penalty.  Defendant argues the court should not have reopened the
        questioning.  We disagree.  Weeks had passed since the individual questioning, and it
15      was reasonable to ask if anyone's views had changed.  Indeed, *defense counsel* asked
        the same panel if anyone had been victimized by a violent crime since the previous
16      questioning, even though the subject had already been explored.  This question
        elicited a response that led to a juror's excusal.  Defendant also argues the court
17      violated the rule of *Hovey v. Superior Court* (1980) 28 Cal. 3d 1 [parallel citations
        omitted] that questions regarding the death penalty be asked of juror's individually.
18      However, the court asked the panel as a whole only whether anyone's attitude had
        changed.  The subsequent questioning was individual.  As the court stated, "nobody
19      has been asked their attitude about the death penalty in the presence of anyone else at
        any time."
20
    *Carpenter*, 15 Cal. 4th at 358.

21      Petitioner has not shown the state court's denial of this claim was an unreasonable
22
    application of clearly established federal law, nor has petitioner shown the state court's opinion
23
    relied on an unreasonable determination of the facts.  All of the subject potential jurors gave answers
24
    that were facially disqualifying under the applicable state law.  Tellingly, petitioner cites to no
25
    federal law in his discussion of this claim.
26
        Accordingly, to the extent this claim is based on prosecution challenges, the claim will be
27
    denied.
28

### B.    Defense Challenges

Petitioner next turns to the defense challenges for cause, arguing there was a lack of "symmetry" as to the parties' respective challenges.  According to petitioner, the fact that the trial court upheld a greater number of prosecution challenges for cause than defense challenges for cause violated his due process rights.  This claim was addressed and denied by the California Supreme Court, which explained:

> Defendant also contends the court erroneously denied several defense challenges for cause.  As with the similar guilt jury contention, our review of the record discloses no error, but defendant has failed to show prejudice even if we assume error.  Defendant peremptorily challenged the jurors in question and neither exhausted his peremptory challenges nor expressed dissatisfaction with the ultimate jury.  (*People v. Crittenden* (1994) 9 Cal. 4th 83, 121 [parallel citations omitted].)  Defendant finally contends that the court showed bias in favor of the prosecution by inconsistently granting one prosecution challenge for cause and denying an assertedly similar defense challenge for cause.  The two situations, however, were different and warranted different rulings. The court treated both parties fairly during jury selection.

*Carpenter*, 15 Cal. 4th at 358-359.

Petitioner has not shown the state court's reasoned denial of this claim was an unreasonable application of clearly established federal law.  None of the jurors that petitioner maintains should have been dismissed for cause served on petitioner's jury. As the Supreme Court has held, the peremptory challenge of a juror that should have been removed for cause does not result in a constitutional violation, where the jury as ultimately constituted does not include the juror in question. *See Ross,* 487 U.S. at 86-88.   Moreover, petitioner cannot demonstrate prejudice under *Brecht.*

Accordingly, to the extent this claim is based on defense challenges, the claim will be denied.

## IV.    Claim 52: Voir Dire

In Claim 52, petitioner claims the trial court's limitation of voir dire and remarks by the trial judge during voir dire deprived him of his constitutional rights to due process, a fair trial and an impartial jury.  Each of petitioner's contentions will be considered in turn.

### A.    Limitations During Voir Dire

Petitioner first asserts certain limitations on the voir dire of prospective penalty phase jurors violated his constitutional rights.  This claim was addressed by the California Supreme Court in its

13

1    opinion on direct appeal and was denied for the following reasons:

2            Defendant contends the court unduly restricted his questioning of prospective
     penalty jurors.  Under the law that prevailed at trial (it is different now; see *People v.*
3    *Edwards* (1991) 54 Cal. 3d 787, 829-830, fn. 9 [parallel citations omitted]), "counsel
     should be allowed to ask questions reasonably designed to assist in the intelligent
4    exercise of peremptory challenges whether or not such questions are also likely to
     uncover grounds sufficient to sustain a challenge for cause."  (*People v.*
5    *Williams* (1981) 29 Cal. 3d 392, 407[parallel citations omitted].  In *Williams*, we
     "[left] intact the considerable discretion of the trial court to contain voir dire within
6    reasonable limits."  (*Id.* at p. 408) . . . )

7            We have reviewed the restrictions and find each came within the court's
     discretion.  The court generally allowed defense counsel to question jurors at length.
8    For example, the voir dire of the first juror defendant discusses, who actually served
     on the jury, consumed 51 pages of reporter's transcript, of which 35 pages was
9    defense questioning.  The occasional restriction regarding specific questions was
     proper to contain the voir dire within reasonable limits.  At one point, defense
10   counsel asked to use a written questionnaire (different from the previously discussed
     one that concerned hardship).  The court denied the request.  Although a written
11   questionnaire may sometimes be helpful, we have never required its use and the court
     did not abuse its discretion in refusing this one.  At another point, two prospective
12   jurors who had already been examined were returned for further examination
     regarding their attitudes towards the death penalty.  The court limited both sides to 15
13   minutes per juror for the reopened questioning.  After the questioning, the defense
     complained the time was inadequate.  The court disagreed, stating as to the first juror,
14   "You reach a point where we are just wasting time to ask somebody the same
     question over and over and over again, and get the same answer."  Neither this ruling
15   or any of the others was unreasonable.  (*People v. Lucas* (1995) 12 Cal. 4th 415, 480
     [parallel citations omitted] (no abuse of discretion in disallowing further questioning
16   "because the subject had been exhausted").)  From our review of the record, "It does
     not appear counsel was prevented from making *reasonable* inquiry into the fitness of
17   any venire person to serve on the jury."  (*People v. Wright*, *supra*, 52 Cal. 3d at p.
     419, original italics.)

18
             Moreover, we find no prejudice even if we assume an occasional abuse of
19   discretion.  In *People v. Bittaker* (1989) 48 Cal. 3d 1046, 1086 [parallel citations
     omitted], the court imposed far greater restrictions than in this case, but we found that
20   we should "limit reversals to those cases in which the erroneous ruling affected
     defendant's right to a fair trial."  As in *Bittaker*, any error was harmless here.  The
21   rulings were minimally restrictive.  Moreover, the defense had several peremptory
     challenges remaining when it accepted the jury, and it did not express dissatisfaction
22   with the jury as sworn.  "When the jury was finally selected, defendant did not claim
     that any juror was incompetent, or was not impartial.  We therefore find no
23   prejudicial error. . . ."

24   *Carpenter*, 15 Cal. 4th at 353-354.

25           Petitioner has not shown the state court's denial of this claim was an unreasonable application

26   of clearly established federal law, or that the state court's opinion relied on an unreasonable

27   determination of the facts.  Petitioner cites to no controlling federal authority that compels the result

28   he seeks.  Moreover, as the California Supreme Court made clear, petitioner cannot establish he

*United States District Court*
For the Northern District of California

1   suffered any prejudice as a result of said alleged errors. *See Brecht*, 507 U.S. at 637.  As the state

2   court noted, petitioner had several peremptory challenges remaining when the jury was sworn, and

3   could have used those challenges to excuse any of the prospective jurors.   A trial court's failure to

4   strike even a biased juror for cause will not constitute a Sixth Amendment violation so long as the

5   jury that hears the case is impartial. *See Ross*, 487 U.S. at 88.  The fact that the defendant had to use

6   a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated, *see*

7   *id.; Poland v. Stewart*, 169 F.3d 573, 583 (9th Cir. 1999); rather, a petitioner must establish

8   prejudice, *e.g.,* that the jury as finally constituted was not impartial or that the loss of peremptory

9   challenges forced him to accept a biased juror, s*ee id.*

10          Accordingly, this portion of the claim will be denied.

11                    **B.      Alleged Judicial Hostility**

12          Petitioner also claims his due process rights were violated because the trial judge was hostile

13   to defense counsel during jury selection.  According to petitioner, such alleged hostility evidenced

14   partiality on the judge's part, and prevented the jurors from being impartial.  In its reasoned opinion

15   on direct appeal, the California Supreme Court resolved this claim as follows:

16          Defendant contends that often during jury selection, "the judge addressed
       defense counsel with inappropriate rancor or attached an overtone of obvious hostility
17          to legal rulings adverse to the defense."  The Attorney General contends defendant
       waived the contention by not objecting. (*People v. Fudge* (1994) 7 Cal. 4th 1075, 1108
18          [parallel citations omitted].)  We disagree.  Defense counsel complained about the
       tone of judicial rulings on a number of occasions and argued the jury would "get the
19          impression as to who is in trouble with the judge."

20          The contention, however, lacks merit.  A trial court commits misconduct if it
       persistently makes discourteous and disparaging remarks to defense counsel so as to
21          discredit the defense or create the impression it is allying itself with the prosecution.
       (*People v. Fudge*, *supra*, 7 Cal. 4th at p. 1107; *People v. Clark* (1992) 3Cal. 4th 41, 143
22          [parallel citations omitted].)  We have read each of the alleged instances of hostility in
       context.  They fall far short of establishing misconduct or "betray[ing] a bias against
23          defense counsel." (*People v. Wright* (1990) 52 Cal. 3d 367, 411 [parallel citations
       omitted].)  The record suggests that on occasion during the protracted jury selection
24          process the court showed irritation with counsel's voir dire questioning, sometimes
       outside the presence of prospective jurors, sometimes in front of one or more
25          prospective jurors, and perhaps occasionally in front of a juror who actually sat on one
       of the juries.  But we perceive nothing that crossed the line into improper behavior,
26          and certainly nothing prejudicial to the defense cause.  The trial court has the duty to
       control the trial. (Pen. Code § 1044; *People v. Fudge*, *supra*, 7 Cal. 4th at p. 1108.)  It
27          effectively fulfilled that duty.

28   *Carpenter*, 15 Cal. 4th 312, 352-353.

15

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Petitioner has not shown the state court's denial of this claim was an unreasonable application

2  of clearly established federal law, or that the state court's opinion relied on an unreasonable

3  determination of the facts.

4    A trial judge "'must be ever mindful of the sensitive role [the court] plays in a jury trial and

5  avoid even the appearance of advocacy or partiality.'"  *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir.

6  1995) (quoting *United States v. Harris*, 501 F.2d 1, 10 (9th Cir. 1974)).  At the same time, however,

7  courts have recognized that a trial judge is "more than an umpire."  *United States v. Laurins*, 857

8  F.2d 529, 537 (9th Cir. 1988), *cert. denied*, 492 U.S. 906 (1989).  Generally, it is appropriate for a

9  trial judge to take part where necessary to clarify testimony and assist the jury in understanding the

10  evidence.  *See id.*[7]  Likewise, it generally is appropriate for a trial judge to participate in the

11  examination of witnesses for the purpose of clarifying the evidence, confining counsel to evidentiary

12  rulings, controlling the orderly presentation of the evidence, and preventing undue repetition of

13  testimony.  *United States v. Morgan*, 376 F.3d 1002, 1008 (9th Cir. 2004).

14    Further, given the fact that the judge may question the witness directly, there is nothing

15  improper in a judge, under appropriate circumstances, suggesting a line of questioning to an attorney.

16  *United States v. Lopez-Martinez*, 543 F.3d 509, 513-515 (9th Cir. 2008) (finding no judicial bias

17  where record showed trial judge engaged in colloquy with prosecutor about holes in evidence and

18  testimony necessary to fill in gaps, in effort to ensure any motion by defendant for acquittal based on

19  insufficient evidence could be granted based on evidence, not speculation).  A trial judge's

20  participation oversteps the bounds of propriety and deprives the parties of a fair trial only when the

21  record discloses actual bias or leaves the reviewing court with an abiding impression that the judge's

22  remarks and questioning projected to the jury an appearance of advocacy or partiality.  *See United*

23  *States v. Parker*, 241 F.3d 1114, 1119 (9th Cir. 2001); *see also Morgan*, 376 F.3d at 1008-09

24

25    [7] For example, a trial judge may comment on the evidence as long as such judge makes clear it is
  the jurors' duty to determine the facts.  *See Rodriguez v. Marshall*, 125 F.3d 739, 749 (9th Cir.
26  1997).  A trial judge may call to the jury's attention specific evidence "when he believes it will
  assist the jury," provided he does not distort the evidence, add to it or present it in a one-sided
  fashion.  *Id.*  A trial judge may even call the jury's attention to important evidence.  *United States v.*
27  *Wilson*, 16 F.3d 1027, 1031 (9th Cir. 1994); *see also United States v. Beltran-Garcia*, 179 F.3d
  1200, 1202 (9th Cir. 1999) (holding, where parties do not dispute other issues, trial judge may tell
28  jury there is only one issue for them to decide).

United States District Court

For the Northern District of California

1   (finding federal district judge's extensive and suggestive examination of witness did not require

2   reversal where other testimony, as well as court's curative instructions, made it highly unlikely that

3   "a substantial right of a defendant was affected").

4        Under the above-described standard, and given the deference this Court must show the state

5   court's reasoned opinion under AEDPA, petitioner is not entitled to relief on this claim.  In that

6   regard, petitioner's reliance in part on *Hurles v. Ryan*, 650 F. 3d 1301, 1309-1311 (9th Cir. 2011), is

7   misplaced.  Although the Ninth Circuit in *Hurles* granted a writ of habeas corpus on grounds of

8   judicial bias, *Hurles* is readily distinguishable.  As the Ninth Circuit emphasized, *Hurles* was "highly

9   unusual," with "exceptional facts."  *Id.* at 1304.  The trial judge therein "became involved as a party

10  in an interlocutory appeal, was denied standing to appear as an adversary, and then proceeded to

11  preside over a murder trial and single-handedly determine Hurles' death sentence."  *Id.*  Nothing

12  remotely similar happened in petitioner's case.  Rather, as the state court held, and as a review of the

13  record confirms, while the trial judge may have demonstrated "irritation," his behavior was never

14  improper or prejudicial.  *See Carpenter*, 15 Cal. 4th 312, 352-353; *see also Duckett v. Godinez*, 67 F.

15  3d 734, 740-741 (9th Cir. 1995) (holding even where trial judge's conduct toward defense was

16  "troubling" and in some instances reflected "frustration and hostility," habeas relief was not

17  warranted because "when considered in the context of trial as a whole," [judge's actions were] "not

18  of sufficient gravity to warrant the conclusion that fundamental fairness has been denied."  *Id.* at 741

19  (internal quotation and citation omitted).

20       Accordingly, this claim will be denied.

21  **V.     Claim 54: Presence of Penalty Phase Jury During Guilt Phase**

22       Petitioner claims the presence of the penalty phase jury in the courtroom during the guilt

23  phase of the trial deprived him of his constitutional right to a fair and impartial jury.  At petitioner's

24  request, the trial court had empanelled separate guilt phase and penalty phase jurors.  The trial court,

25  however, overruled petitioner's objection to the presence of the penalty phase jurors in the courtroom

26  during the guilt phase.

27       Petitioner cannot point to any clearly established federal law demonstrating the state court's

28  denial of this claim was objectively unreasonable, nor has he shown the state court's denial of the

1   claim relied on an unreasonable determination of the facts.  Significantly, petitioner can point to no

2   case holding, or even suggesting, that the presence of a penalty phase jury at the guilt phase of a

3   capital trial is prejudicial.

4          Petitioner's reliance on *Carey v. Musladin,* 549 U.S. 70, 75-76 (2006), which did not address

5   the issue at hand, is misplaced.  Indeed, *Musladin* supports respondent's position that petitioner has

6   not demonstrated he is entitled to relief.  In *Musladin*, the habeas petitioner, who was tried for

7   murder, argued the presence of spectators in the courtroom wearing buttons with a photo of the

8   alleged murder victim prejudiced his right to a fair trial.  *Id.* at 72-73.  In overturning the appellate

9   court's decision granting Musladin's claim, the Supreme Court stated:  "Given the lack of holdings

10  from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the

11  kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established

12  Federal law.' §2254(d)(1)."  *Id.* at 77.  Similarly here, in the absence of Supreme Court authority

13  regarding the potentially prejudicial effect of a separate penalty phase jury's presence during the guilt

14  phase of a capital trial, petitioner cannot demonstrate he is entitled to relief on this claim.

15         Moreover, even if petitioner had demonstrated error by the trial court, he would not be

16  entitled to relief because he has not shown he was in any manner prejudiced thereby.  *See Brecht*, 507

17  U.S. at 638.

18         Accordingly, this claim will be denied.

19  **VI.    Claim 55: Presence of Penalty Phase Jury During Guilt Phase Closing Arguments**

20         Petitioner contends the presence of the penalty phase jury during closing argument in the guilt

21  phase violated his constitutional rights to due process, a fair trial, and a reliable penalty adjudication.

22  As with the preceding claim, petitioner points to no supporting case authority.  Further, petitioner

23  again fails to demonstrate prejudice.  As noted, petitioner was convicted of multiple murders,

24  attempted murder, rape and attempted rape.  Petitioner has made no showing to support a claim that,

25  had the penalty phase jury not been present during the guilt phase closing arguments, it would have

26  returned a more lenient verdict as to his sentence.

27         Accordingly, this claim will be denied.

28

18

**Conclusion**

For the foregoing reasons, Claims 49, 50, 51, 52, 54 and 55 in petitioner's First Amended Petition are hereby DENIED.

**IT IS SO ORDERED.**

DATED: June 20, 2012

_____
MAXINE M. CHESNEY
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

19