1

2

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

12  DAVID J. CARPENTER,                    No. C 98-2444 MMC

           Petitioner,                     ORDER DENYING GROUP 3 CLAIMS
13
           v.                              **DEATH PENALTY CASE**
14
    KEVIN CHAPPELL, Warden of
15  California State Prison at San Quentin,

16           Respondent.
    _____/
17

18                            **Introduction**

19         The instant case arises from petitioner's conviction and death sentence for the first degree

20  murders of Ellen Hansen ("Hansen") and Heather Scaggs ("Scaggs"), the attempted murder of

21  Steven Haertle ("Haertle"), the attempted rape of Hansen, and the rape of Scaggs.  *See People v.*

22  *Carpenter*, 15 Cal. 4th 312 (1997).  The crimes were alleged to have been committed in Santa Cruz

23  County, and, after a change of venue, the case was tried in Los Angeles County.[1]  The California

24  Supreme Court affirmed petitioner's conviction and sentence on direct appeal on April 28, 1997.  *Id.*

25  Petitioner's subsequent certiorari petition to the United States Supreme Court was denied on

26  January 20, 1998.  *See Carpenter v. California*, 522 U.S. 1078 (1998).

27

28
    _____

         [1] Subsequent to his trial in Los Angeles County, petitioner was tried, convicted, and
    sentenced to death in San Diego County for five murders that occurred in Marin County.  *See*
    *Carpenter*, 15 Cal. 4th at 344 n.1.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Petitioner filed his first state habeas petition on December 24, 1996; it was denied by the California Supreme Court on May 27, 1998.   Prior to the denial of his state habeas petition, petitioner filed in the United States District Court for the Central District of California a request for appointment of federal habeas counsel and a motion for change of venue.   Petitioner's motion for change of venue was granted on June 12, 1998, thereby transferring the instant habeas case to the Northern District.

Under the one-year limitation period set forth in 28 U.S.C. § 2244(d), petitioner's federal habeas petition was due by May 27, 1999.  The Court, however, granted petitioner's motion to equitably toll the statute of limitations for five months, to and including October 27, 1999.  *(See Order Denying Motion to Vacate and Granting in Part and Denying in Part Motion for Equitable Tolling at 38.)*[2]   Petitioner subsequently filed in this court a Petition for Writ of Habeas Corpus ("Original Petition")[3], a Notice of Additional Claims, and a Motion to Hold Proceedings in Abeyance, and filed in state court his second state habeas petition.  On December 1, 1999, the California Supreme Court denied petitioner's second state habeas petition.  On December 6, 1999, petitioner filed his First Amended Verified Petition for Writ of Habeas Corpus ("First Amended Petition") and withdrew the Motion to Hold Proceedings in Abeyance.

Respondent subsequently filed a Motion to Dismiss First Amended Petition, primarily asserting therein various procedural grounds that respondent argued required dismissal of at least certain portions of petitioner's First Amended Petition.  The Court addressed all of the procedural issues in a series of orders.  *See, e.g. Carpenter v. Ayers*, 548 F. Supp. 2d 736 (N.D. Cal. 2008).

In 2008, based on allegations in the First Amended Petition and the applicable law, the Court issued an order requiring petitioner's competency be determined in a timely manner, pursuant to *Rohan ex. rel. Gates v. Woodford*, 334 F. 3d 803, 817 (9th Cir. 2003).  Based on the case record and the examination report of stipulated expert Dr. Robert Roesch, the Court found petitioner competent

---

[2] In the same order, the Court denied petitioner's request to toll the statue of limitations as to his unexhausted claims for a period to and including thirty days from an order identifying such claims. *Id.*

[3] Because petitioner filed his federal petition after April 24, 1996, the date when the provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") went into effect, those provisions apply to the proceedings in this court.  *See Lindh v. Murphy*, 521 U.S. 320.

to pursue his habeas claims.[4]

The parties subsequently met and conferred, and agreed to a briefing schedule, subsequently amended by this Court, by which the remainder of petitioner's claims were to be addressed. The schedule also separated the claims into nine groups. By orders issued prior to the instant order, Claims 42, 43, 46, 49, 50, 51, 52, 54, 55, 59, 62 and 63 have been denied. The instant order addresses Group 3 claims 19, 20, 22, 25, 26, 27, 28, 29, 30, 31, 44, 48, 56 and 58.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus is not to be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d).[5] A federal court must presume the correctness of the state court's factual findings, and the presumption of correctness may only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The "contrary to" and "unreasonable application" clauses of section 2254(d) have separate and distinct meanings. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000). A state court's decision is "contrary to" clearly established United States Supreme Court law if it fails to apply the correct controlling authority or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. *Id*. at 413-414. A decision is an "unreasonable application" of United States Supreme Court law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 414. "'[A]n *unreasonable* application of federal

---

[4] Petitioner appealed certain of the Court's orders regarding the competency determination to the Ninth Circuit Court of Appeals. On July 31, 2009, the appeal was dismissed and denied in an unpublished memorandum opinion. *See Carpenter v. Ayers*, Nos. 08-99019 & 08-99020, 2009 WL 2387288 (9th Cir. 2009).

[5] The parties agree that AEDPA applies to this matter.

United States District Court
For the Northern District of California

law,"however, "is different from an *incorrect* application of federal law.'" *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 653, 664 (2004)).

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a great[] degree of deference to the state courts." *Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).

Holdings of the Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under AEDPA. *See Williams*, 529 U.S. at 412. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. *See Clark*, 331 F.3d at 1070. A state court's decision need not cite to, and a state court need not be aware of federal law to pass muster under AEDPA; rather, "so long as neither the reasoning nor the result of the state-court decision contradicts [federal law]," the decision may be upheld. *Early v. Packer*, 537 U.S. 3, 8 (2002).

When a federal court is presented with a state court decision that is unaccompanied by a rationale for its conclusions, the court has no basis other than the record "for knowing whether the state court correctly identified the governing legal principle or was extending the principle into a new context." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such situations, federal courts must conduct an independent review of the record to determine whether the state court decision is objectively unreasonable. *Id.* Specifically, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

4

Even if a petitioner meets the requirements of section 2254(d), habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (internal quotation omitted). Under this standard, petitioners "may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637 (citing *United States v. Lane*, 474 U.S. 438, 439 (1986)).

**Analysis**

## I.    Claim 19: *Miranda* Warnings

In Claim 19, petitioner contends the trial court erred in finding, for purposes of *Miranda*, that he was not in custody at the time he made statements at a parole office. Petitioner was not read the *Miranda* warnings before he made his statements, which were later introduced in evidence at trial. According to petitioner, the admission of such evidence violated his rights under the Fifth and Fourteenth Amendments.

The California Supreme Court denied this claim in a reasoned decision on direct appeal, *see People v. Carpenter*, 15 Cal. 4th 312, 383-384 (1997), finding there were "virtually no indicia of custody," as the "[parole] officers expressly told defendant he was not in custody and was free to leave at any time," and, indeed, petitioner did leave the parole office after he was interviewed. *See Oregon v. Mathiason*, 429 U.S. 492 (1977) (holding defendant who was allowed to leave police station after making incriminating statements had not been in custody for *Miranda* purposes); *see also Stansbury v. California*, 511 U.S. 318, 322 (1994) (holding "[a]n officer's obligation to administer *Miranda* warnings attaches only where there has been a restriction on a person's freedom as to render him in custody.") Further, as petitioner must and does acknowledge, clearly established Supreme Court law holds that a suspect is not in custody for *Miranda* purposes during an interrogation conducted during a required meeting with a parole officer. *See Minnesota v. Murphy*, 465 U.S. 420, 430-431 (1984).

In sum, as petitioner can cite to no federal precedent compelling the result he seeks, he cannot demonstrate the state court's decision denying this claim was unreasonable, and, consequently, the claim will be denied.

## II.      Claim 20: Eyewitness Identification Evidence

In Claim 20, petitioner contends the trial court erred in admitting evidence that Haertle and a witness, Leland Fritz, identified petitioner at a pretrial lineup.  According to petitioner, the lineup was unduly suggestive and admission of the identifications violated his rights to counsel and to due process.  This claim was denied by the California Supreme Court in a reasoned opinion on direct appeal.  *See Carpenter*, 15 Cal. 4th at 366-369.[6]

### A.      Suggestiveness of Lineup

Petitioner first argues that the lineup was unduly suggestive.  When identification procedures are unduly suggestive, any subsequent identification, absent a sufficient independent basis therefor, is inadmissible.  *See, e.g.*, *Mandon v. Braithwaite*, 432 U.S. 98, 114 (1977).  As the California Supreme Court reasonably found, however, the identification procedure at issue here was not unduly suggestive.  In that regard, the California Supreme Court reasoned as follows:

> On May 15, 1981, after defendant's arrest, several witnesses viewed him in a six-man physical lineup at the Santa Cruz County Sheriff's Department.  Two defense attorneys were present.  Defendant moved to suppress the eyewitness identification evidence.  The court denied the motion after an evidentiary hearing.  Defendant argues (1) the lineup was impermissibly suggestive, and the subsequent identifications were unreliable, and (2) he was denied his right to the assistance of counsel at the lineup.

> "In deciding whether an extrajudicial identification is so unreliable as to violate a defendant's right to due process, the court must ascertain (1) 'whether the identification procedure was unduly suggestive and unnecessary,' and, if so (2) whether the identification was nevertheless reliable under the totality of the circumstances.  (*People v. Gordon* (1990) 50 Cal. 3d 1223, 1242 [parallel citations omitted]. . . . Defendant's contentions lack merit.

> Defendant claims various physical differences between him and other participants made the lineup impermissibly suggestive.  We disagree.  Because human beings do not look exactly alike, differences are inevitable.  The question is whether anything caused defendant to "stand out" from the others in a way that would suggest the witness should select him.  (See *People v. Johnson*, *supra*, 3 Cal. 4th at p. 1217.)  There was nothing here.  All six participants were bearded and wore identical clothing.  Defendant was neither the oldest nor the youngest of the participants, neither the tallest nor the shortest, neither the heaviest nor the lightest.  The trial court, who observed each of the six in person, found that, with one exception, the others resembled defendant "very much.". . . [O]ur review of photographs of the

---

[6] Although he agreed that Claim 20 was properly a part of the Group 3 Claims, and although Claim 20 has been fully briefed, petitioner requests that the Court's review of the claim be deferred until such time as the Court considers Group 6 Claims pertaining to ineffective assistance of counsel.  The Court, however, finds it appropriate to address at this time the limited issues presented by Claim 20.

**United States District Court**
For the Northern District of California

lineup supports the trial court's assessment. . . .

> Defendant also complains that Haertle and possibly others heard on the radio that an arrest had been made before they viewed the lineup. This radio announcement did not make the procedure suggestive. Anyone asked to view a lineup would naturally assume the police had a suspect. (*People v. Meneley* (1972) 29 Cal App. 3d 41, 57 [parallel citations omitted].) The police said nothing suggesting that witnesses should make a selection. Moreover, Haertle testified that although he assumed there was a suspect, he did not know the suspect would be in that lineup instead of a possible later one.

*Carpenter*, 15 Cal. 4th at 366-368.

Petitioner cannot point to any clearly established federal law demonstrating the state court's denial of this claim was objectively unreasonable; nor can he show the state court's denial of the claim relied on an unreasonable determination of the facts. As the state court reasonably found, and as the record confirms, the identification process was not unduly suggestive. The cases relied upon by petitioner concern the admissibility of identification evidence once it has already been determined that the procedures were unduly suggestive. *See*, *e.g.*, *Manson v. Brathwaite*, 422 U.S. 98 (1977); *Neil v. Biggers*, 409 U.S. 188, 199 (1972). Here, by contrast, petitioner can point to no evidence demonstrating that the state court's decision holding the identification process was not unduly suggestive was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

Accordingly, this portion of petitioner's claim will be denied.

### B.    Right to Counsel

Secondly, petitioner argues that, although his defense counsel was present during the lineup, he was improperly denied the assistance of his counsel. This claim was rejected on the merits by the California Supreme Court, which reasoned as follows:

> We perceive no violation of defendant's right to have an attorney present at the lineup. (*Gilbert v. California* (1967) 388 U.S. 263 [parallel citations omitted]; *United States v. Wade* (1967) [parallel citations omitted]. . . ) The attorneys were active at the lineup. They participated in the decision not to have the defendant shave and successfully requested that a person other than defendant wear his glasses. Defendant cites no authority that defense counsel must be given time to scrutinize the police reports before the lineup. The rules requiring the presence of counsel "were adopted for two primary reasons: to enable an accused to detect any unfairness in his confrontation with the witness, and to insure that he will be aware of any suggestion by law enforcement officers, intentional or unintentional, at the time the witness makes his identification." (*People v. Williams* (1971) 3 Cal. 3d 853, 856 [parallel citations omitted].) These purposes were satisfied. The defense attorneys could fully detect any unfairness or suggestiveness. Indeed, one admitted at the suppression hearing that no one at the lineup suggested a witness should select a particular person.

Defendant argues that *People v. Williams*, *supra*, 3 Cal. 3d 853, mandates that his attorneys be present at the postlineup interviews.  "In *Williams*, the defendant's attorney was present in the viewing room with the witness while the lineup was being conducted.  The witness then was taken outside the viewing room for the purpose of making his identification.  The request of the defendant's counsel to be present and observe any identification made by the witness was denied as being against the policy of the sheriff's department.  We held that under the circumstances of the particular case, the exclusion of defense counsel from the *actual identification* violated the defendant's rights under *Wade* and *Gilbert* to have counsel present at the lineup."  (*People v. Mitcham*, *supra*, 1 Cal. 4th at p. 1067 (original italics.)  As in *Mitcham*, we find no violation of this rule.  The right to counsel extends only to the actual identification, not to postidentification interviews.  (*Id.* at ¶. 1067-1068.)

*Carpenter*, 15 Cal. 4th at 366-368.

Petitioner cannot cite to any clearly established United States Supreme Court or other federal law holding that defense counsel must be present at police interviews of witnesses prior and subsequent to the lineup.  Indeed, Ninth Circuit law is to the contrary.  *See, e,g,*, *Doss v. United States*, 431 F.2d 601, 603 (9th Cir. 1970) (finding witness interviews after lineup do not require presence of defense counsel.)  Under such circumstances, petitioner fails to demonstrate that the decision of the California Supreme Court was unreasonable.  As noted by the California Supreme Court, the applicable law holds that counsel must be present during the actual identification procedure.  *See Wade*, 388 U.S. at 236-37.  Here, petitioner's counsel was present and participated in the lineup procedures, and, consequently, petitioner has not demonstrated his right to counsel was violated.

Accordingly, this portion of petitioner's claim must be denied as well.

### III.     Claim 22: Other Crimes Evidence and Instructions

In Claim 22, petitioner contends that his Fifth, Eighth, and Fourteenth Amendment rights were violated when evidence of other crimes petitioner had committed, specifically, the Marin County crimes for which he was also convicted and sentenced to death, was admitted at the guilt phase of his trial.  Additionally, petitioner contends the instructions given regarding evidence of the other crimes were erroneous and violated his constitutional rights.

#### A.     Evidentiary Claim

The California Supreme Court, in a reasoned decision on direct appeal, considered and rejected petitioner's claim as to the evidence of the other crimes, as follows:

8

United States District Court
For the Northern District of California

5. *Evidence of Uncharged Crimes*

Over objection, the court admitted evidence of three murders and one rape that defendant committed in Marin County in October and November 1980 that were not charged in this case. (They were charged in another case.) It found the evidence probative on the questions of intent, deliberation, and premeditation as to the shooting of Haertle, Hansen, and Scaggs, and the question of intent to rape Hansen. The court expressly found the probative value of the evidence outweighed its prejudicial effect. Defendant contends the court erred in admitting the evidence and in instructing the jury how to consider it.

a. *Admission of Evidence*

The admissibility of other crimes evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence. *(People v. Thompson* (1980) 27 Cal.3d 303, 315 [165 Cal .Rptr. 289, 611 P.2d 883].) The facts of intent to kill, premeditation and deliberation, and intent to rape were certainly material. Defendant's not guilty plea put in issue all of the elements of the offenses, including intent. ( *People v. Daniels* (1991) 52 Cal.3d 815, 857-858 [277 Cal .Rptr. 122, 802 P.2d 906].)

The Marin County crimes also had a strong tendency to prove these facts. Ballistics evidence established that the same gun was used to shoot each victim; hence, almost certainly the same person committed each crime. Each victim was shot in the head at close range in a remote hiking area. The similarities among the crimes easily meet the standard needed to show intent.  "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." ( *People v. Ewoldt* (1994) 7 Cal.4th 380, 402 [27 Cal .Rptr.2d 646, 867 P.2d 757].)  "In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant 'probably harbor[ed] the same intent in each instance.'" [Citations.] ( *People v. Robbins* [(1988)] 45 Cal.3d 867, 879 [248 Cal .Rptr. 172, 755 P.2d 355].) ( *Ibid.*)

"The reasoning underlying use of an actor's prior acts as circumstantial evidence of that actor's later intent is well explained by Wigmore. It is based on 'the doctrine of chances–the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but that the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them. [¶] ... In short, similar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act; and the force of each additional instance will vary in each kind of offense according to the probability that the act could be repeated, within a limited time and under given circumstances, with an innocent intent.' (2 Wigmore, Evidence (Chadbourn rev. 1979) § 302, at p. 241; see also Wydick, Character Evidence: A Guided Tour of the Grotesque Structure (1987) 21 U.C. Davis L.Rev. 123, 166-169; Imwinkelried, [Uncharged Misconduct Evidence (1984)] § 4:01.)" ( *People v. Robbins* (1988) 45 Cal.3d 867, 879-880 [248 Cal .Rptr. 172, 755 P.2d

9

355].)

A jury could reasonably infer from the evidence that defendant shot and killed three persons in 1980, that he intended to kill when he shot and killed two others, and shot but only wounded a third, several months later. Similarly, a jury could reasonably infer from the evidence that he raped one of the Marin County victims that he later intended to carry out his threat to rape Hansen.

There is also no rule or policy requiring exclusion. Evidence of uncharged crimes is inherently prejudicial but may still be admitted if it has substantial probative effect. (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404.) The matter lies within the discretion of the trial court. (*Id.* at p. 405; *People v. Robbins*, *supra*, 45 Cal.3d at p. 880.) The ruling here was well within the court's discretion. The evidence was highly probative on the issues for which it was admitted. The circumstances of this case minimized its prejudicial effect. Because of the similarity of the crimes and especially the evidence that the same gun was used each time, evidence that defendant committed the crimes in this case tended to establish that he committed the Marin County crimes. As the trial court recognized, however, the reverse was not true. Little independent evidence was presented that defendant committed the Marin County crimes. Thus, only if the jury found defendant committed the crimes in this case would it find he committed the Marin County crimes. There was no danger the jury might doubt that he committed the charged offenses but convict anyway because of a belief he committed the uncharged crimes. (*See People v. Ewoldt*, *supra*, 7 Cal.4th at p. 405.) "[C]learly if the defendant cannot be connected to the prior act, admission of evidence concerning it will not normally prejudice him." ( People v. Simon (1986) 184 Cal.App.3d 125, 130, fn. 3 [228 Cal .Rptr. 855].) The court properly found that the probative value of the evidence on intent and premeditation outweighed the potential for prejudice. ( *People v. Robbins*, *supra*, 45 Cal.3d at p. 881.)

*Carpenter,* 15 Cal. 4th at 378-380.

Petitioner cannot show that the state court's denial of this claim was an unreasonable application of clearly established federal law, or that the state court's opinion relied on an unreasonable determination of the facts.[7]  The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986).  The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding trial court's admission of irrelevant

---

[7] Petitioner argues that this claim must be considered *de novo* because the California Supreme Court did not address federal law in its rejection of the claim.  A state court's decision, however, need not cite to, and a state court need not be aware of, federal law to pass muster under AEDPA; rather, "so long as neither the reasoning nor the result of the state-court decision contradicts [federal law]," the decision may be upheld.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  This Court thus accords the state court's opinion the deference required under AEDPA.

**United States District Court**
For the Northern District of California

pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary

to, or an unreasonable application of, clearly established Federal law under § 2254(d)).

Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for

granting federal habeas relief on due process grounds. *See Henry*, 197 F.3d at 1031; *Jammal v. Van

de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). While adherence to state evidentiary rules suggests

that the trial was conducted in a procedurally fair manner, it certainly is possible to have a fair trial

even when state standards are violated; conversely, state procedural and evidentiary rules may

countenance processes that do not comport with fundamental fairness. *See id.* (citing *Perry v.

Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983). The due process inquiry in federal habeas review is

whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial

fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at

990. Only if there are no permissible inferences that the jury may draw from the evidence can its

admission violate due process. *See Jammal*, 926 F.2d at 920.

Here, the state court reasonably found the evidence of other crimes was relevant[8] to intent

and "highly probative." *Carpenter,* 15 Cal. 4th at 378-380. In particular, as set forth by the state

court, permissible inferences could be drawn by the jury from the evidence. *See Jammal*, 926 F.2d

at 920. Neither the Supreme Court nor the Ninth Circuit has ever held that it is a due process

violation for a trial court to admit, under state law, relevant evidence of other crimes. Moreover,

even if it were error for the state court to have admitted the other crimes evidence, petitioner has not

demonstrated that the error had a "substantial and injurious effect or influence in determining the

jury's verdict." *See Brecht*, 507 U.S. at 638. There was substantial additional evidence of the

requisite intents presented at petitioner's trial, including petitioner's statements to the victims, the

manner in which he approached them, petitioner's use of a gun, his movement of at least one of the

bodies, and physical evidence of rape. (*See* Respondent's Brief on the Merits at 13-14, and citations

---

[8] The United States Supreme Court has held that "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States,* 485 U.S. 681, 689 (1988). Such was the case here, particularly given the fact that ballistics evidence established the same gun was used in the Santa Cruz and Marin crimes.

11

1    to the record referenced therein.)

2        Accordingly, as petitioner has shown neither error nor prejudice, this portion of the claim

3    must be denied.

4    **B.      Instructional Error Claim**

5        The California Supreme Court, likewise in a reasoned decision on direct appeal, also

6    considered and rejected petitioner's claim regarding the instructions concerning the evidence of

7    other crimes, as follows:

8            b. *Instructions*

9            The court instructed the jury to consider the Marin County crimes only if it
     found defendant committed them "by a preponderance of the evidence." Defendant
10   contends the court should have required "clear and convincing proof." The issue has
     little practical significance here. The evidence that defendant was the Santa Cruz
11   County gunman was so overwhelming that the defense conceded it to the jury. The
     evidence that the same gun was used in the Marin County crimes was at least clear
12   and convincing proof he also committed those crimes. Nevertheless, we address the
     question. The Attorney General argues, first, the issue is not cognizable because at
13   trial defendant asked the court to adopt a reasonable doubt standard. We disagree.
     The instruction affected the "substantial rights of the defendant." (Pen. Code, §
14   1259.) The contention, however, lacks merit.

15           Our pronouncements on the question have not been entirely consistent. In
     1969, we stated, "It is settled law that during the guilt trial evidence of other crimes
16   may be proved by a preponderance of the evidence ...." (*People v. McClellan* (1969)
     71 Cal.2d 793, 804 [80 Cal .Rptr. 31, 457 P.2d 871] [contrasting this rule with the
17   reasonable doubt standard applicable at the penalty phase].) Several then recent
     decisions supported the statement. (*People v. Durham* (1969) 70 Cal.2d 171, 187, fn.
18   15 [74 Cal .Rptr. 262, 449 P.2d 198]; *People v. Cavanaugh* (1968) 69 Cal.2d 262,
     273-274, fn. 9 [70 Cal .Rptr. 438, 444 P.2d 110]; *People v. Haston* (1968) 69 Cal.2d
19   233, 253 [70 Cal .Rptr. 419, 444 P.2d 91]; *People v. Polk* (1965) 63 Cal.2d 443, 451
     [47 Cal .Rptr. 1, 406 P.2d 641].) In *People v. Medina*, supra, 11 Cal.4th at pages
20   762-764, we reiterated the preponderance standard against an argument that the
     reasonable doubt standard should apply, although the defendant did not specifically
21   urge the clear and convincing evidence standard. None of these decisions considered
     that two previous decisions, one from this court, appeared to read the plurality
22   opinion in *People v. Albertson* (1944) 23 Cal.2d 550, 577 [145 P.2d 7], as requiring
     clear and convincing evidence. ( *People v. Wade* (1959) 53 Cal.2d 322, 330 [1 Cal.
23   Rptr. 683, 348 P.2d 116]; *People v. Rosenfield* (1966) 243 Cal.App.2d 60, 68 [52 Cal.
     Rptr. 101].)

24
             Only a year after we decided *McClellan*, the clear and convincing standard
25   arguably reappeared. In *People v. Terry* (1970) 2 Cal.3d 362, 396 [85 Cal .Rptr. 409,
     466 P.2d 961], we said, "Juanelda [one of the appellants] also argues that even if the
26   proof of the Alamo robbery was relevant, it was inadmissible because there was no
     clear and convincing proof connecting her with the crime. (*People v. Wade*, 53 Cal.2d
27   322, 330 [1 Cal .Rptr. 683, 348 P.2d 116]; *People v. Rosenfield*, 243 Cal.App.2d 60,
     68 [52 Cal .Rptr. 101].) There was such evidence." Defendant argues that this
28   language impliedly overruled the decisions establishing the preponderance standard
     in favor of the earlier ones stating the clear and convincing standard. However, our

United States District Court
For the Northern District of California

describing and then rejecting a defense argument that the evidence was inadmissible because it was not clear and convincing did not necessarily establish the applicable standard. We may merely have not felt obligated to discuss the correct standard. We certainly did not clearly overrule what we had so recently said was settled law. More recently, we have cited with approval decisions stating the preponderance standard and ignored the cases, including *Terry*, suggesting a different standard. (*People v. Medina, supra*, 11 Cal.4th at p. 763; *People v. Robertson* (1982) 33 Cal.3d 21, 53 [188 Cal .Rptr. 77, 655 P.2d 279]; *People v. Tewksbury* (1976) 15 Cal.3d 953, 965, fn. 12 [127 Cal .Rptr. 135, 544 P.2d 1335].)

The United States Supreme Court, interpreting the Federal Rules of Evidence, has adopted the preponderance standard. (*Huddleston v. United States* (1988) 485 U.S. 681, 687, fn. 5, 690 [108 S.Ct. 1496, 1500, 99 L.Ed.2d 771]; *Bourjaily v. United States* (1987) 483 U.S. 171, 176 [107 S.Ct. 2775, 2779, 97 L.Ed.2d 144]; *see also Dowling v. United States* (1990) 493 U.S. 342, 348 [110 S.Ct. 668, 672, 107 L.Ed.2d 708].) Court of Appeal decisions postdating *Terry* have applied the preponderance standard. (*People v. Simon, supra*, 184 Cal.App.3d at pp. 132-134 [noting the inconsistent history of the rule]; *People v. Harris* (1977) 71 Cal.App.3d 959, 965-966 [139 Cal .Rptr. 778]; *People v. Donnell* (1975) 52 Cal.App.3d 762, 777 [125 Cal .Rptr. 310].)

In light of this authority, we adhere to the preponderance standard and disapprove any language suggesting the clear and convincing evidence standard. The preponderance of the evidence standard adequately protects defendants. Once the other crimes evidence is admitted, whatever improper prejudicial effect there may be is realized whatever standard is adopted. If the jury finds by a preponderance of the evidence that defendant committed the other crimes, the evidence is clearly relevant and may therefore be considered. (Evid. Code, § 351; see *Huddleston v. United States, supra*, 485 U.S. at p. 689 [108 S.Ct. at p. 1501].) The preponderance standard is also consistent with the rule stated in Evidence Code section 115 that "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."

When the evidence of the Marin County crimes was presented, the court instructed the jury to consider it "solely on the matter of the state of mind involved in the commission of the offenses" and not as "evidence of the defendant's character or as any evidence that he is inclined to commit crimes." The court repeated the substance of the instruction at the end of the guilt phase. Defendant contends the court erroneously "did not require the jury to find the necessary foundational facts" that he "acted with an intent to rape and a premeditated and deliberate intent to kill, and that the Santa Cruz crimes were so similar in nature to the Marin crimes that if [defendant] had a specific intent and mental state in the latter, he also had that intent and mental state in the former." No additional instructions, however, were needed.

Once the court admitted evidence of the Marin County crimes on the question of intent, the only foundational requirement was the obvious one that defendant committed them. As explained above, the more often defendant killed or raped, the more likely he (1) intended (and premeditated) the result actually achieved, (2) intended to fulfill his statement of intent to rape Hansen, and (3) intended to kill Haertle although Haertle survived. Stated differently, evidence that defendant killed and raped before he shot Hansen and Haertle reduced the likelihood that the shooting was accidental or he did not intend to kill or rape. (*People v. Robbins, supra*, 45 Cal.3d at pp. 879-880.) This simple logic required no complex instructions. Defendant relies on *People v. Simon, supra*, 184 Cal.App.3d at pages 131-132, which found the court erred in not giving additional limiting instructions. *Simon*, however, involved a prior nonfatal assault, not, as here, actual killings. Whatever merit there

13

**United States District Court**
For the Northern District of California

1

may be to the *Simon* court's holding under those facts, it has no relevance here.

2

Defendant also contends that the combined instructions reduced the prosecution's burden of proof as to his mental state below that of reasonable doubt. As noted, the court instructed the jury it could consider the Marin County crimes if it found by a preponderance of the evidence he committed those crimes. The court also gave the standard instruction regarding the general sufficiency of circumstantial evidence to prove guilt, but, because of the direct eyewitness evidence as to the Haertle-Hansen crimes, limited that instruction to the counts involving Scaggs. Defendant argues the evidence of intent as to all crimes was circumstantial. Therefore, he claims, the jury might infer from these instructions that the prosecution need prove intent only by a preponderance of the evidence. However, the court also gave the standard instructions on reasonable doubt in general and on the sufficiency of circumstantial evidence to prove the necessary "specific intent or mental state." These instructions made clear the reasonable doubt standard applies to intent as well as identity. No error appears.

*Carpenter*, 15 Cal.4th at 380-383.

Petitioner argues that the alleged instructional errors reduced the prosecution's burden of proof as to petitioner's mental state. Specifically, petitioner argues, the instructions allowed the jury to use the Marin County crimes to find him guilty of the charged Santa Cruz crimes without the requisite mental state.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (holding "it must be established not merely that the instruction is undesirable, erroneous or even universally condemned, but that it violated some [constitutional] right") (internal quotation and citation omitted). The instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the district court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th Cir.1988); *see, e.g., Middleton v. McNeil*, 541 U.S. 433, 434-35 (2004) (per curiam) (finding no reasonable likelihood jury was misled by single incorrect instruction on imperfect self-defense where three other instructions correctly stated the law). Further, if an instructional error is found, the court, before granting relief in habeas proceedings, must determine that the error had a substantial and injurious

14

**United States District Court**
For the Northern District of California

1  effect or influence in determining the jury's verdict.  *See Calderon v. Coleman*, 525 U.S. 141, 146-

2  47 (1998).

3        Here, petitioner has not demonstrated that the trial court's instructions, taken in their entirety,

4  would have allowed the jury to find him guilty of the charged crimes without a specific finding as to

5  the requisite mental state.  Petitioner argues that the instructions allowed the jury to find that if he

6  had an intent to rape, and a premeditated and deliberate attempt to kill, in the uncharged Marin

7  crimes, he must have had the same intent in the charged Santa Cruz crimes.  *(See* Respondent's Brief

8  on the Merits at 17-18 and citations included therein for the relevant portions of the challenged

9  instructions.)  Petitioner cites to no federal case law in support of his argument, and offers no

10  analysis demonstrating that the state court's conclusion to the contrary was unreasonable.

11  Moreover, as discussed *supra*, there was ample evidence of intent apart from the evidence of other

12  crimes, and thus any error was not prejudicial.  *See Brecht*, 507 U.S. at 637.

13        The Court similarly finds unpersuasive petitioner's argument that the instructions reduced

14  the prosecution's burden of proof.  As the California Supreme Court reasonably found, the trial court

15  also gave the standard, approved jury instructions regarding reasonable doubt and circumstantial

16  evidence necessary to prove intent, and "[t]hese instructions made clear the reasonable doubt

17  standard applies to intent as well as identity."  *See Carpenter*, 15 Cal.4th at 383.  As the Supreme

18  Court has held, challenged instructions "may not be judged in artificial isolation, but must be

19  considered in the context of the instructions as a whole and the trial record," *Estelle*, 502 U.S. at 72;

20  consequently, the state court's decision denying petitioner's claim is reasonable under clearly

21  established federal law.  Further, even if the challenged instructions were in error, there was, as

22  discussed above, ample evidence apart from the uncharged crimes establishing the requisite intent

23  for petitioner's charged crimes, and, consequently, petitioner has not demonstrated prejudice.  *See*

24  *Brecht*, 507 U.S. at 637.

25        Petitioner's reliance on *Doe v. Busby,* 661 F. 3d 1001 (9th Cir. 2011), is misplaced.  In *Doe*,

26  a non-capital habeas appeal, the Ninth Circuit considered the following pattern instruction, CALJIC

27  No. 250.2:

28

> If you find that the defendant committed a prior offense involving domestic violence, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar-type offenses.  If you find that the defendant had this disposition, you may, but are not required, to infer that he was likely to commit and did commit the crime of which he is accused.

*Id.* at 1016.

Because the jury had also been instructed that it could find the defendant had committed the uncharged crimes by a preponderance of the evidence, the *Doe* court concluded that the interplay of the two instructions, without a clarifying instruction from the trial court, allowed the jury to find the defendant guilty of the charged crimes if it found by a preponderance of the evidence that he had committed the uncharged crimes.  *See Id.* at 1016-1018.  Additionally, the Ninth Circuit found that because the instructions could have lowered the burden of proof, the error was a structural one requiring reversal of the conviction, rather than a trial error subject to harmless error review.  *See Id.* at 1022.

In petitioner's case, however, the jury was not instructed that it could infer that petitioner had actually committed the charged crimes if it found that he had committed the uncharged Marin crimes.  Rather, the jury was instructed that the evidence of those uncharged crimes could only be considered "for the limited purpose of determining if it tends to show a characteristic method, plan or scheme . . . which would further tend to show the existence of the intent, which is a necessary element of the crimes charged."  RT at 14233-35.  As discussed below, and in contrast to *Doe*, petitioner's jury was also instructed that the requisite intent must be found beyond a reasonable doubt.  RT at 14233-14252.  Accordingly, it was not unreasonable under clearly established federal law for the California Supreme Court to hold that the instructions, considered in their entirety, "made clear the reasonable doubt standard applies to intent as well as identity."  *See Carpenter*, 15 Cal. 4th at 383.

Accordingly, as petitioner has demonstrated neither constitutional error nor prejudice, Claim 22 will be denied in its entirety.

## IV.    Claim 25: Sufficiency of the Evidence

In Claim 25, petitioner contends there was insufficient evidence to support his conviction for the attempted rape and murder of Hansen, and for the related special circumstance finding of

attempted rape-murder.  This claim was denied by the California Supreme Court in a reasoned

decision on direct appeal as follows:

> Defendant contends the evidence was insufficient to support the conviction of attempted rape of Hansen and the jury's finding of the rape-murder special circumstance.  "To determine sufficiency of the evidence, we must inquire whether a rational trier of fact could find defendant guilty beyond a reasonable doubt.  In this process we must view the evidence in the light most favorable to the judgment and presume in favor of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence.  To be sufficient, evidence of each of the essential elements of the crime must be substantial and we must resolve the question of sufficiency in light of the record as a whole."  (*People v. Johnson, supra*, 6 Cal. 4th at p. 38.)

> Defendant argues attempted rape requires "some physical contact of a distinctly and unambiguously sexual nature" and implies a defendant must physically touch his victim.  He merely cites a few cases involving this touching.  The occurrence of physical touching in some cases, however, does not make it required in all.  An attempt to commit a crime has two elements: the intent to commit the crime and a direct ineffectual act done toward its commission.  The act must not be preparation but must be a direct movement after the preparation that would have accomplished the crime if not frustrated by extraneous circumstances.  (*People v. Memro* (1985) 38 Cal. 3d 658, 698 [parallel citations omitted].)  Defendant's statement, "I want to rape you," clearly established his intent, which was also indicated by evidence that on two other occasions, one earlier and one later, he did in fact rape.  Defendant's acts of pointing his handgun at Hansen and ordering her to do what he said went beyond mere preparation and constituted direct acts toward the commission of the crime.  Ample evidence supported this verdict.

> Defendant also argues the rape‑murder special circumstance must be set aside because the attempted rape was merely incidental to the murder.  However, the jury, correctly instructed, reasonably found otherwise.  The evidence that defendant said he wanted to rape Hansen strongly suggests that his primary motivation was rape, not murder, or at least that the rape was an "independent purpose."  (*People v. Wright, supra*, 53 Cal. 3d at pp. 416-417.)  Defendant also argues the rape-murder special circumstance is inconsistent with the lying-in-wait special circumstance because the former required an "after-formed intent to kill," while the latter requires a "pre-existing intent to kill."  He is incorrect.  The rape-murder special circumstance requires that rape not be merely incidental to the murder but does not require that the intent to kill arise *after* the rape or attempt to rape. . . . If, as the jury reasonably could have found, defendant lay in wait intending to rape and then to kill, both lying-in-wait and rape-murder special circumstances would be established.

*Carpenter*, 15 Cal. 4th at 387-388.

The Due Process Clause "protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re*

*Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his

state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find

guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443

17

1    U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *see id.* at 324.

2         The Supreme Court has emphasized, however, that "*Jackson* claims face a high bar in federal

3    habeas proceedings."  *See Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam) (finding

4    Third Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential

5    standard of *Jackson* when it engaged in "fine-grained factual parsing" to find evidence was

6    insufficient to support petitioner's conviction).  A federal court reviewing collaterally a state court

7    conviction does not determine whether it is satisfied that the evidence established guilt beyond a

8    reasonable doubt.  *See Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992); *see also, e.g., Coleman*,

9    132 S. Ct. at 2065 (holding "the only question under *Jackson* is whether [the jury's finding of guilt]

10   was so insupportable as to fall below the threshold of bare rationality").  Rather, the federal court

11   "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution,

12   any rational trier of fact could have found the essential elements of the crime beyond a reasonable

13   doubt.'" *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319).  Only where no rational trier of

14   fact could have found proof of guilt beyond a reasonable doubt has there been a due process

15   violation.  *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338.

16        If confronted by a record that supports conflicting inferences, a federal habeas court "must

17   presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any

18   such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson*, 443 U.S. at

19   326.  The habeas court may not substitute its judgment for that of the jury.  *See Coleman*, 132 S. Ct.

20   at 2065.  Moreover, a reviewing court must consider all of the evidence admitted at trial in the light

21   most favorable to the prosecution, *McDaniel v. Brown*, 130 S. Ct. 665, 673-74 (2010), and must

22   accord a jury's credibility determinations "near-total deference," *Bruce v. Terhune*, 376 F.3d 950,

23   957 (9th Cir. 2004).

24        Here, petitioner cannot establish the state court's reasoned decision denying this claim was

25   unreasonable under clearly established federal law.  Petitioner first argues there was insufficient

26   evidence to support his conviction for attempted rape of Hansen.  As the California Supreme Court

27   reasonably found, however, petitioner's stating he wanted to rape Hansen, combined with his

28   pointing a gun at her and ordering her to comply with his demands, were ample evidence of

**United States District Court**
For the Northern District of California

1  attempted rape under the relevant California law.  *See Carpenter*, 15 Cal. 4th at 387.  Given such

2  evidence, a reasonable trier of fact could have found the essential elements of the crime beyond a

3  reasonable doubt.  *See Payne*, 982 F.2d at 338.  Petitioner's argument that the California Supreme

4  Court erred in determining physical touch was not required to prove attempted rape under California

5  law is unavailing.  "[A] state court's interpretation of state law, including one announced on direct

6  appeal of the challenged conviction, binds a federal court sitting on habeas review," *Bradshaw v.*

7  *Richey,* 546 U.S. 74, 76 (2005), and the state court here found physical touch was not required under

8  California law, a finding petitioner cannot demonstrate was unreasonable under clearly established

9  federal law.  Consequently, petitioner is not entitled to habeas relief on this portion of his claim.[9]

10       Petitioner makes the additional argument that there was insufficient evidence for the jury to

11  find true the attempted rape-murder special circumstance because, according to petitioner, the rape

12  attempt was merely "incidental" to the murder, which was the primary goal of Hansen's assailant.

13  As the state court reasonably found, however, "[t]he evidence that defendant said he wanted to rape

14  Hansen strongly suggests that his primary motivation was rape, not murder, or at least that the rape

15  was an 'independent purpose,'" *Carpenter*, 15 Cal. 4th at 387, and the jury found there was

16  sufficient evidence to support an attempted rape-murder special circumstance.  Because a reviewing

17  court must consider all of the evidence admitted at trial in the light most favorable to the

18  prosecution, *McDaniel*, 130 S. Ct. at 673-74, and must accord a jury's credibility determinations

19  "near-total deference," *Bruce,* 376 F.3d at 957, petitioner fails to demonstrate the state court's

20  decision upholding the jury verdict was improper.

21       Accordingly, this claim will be denied in its entirety.

22  **V.    Claim 26: Instructions Regarding Lying-In-Wait**

23       In Claim 26, petitioner contends the trial court erred when it instructed the jury on the

24  elements of first-degree murder by lying-in-wait and the lying-in-wait special circumstance.

25  Specifically, petitioner argues the court erred by denying two defense-requested instructions and

26  making a misstatement in one of the instructions.  Petitioner argues these instructional errors

27   

28      [9] To the extent petitioner asserts lack of touch as the basis for his related claims that there was insufficient evidence of first-degree felony murder and insufficient evidence to support a rape-murder special circumstance, such related claims likewise fail.

United States District Court

For the Northern District of California

1    violated his due process rights under the Fifth and Fourteenth Amendments and his right to an

2    impartial jury under the Sixth Amendment. Petitioner further asserts that the lying-in-wait

3    instruction violated the Eighth Amendment's narrowing requirement. The lying-in-wait jury

4    instructions were addressed as follows in a reasoned opinion by the California Supreme Court on

5    direct appeal.

6          The court's instructions on lying-in-wait murder were identical to
   instructions we have repeatedly upheld except for two sentences added at defense
   request. (*People v. Ceja*, *supra*, 4 Cal.4th at pp. 1139-1140; *People v. Ruiz* (1988)
7    44 Cal.3d 589, 613-614 & fn. 3 [244 Cal .Rptr. 200, 749 P.2d 854].) Defendant
   contends the court erred in refusing two other instructions he requested. One,
8    however, erroneously implied defendant must have been physically concealed. Both
   otherwise duplicated the instructions actually given. The court need not give
9    duplicative or erroneous instructions. (*People v. Mickey*, *supra*, 54 Cal.3d at p.
   697.)

10

11         Defendant also argues that the second of the two sentences the court added
   at his request was itself error: "If you find that defendant merely intended to rape
12    during a period of watchful waiting and concealment, then you may not find the
   lying in wait special circumstance to be true." This instruction accurately states
13    the law but was given as part of the instructions on first degree murder, not on the
   special circumstance. Defendant contends that, by referring solely to the special
14    circumstance, the instruction contains "an erroneous negative implication" that for
   first degree murder, a mere intent to rape is sufficient. The Attorney General
15    responds, first, that any error was invited. (See generally, *People v. Cain*, *supra*,
   10 Cal.4th at p. 38, fn. 14.) We disagree. Although defendant did request the
16    instruction, the record does not reflect that he wanted it with the first degree
   murder instructions rather than the special circumstance instructions. The
17    contention, however, lacks merit. The court made clear that more than an intent to
   rape was necessary for lying-in-wait murder. The instructions were inconsistent
18    regarding exactly what that intent requirement was. The court correctly gave the
   standard instruction that, for lying-in-wait murder, the defendant must intend to
19    inflict "'bodily harm involving a high degree of probability that it will result in
   death and which shows a wanton disregard for human life.'" (*People v. Ruiz*,
20    *supra*, 44 Cal.3d at p. 614, fn. 3; see also *People v. Ceja*, *supra*, 4 Cal.4th at p.
   1140, fn. 2; *People v. Webster* (1991) 54 Cal.3d 411, 448 [285 Cal .Rptr. 31, 814
21    P.2d 1273].) At defense request, the court also stated that defendant must have
   "intended to kill." Defendant cannot complain of this additional language, as it is
22    favorable to him, and the invited error doctrine clearly applies. (*People v. Cain*,
   *supra*, 10 Cal.4th at p. 38, fn. 14.) Moreover, any error was harmless. The jury
23    found the special circumstance true, showing that it did not find a mere intent to
   rape but also to kill.
24

25         The instructions on the lying-in-wait special circumstance were also
   identical to instructions we have repeatedly upheld. (*People v. Sims*, *supra*, 5
26    Cal.4th at ¶. 433-434; *People v. Edwards*, *supra*, 54 Cal.3d at p. 845 & fn. 16.)
   Defendant challenges the language stating that the duration of the lying in wait
27    must be "such as to show a state of mind equivalent to premeditation *or*
   deliberation." (Italics added.) We have upheld this language both for lying-in-wait
28    murder (*People v. Stanley* (1995) 10 Cal.4th 764, 794 [42 Cal .Rptr.2d 543, 897
   P.2d 481]; *People v. Ruiz*, *supra*, 44 Cal.3d at ¶. 614-615) and the special

United States District Court
For the Northern District of California

1   circumstance (*People v. Sims*, *supra*, 5 Cal.4th at p. 434; *People v. Hardy*, *supra*, 2

2   Cal.4th at ¶. 162-163, 191; *People v. Edwards*, *supra*, 54 Cal.3d at p. 845), and we

    continue to do so.

3   *Carpenter*, 15 Cal. 4th at 389-391.

4       Petitioner has not shown the state court's reasoned opinion holding there was no

5   instructional error is contrary to, or an unreasonable application of, clearly established United

6   States Supreme Court law.  Petitioner also fails to demonstrate the state court's opinion relied on

7   an unreasonable determination of the facts.

8       A trial court's refusal to give an instruction does not alone raise a ground cognizable in a

9   federal habeas corpus proceeding.  *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).

10  Rather, to obtain federal collateral relief for instructional error, a petitioner must show that the

11  challenged instruction, or lack of instruction, by itself so infected the entire trial that the resulting

12  conviction violates due process.  *See Estelle*, 502 U.S. at 72; *Cupp*, 414 U.S. at 147; *see also*

13  *Donnelly*, 416 U.S. at 643 (holding "it must be established not merely that the instruction is

14  undesirable, erroneous or even universally condemned, but that it violated some [constitutional]

15  right") (internal quotation and citation omitted).   The instruction may not be judged in artificial

16  isolation, but must be considered in the context of the instructions as a whole and the trial record.

17  *See Estelle*, 502 U.S. at 72.  As the California Supreme Court correctly stated, it would have been

18  error under California law to give one of the instructions the defense requested, as it implied that

19  the defendant must be concealed.  *See People v. Edwards*, 54 Cal. 3d, 787, 823 (1991) (holding

20  "concealment of physical presence is not a requirement of lying in wait").  The remainder of the

21  requested instructions were duplicative of instructions actually given by the trial court, and thus

22  there was no error in the trial court's refusal of petitioner's request that they be given in addition

23  thereto.  *See Carpenter*, 15 Cal. 4th at 389-390.

24      Nor has petitioner shown the California Supreme Court was unreasonable in rejecting his

25  claim that the alleged "misstatement" in the defense-requested instruction created a negative

26  inference.  The trial court made clear that more than intent to rape was necessary for lying-in-wait

27  murder.  *See Carpenter*, 15 Cal. 4th at 390.  Moreover, as the California Supreme Court noted, the

28

**United States District Court**
For the Northern District of California

1   jury found the special circumstance to be true, which required a finding of both intent to rape and

2   intent to kill.  Petitioner cites no clearly established United States Supreme Court precedent to

3   support his contention that such alleged instructional errors violated his federal constitutional rights

4   and entitle him to federal relief.

5          Petitioner further asserts the use of the disjunctive "or" in the lying-in-wait special

6   circumstance jury instruction violated the Eighth Amendment.  Specifically, he argues that because

7   the instruction stated the duration of the lying-in-wait must be such as to show a state of mind

8   "equivalent to premeditation or deliberation," it does not sufficiently narrow the class of murders

9   eligible for the death penalty.[10]  In order to pass constitutional muster, a special circumstance cannot

10  "apply to every defendant convicted of murder and instead must apply only to a subclass of

11  defendants convicted of murder."  *See Tuilaepa v. California*, 512 U.S. 967, 972 (1994).  In this

12  instance, as the California Supreme Court noted, California courts have repeatedly held the lying-in-

13  wait special circumstance instruction here at issue does not violate the Eighth Amendment.  *See,*

14  *e.g., People v Sims*, 5 Cal. 4th 405, 434, 20 Cal. Rptr. 2d 537 (1993).  In addition, the Ninth Circuit

15  has specifically held that California's "lying-in-wait circumstance is not overly broad 'such that it

16  appl[ies] to every defendant convicted of murder.'"  *See Morales v. Woodford*, 388 F.3d 1159, 1175

17  (9th Cir. 2004).  In sum, petitioner has not shown that the state court's reasoned opinion rejecting

18  this claim is contrary to, or an unreasonable application of, clearly established Supreme Court law.

19         Moreover, petitioner cannot demonstrate that any alleged error was prejudicial under *Brecht*.

20  To begin with, ample evidence supported the charge of lying-in-wait, including evidence that

21  petitioner first passed his victims on a trail, proceeded to an observation deck to view the trail with

22  binoculars, and then approached the victims at an isolated location.  *See Carpenter*, 15 Cal. 4th at

23  388-389.  Given this evidence, "a jury could reasonably infer that defendant concealed his purpose,

24  waited and watched for an opportune time to act, and then, when his victims reached an isolated spot

25  where no help could be expected, made a surprise attack from a position of advantage."  *Id.*

26

27

28         [10] In an earlier order, the Court considered and denied petitioner's Claim 46, in which
     petitioner argued the inclusion of lying-in-wait as a special circumstance violates the Eighth
     Amendment's narrowing requirement.

1   Moreover, petitioner was death-eligible not only because the jury found true the lying-in-wait

2   special circumstance, but also because the jury found true the multiple murder and rape-murder

3   special circumstances. *See Carpenter*, 15 Cal. 4th at 420. Thus, even had petitioner demonstrated

4   that the lying-in-wait special circumstance did not sufficiently narrow the class of death-eligible

5   murders, which contention, as discussed above, petitioner cannot support, petitioner's death

6   sentence would still stand. *See Brecht*, 507 U.S. at 638. Consequently, petitioner fails to

7   demonstrate he suffered any prejudice as a result of any alleged error.

8        Accordingly, this claim will be denied.

9   **VI.   Claim 27:   Attempted Murder Instructions**

10        In Claim 27, petitioner contends the jury was erroneously instructed on attempted murder.

11   Specifically, petitioner argues that the instructions would have allowed the jury to find him guilty of

12   attempted murder without a finding of a specific intent to kill. According to petitioner, the allegedly

13   erroneous instructions violated his due process rights under the Fifth and Fourteenth Amendments,

14   and his right to a jury trial under the Sixth Amendment. The Sixth Amendment portion of

15   petitioner's claim was raised in his second state habeas petition, and summarily denied on the merits.

16   The due process portion of petitioner's claim was raised on direct appeal, and denied in a reasoned

17   opinion by the California Supreme Court as follows:

18          11.   *Instructions on Attempted Murder*

19             Defendant contends the court erroneously allowed the jury to find him guilty

20   of attempting to murder Haertle on an implied malice theory. We agree that
attempted murder requires express malice, i.e., an intent to kill. (*People v. Collie*

21   (1981) 30 Cal. 3d 43, 61-62 [parallel citations omitted]), but disagree that the court
misinstructed. Defendant correctly points out that in instructing on attempted

22   murder, the court referred to the elements of murder, which included implied malice,
and said that those "elements apply when the crime is attempted." However, the

23   court also instructed that an attempt requires "a specific intent to commit the crime"
and that the "crime of attempted murder requires the specific intent to commit

24   murder." "[I]t is impossible to intend to commit a murder without intending to kill."
(*People v. Coleman* (1989) 48 Cal. 3d 112, 139 [parallel and additional citations

25   omitted].) Contrary to defendant's claim, the district attorney also correctly noted
that "attempted murder would require the intent to unlawfully kill another human

26   being, the intent required for murder."

27   *Carpenter*, 15 Cal. 4th at 391.

28        As discussed above, to obtain federal collateral relief for errors in the jury charge, a

petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly*, 416 U.S. at 643.  As further discussed, the instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record, *see Estelle*, 502 U.S. at 72, and, if an error is found, the court must determine whether the error had a substantial and injurious effect or influence in determining the jury's verdict,  *see Calderon*, 525 U.S. at 146-47.

Here, petitioner fails to demonstrate that the trial court's instructions, taken as a whole, would have allowed the jury to convict him of attempted murder without finding a specific intent to kill.  As the California Supreme Court pointed out, and as a review of the record confirms, RT 14243-44, 14263, the jury was instructed both that an attempt "'requires a specific intent to commit the [particular] crime'" and that the "'crime of attempted murder requires the specific intent to commit murder.'"  *See Carpenter*, 15 Cal. 4th at 391; *see also Estelle*, 502 U.S. at 72. Additionally, the trial court's instructions were reinforced by the district attorney.  *See Carpenter*, 15 Cal. 4th at 391.  There is no clearly established law holding that such instructions – which clearly communicate that to find a defendant guilty of attempted murder, the jury must find that the defendant had the specific intent to commit murder – are unreasonable; consequently, petitioner cannot show the California Supreme Court's rejection of this claim was in error under § 2254(d).

Further, even had petitioner been able to show error, he cannot demonstrate prejudice.  *See Brecht*. 507 U.S. at 637.  Substantial evidence supported a finding of petitioner's intent to kill, including victim Haertle's description of the shooting.  Haertle testified that petitioner ordered him and Hansen into the bushes at gunpoint, and then shot him in the neck, facts that demonstrate petitioner's intent to kill Haertle.

Accordingly, this claim will be denied.

**VII.   Claim 28:       Instructions on Elements of Rape**

In Claim 28, petitioner alleges that his constitutional rights were violated because the jurors were not instructed that to convict him of the charged rape of Heather Scaggs, they had to find any

24

non-consensual intercourse occurred prior to death.  According to petitioner, such absence of instruction violated his rights to due process, a jury trial, and non-arbitrary imposition of the death penalty.  This claim was considered and rejected by the California Supreme Court in a reasoned opinion on direct appeal as follows:

> 12.   *Instructions on Rape*
>
> Defendant contends the court should have instructed that rape requires "that non-consensual intercourse occurred prior to death . . . ."  We agree that this is the law.  "A dead body cannot be raped."  (*People v. Kelly*, *supra*, 1 Cal. 4th at p. 526.)  But the instructions adequately conveyed this law.  The court instructed that rape requires intercourse "against the will" of the victim "accomplished by means of fear of immediate and unlawful bodily injury to such person."  It is not reasonably likely the jury would misconstrue these instructions as allowing rape of a dead body. (*People v. Kelly*, *supra*, 1 Cal. 4th at p. 525.)  A dead body can neither have a "will" nor "fear . . . bodily injury."  The instructions were different in the cases defendant cites.  (*People v. Sellers* (1988) 203 Cal. App. 3d 1042, 1050 [parallel citation omitted] [defense theory was that intercourse occurred after death, and the "trial court ruled, as a matter of law, it was irrelevant whether sexual penetration took place before or after the victim was dead"]; *People v. Kelly*, *supra*, 1 Cal. 4th at p. 526 [trial court instructed, "It is legally possible to rape a dead body;"].)  "If defendant believed that the instruction was incomplete or needed elaboration, it was his responsibility to request an additional or clarifying instruction."  (*People v. Bell* (1989) 49 Cal. 3d 502, 550 [parallel and additional citations omitted].)  He made no such request, undoubtedly because the standard instructions were clear enough, and the defense theory of the case was not that defendant killed Scaggs and then had intercourse, but that he did not have intercourse.

*Carpenter*, 15 Cal. 4th at 391-392.

Petitioner cannot demonstrate that the state court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law.  28 U.S.C. § 2254(d)(1).  As discussed above, to obtain federal collateral relief for errors in the jury charge, a petitioner must show that the challenged instruction by itself so infected the entire trial that the resulting conviction violates due process.  *See Estelle* 502 U.S. at 72; *Cupp*, 414 U.S. at 147.  In this case, petitioner has not demonstrated that the instruction itself was in error, or that it in any manner mis-stated the applicable law.  As the California Supreme Court reasonably found, the instructions clearly conveyed that a conviction for rape required a victim who was alive at the time of the rape.  *See Carpenter*, 15 Cal. 4th at 391-392.

Further, even if petitioner had been able to demonstrate that the instruction was erroneous, he would not be entitled to relief on this claim, as he is unable to show prejudice.  *See Brecht*. 507 U.S.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

at 637.  As the state court correctly noted, petitioner's defense at trial was that no rape occurred, not that intercourse occurred after death.

Accordingly, this claim will be denied.

## VIII.   Claim 29:      Jury Instructions Regarding Petitioner's Out-of-Court Statements

In Claim 29, petitioner contends the trial court's refusal to instruct the jury as to two of his out-of-court statements violated his federal constitutional right to due process.  Petitioner argues these instructional errors at trial violated his due process rights under the Fifth and Fourteenth Amendments, and resulted in the arbitrary imposition of the death penalty in violation of his Eighth Amendment rights.  This claim was considered by the California Supreme Court in a reasoned opinion on direct appeal as follows:

### 13. *Instructions on Defendant's Out-of-court Statements*

The court refused the prosecution request to instruct (1) that the jury must view evidence of defendant's oral admissions or confession "with caution" (the cautionary instruction), and (2) that the corpus delicti of a crime must be proved independently of defendant's admission or confession (the corpus delicti instruction). Defendant contends the court erred. He focuses on two items of evidence: (1) Haertle's testimony that defendant looked at Hansen and said, "'I want to rape you'"; and (2) evidence that defendant told the police investigating Scaggs's disappearance,  "'I just pray that nobody finds Heather's body, or that in fact she has been raped.'" We conclude the court should have given the cautionary, but not the corpus delicti, instruction. The error was harmless.

#### a. *Cautionary Instruction*

When the evidence warrants, the court must give the cautionary instruction sua sponte. ( *People v. Lang* (1989) 49 Cal.3d 991, 1021 [264 Cal.Rptr. 386, 782 P.2d 627]; *People v. Beagle* (1972) 6 Cal.3d 441, 455 [99 Cal.Rptr. 313, 492 P.2d 1].) Defendant's statement of intent to rape Hansen was part of the crime itself. The initial question is whether it is the sort of statement that requires the cautionary instruction. In *Beagle*, we found the court erred in failing to give sua sponte either the cautionary or the corpus delicti instruction. ( *People v. Beagle*, *supra*, 6 Cal.3d at p. 455.) We explained: "For purposes of requiring independent evidence of the corpus delicti and cautionary instructions, we have not distinguished between actual admissions [citation] and pre-offense statements of intent [citation]. [Citations.]" ( *Id.* at p. 455, fn. 5.) We stated that although the risk of conviction because of a false preoffense statement alone is less than the risk of conviction upon a false confession or admission, "we find the risk of an unjust result sufficient to justify our broader rule." (*Ibid.*)

One of the cases we cited in *Beagle* was *People v. Ford* (1964) 60 Cal.2d 772, 780-784, 799 [36 Cal.Rptr. 620, 388 P.2d 892], where we found the court should have given the cautionary instruction regarding evidence of defendant's statements during the entire course of the events surrounding the crime, including some just before and some just after the fatal shooting. The rationale behind the cautionary instruction suggests it applies broadly. "The purpose of the cautionary instruction is

to assist the jury in determining if the statement was in fact made." ( *People v. Beagle*, *supra*, 6 Cal.3d at p. 456.) This purpose would apply to any oral statement of the defendant, whether made before, during, or after the crime. Therefore, the court should have given the cautionary instruction at least as to defendant's statement to Hansen.

We apply the normal standard of review for state law error: whether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given. ( *People v. Stankewitz* (1990) 51 Cal.3d 72, 94 [270 Cal.Rptr. 817, 793 P.2d 23]; *People v. Beagle*, *supra*, 6 Cal.3d at p. 456.) Defendant argues a violation of state law also violates federal due process, thus mandating the more stringent standard for federal constitutional error. He is wrong. Mere instructional error under state law regarding how the jury should consider evidence does not violate the United States Constitution. ( *Estelle v. McGuire* (1991) 502 U.S. 62, 71-75 [112 S.Ct. 475, 481-484, 116 L.Ed.2d 385].) Failure to give the cautionary instruction is not one of the " 'very narrow[]' " categories of error that make the trial fundamentally unfair. ( *Id.* at p. 73 [112 S.Ct. at p. 482].)

Under this standard, the error was harmless. Haertle's testimony was uncontradicted. The statement he testified defendant made consisted of five simple words, spoken when defendant had Haertle's full attention. There was "no evidence that the statement was not made, was fabricated, or was inaccurately remembered or reported." ( *People v. Stankewitz*, *supra*, 51 Cal.3d at p. 94.) Moreover, the court fully instructed the jury on judging the credibility of a witness, thus providing guidance on how to determine whether to credit the testimony. Accordingly, there is no reasonable probability the error was prejudicial; indeed, we would even find the error harmless beyond a reasonable doubt.

The same applies to defendant's statement to the police even assuming, contrary to the trial court's finding, that it was an admission. The defense did not express concern at the court's ruling. As the cautionary instruction would have defined an "admission," the defense may have preferred it not be given. This circumstance does not obviate the court's sua sponte duty, but may be considered in determining prejudice. Moreover, the evidence was uncontradicted. Defendant made the statement to two police officers who were, no doubt, carefully listening for any possibly incriminating remarks. The statement was also insignificant relative to the other evidence.

### b. *Corpus Delicti Instruction*

Defendant argues the court had to give the corpus delicti instruction regarding the evidence that he told Hansen he wanted to rape her. We disagree. We have extended the corpus delicti rule to preoffense statements of later intent as well as to postoffense admissions and confessions ( *People v. Beagle*, *supra*, 6 Cal.3d at p. 455), but not to a statement that is *part of the crime itself*. (Cf. *People v. Ford*, *supra*, 60 Cal.2d at pp. 799-800 [involving the cautionary instruction but not the corpus delicti instruction].) A statement to the victim of current intent can itself supply the corpus delicti. Unlike the cautionary instruction, the corpus delicti rule is designed to provide independent evidence that the crime occurred, not to help determine whether the statement was made. Its principle reason is to ensure "that the accused is not admitting to a crime that never occurred." ( *People v. Jennings* (1991) 53 Cal.3d 334, 368 [279 Cal.Rptr. 780, 807 P.2d 1009]; see *People v. Manson* (1977) 71 Cal.App.3d 1, 42 [139 Cal.Rptr. 275] [The rule "guard[s] against a defendant confessing to a crime which was never committed."].) Defendant's statement to Hansen of present intent was part of the crime; it could not be a confession to a crime that never occurred. That statement of intent did not have to be independently proved. Accordingly, the court properly refused to give the corpus delicti instruction.

*Carpenter*, 15 Cal. 4ᵗʰ at 392-94.

### A.     Applicable Law

A trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding.  *See Dunckhurst v. Deeds*, 859 F.2d at 114.  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the failure to instruct by itself so infected the entire trial that the resulting conviction violates due process.  *See Estelle*, 502 U.S. at 72; *see also Calderon v. Coleman*, 525 U.S. at 146 (citing *Brecht v. Abrahamson*, 507 U.S. at 637).  A habeas petitioner is not entitled to relief unless the instructional error resulted in "actual prejudice."  *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The burden of demonstrating that an erroneous jury instruction was so prejudicial that it would support a collateral attack on the constitutionality of a state court's judgment is "even greater than the showing required to establish plain error on direct appeal."  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  A habeas petitioner whose claim involves a failure to give a particular instruction bears an "especially heavy burden."  *Id.* at 155.  The instructional error may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  *See Estelle*, 502 U.S. at 72.

### B.     Cautionary Instruction

Petitioner first claims it was constitutional error for the trial judge to refuse to instruct the jury that two of his out-of-court statements, specifically, his statement of intent to rape Hansen and his statement to the police investigating Scaggs's disappearance, should be viewed with caution.

In evaluating this claim, the California Supreme Court reasoned that "the [trial] court should have given the cautionary instruction at least as to [petitioner's] statement to Hansen," but that "[m]ere instructional error under state law regarding how the jury should consider evidence does not violate the United States Constitution."  *Carpenter*, 15 Cal.4th at 393 (citing *Estelle*, 502 U.S. at 71-75).  The state court reasoned that any error stemming from the failure to instruct the jury on the statements did not have a substantial or injurious effect on the jury's verdict, and, consequently, that there was no reasonable probability the error was prejudicial or "so infect[ed] the entire trial that the

1    resulting conviction violate[d] due process." *Id*. (citing *Estelle*, 502 U.S. at 72).

2         Petitioner first argues the state court's conclusion was unreasonable in light of the

3    prosecution's use of his statement to Hansen as direct, contemporaneous evidence of intent.  He

4    argues the case contained no circumstantial evidence of intent to rape in the form of physical acts

5    with sexual connotations[11] and thus that the jury must have found, on the basis of this statement

6    alone, that petitioner had formed the requisite intent necessary to rape Hansen.  Petitioner contends

7    the trial court's error was necessarily prejudicial, because there is a reasonable probability that the

8    jury would have found differently had a cautionary instruction been given; he asserts that the

9    absence of the cautionary instruction here so affected the jury as to constitute a violation of his right

10   to a fundamentally fair trial.

11        Second, petitioner contends the state court was unreasonable to conclude that the failure to

12   give a cautionary instruction about his statement to the officer investigating Scaggs's disappearance

13   did not constitute prejudicial error at the guilt phase.  According to petitioner, the prosecution's use

14   of the statement as evidence of guilty knowledge that he had committed rape, without a cautionary

15   instruction, was taken by the jury to demonstrate consciousness of guilt.

16        Petitioner fails to show the state court's denial of this claim was contrary to, or an

17   unreasonable application of, clearly established United States Supreme Court law.  He presents no

18   evidence that, had the trial court agreed to instruct the jury as petitioner asserts was required, the

19   result of petitioner's entire trial would have been different.  *See Brecht*, 507 U.S. at 637.  Petitioner

20   does not cite to any United States Supreme Court authority, nor is this Court aware of any federal

21   precedent, that supports his assertion that the lack of a cautionary instruction constituted reversible

22   error.  He notes only that the issues of his intent to rape Hansen and whether or not he raped Scaggs

23   were "vigorously contested" by the defense.

24        As noted by the California Supreme Court, however, the cautionary instruction is intended to

25   assist the jury in determining whether a statement attributed to the defendant was in fact made.  In

26   examining potential prejudice based on the trial court's failure to give such instruction, the

27

28   _____

          [11] As discussed above, in connection with Claim 25, physical contact of a sexual nature is not
     a prerequisite to proof of attempted rape under California law.

United States District Court
For the Northern District of California

1   reviewing court had a duty to "see if there was any conflict in the evidence about the exact words

2   used, their meaning, or whether the admissions were repeated accurately." *See People v. Pensiger*,

3   52 Cal.3d 1201, 1268 (1991).  In that regard, there was no doubt that both statements were in fact

4   made by the defendant, and the trial court "fully instructed the jury on judging the credibility of a

5   witness, thus providing guidance on how to determine whether to credit the testimony." *Carpenter*,

6   15 Cal.4th at 393.  Although the defense "vigorously contested" the issues of intent to rape Hansen

7   and whether petitioner raped Scaggs, disagreement and argument at trial on contested issues does

8   not demonstrate that the admission of the above-referenced statements without a cautionary

9   instruction, albeit an error under state law,  was an unreasonable application of Supreme Court law.

10  Moreover, without evidence of actual prejudice, the absence of a cautionary instruction could not

11  have so infected the entire trial that the resulting convictions violated due process, nor could such

12  alleged error have had a substantial or injurious impact on the jury's verdict. *See Brecht*, 507 U.S. at

13  638.  In sum, the California Supreme Court's finding as to this claim was reasonable.

14          Accordingly, the claim will be denied.

15  **C.      Corpus Delicti Instruction**

16          Petitioner also claims the trial judge erred in refusing to provide a corpus delicti instruction

17  in connection with his statement to Hansen as to his intent to rape her.  He argues there was no

18  independent proof of the attempted rape and related felony-murder special circumstance, and thus

19  that the trial court's failure to instruct the jury that the corpus delicti of the attempted rape needed to

20  be proved independently of petitioner's statement affected the jury's verdict on that count.

21          The California Supreme Court denied this claim, noting that "[u]nlike the cautionary

22  instruction, the corpus delicti rule is designed to provide independent evidence that the crime

23  occurred, not to help determine whether the statement was made." *Carpenter*, 15 Cal.4th at 394.

24  The instruction is meant to ensure "'that the accused is not admitting to a crime that never

25  occurred.'" *Id*. (citing *People v. Jennings*, 53 Cal.3d 334, 368 (1991)).  Here, the state court

26  reasonably concluded that petitioner's statement to Hansen was part of the crime itself rather than a

27  confession or admission related to the crime.  Consequently, the corpus delicti rule was not

28

United States District Court
For the Northern District of California

1   implicated thereby, and the California Supreme Court's conclusion that the trial court properly

2   refused to give the corpus delicti instruction was reasonable as well.

3          Moreover, even if petitioner were correct that state law at the time required such instruction

4   be given, petitioner fails to cite to any clearly established United States Supreme Court precedent to

5   support his contention that any such instructional error violated his federal constitutional rights and

6   entitles him to federal relief, nor has he shown that the absence of such instruction was an error that

7   rendered his trial fundamentally unfair or resulted in arbitrary imposition of the death penalty.

8          Accordingly, this claim will be denied.

9   **IX.    Claim 30:    Felony Murder Instructions**

10         In Claim 30, petitioner contends the trial court's instructions regarding felony murder were

11  in error.  According to petitioner, such alleged failure violated his rights to due process and to a jury

12  trial.  This claim was considered and rejected by the California Supreme Court in a reasoned opinion

13  on direct appeal as follows:

14                    14.    *Instructions on Felony Murder*

15              The court instructed on felony murder as a theory of first degree murder.  It
16         also instructed that if the jury unanimously agreed defendant was guilty of first
           degree murder, it was not required to agree on a theory.  Defendant argues that the
17         court had to either "specify malice as an element of felony murder" or require
           unanimity as to theory.  He is incorrect on both points.  (*People v. Pride* (1992) 3 Cal.
18         4th 195, 249-250 [parallel and additional citations omitted].) . . .  There is [] only a
           "single, statutory offense of first degree murder." (*People v. Pride*, *supra*, 3 Cal. 4th
19         at p. 249 [additional citation omitted].)

20              Moreover, any error was harmless.  The jury found defendant raped one
           murder victim and attempted to rape the other and found true the rape-murder special
21         circumstance as to both and the lying-in-wait special circumstance as to Hansen.  The
           court instructed that intent to kill was required for both special circumstances.  As to
22         both murders, therefore, the jury unanimously both agreed with a first-degree felony
           murder theory and found an intent to kill, i.e., express malice. (*People v. McPeters*,
23         *supra*, 2 Cal. 4th at p. 1185.)

24  *Carpenter*, 15 Cal. 4th at 394-395.

25         As petitioner acknowledges, he cannot demonstrate that the state court opinion was contrary

26  to, or involved an unreasonable application of, clearly established United States Supreme Court law.

27  *See* 28 U.S.C. § 2254(d)(1).  Specifically, petitioner concedes this claim is foreclosed by *Schad v.*

28  *Arizona*, 501 U.S. 624 (1991), as well as by *Sullivan v. Borg*, 1 F. 3d 926 (9th Cir. 1993).  In *Schad*,

United States District Court
For the Northern District of California

1   the Supreme Court held the Constitution is not violated "[i]f a State's courts have determined that

2   certain statutory elements are mere means of committing a single offense, rather than independent

3   elements of the crime." *Schad*, 501 U.S. at 636-637.  In *Sullivan*, the Ninth Circuit recognized that

4   "California continues to characterize first-degree murder as 'a single crime as to which a verdict

5   need not be limited to any one statutory alternative'" *see Sullivan*, 1 F. 3d at 929 (quoting *Schad*,

6   501 U.S. at 630-631), and held there was no due process violation when the instructions allowed the

7   jury to convict on a first-degree murder charge without requiring unanimity as to whether the murder

8   was felony murder or premeditated and deliberate murder, *id.* at 927-929.

9        Accordingly, this claim will be denied.

10  **X.**     **Claim 31:**          **Circumstantial Evidence Instructions**

11       In Claim 31, petitioner contends certain guilt phase instructions improperly reduced the

12  prosecution's burden of proof, thereby violating his rights to due process, to reliable factfinding, and

13  to a jury trial.  In that regard, petitioner challenges the language of CALJIC No. 3.34, by which the

14  jurors were instructed that they "must assume the defendant was of sound mind."  Petitioner also

15  argues that certain guilt phase instructions regarding circumstantial evidence unconstitutionally

16  reduced the prosecution's burden of proof; specifically, petitioner challenges the use of the word

17  "appears" in CALJIC No. 2.01, which instruction stated in relevant part: "If . . . one interpretation

18  of such [circumstantial] evidence *appears* to you to be reasonable and the other interpretation to be

19  unreasonable, it would be your duty to accept the reasonable interpretation and to reject the

20  unreasonable." *See* CALJIC No. 2.01 (emphasis added).  He also challenges similar language

21  contained in CALJIC Nos. 2.02 (circumstantial evidence of specific intent), 8.83 (circumstantial

22  evidence of special circumstances), and 8.83.1 (circumstantial evidence of mental state for special

23  circumstances), all of which were given to the jury at the guilt phase.  This claim was denied on the

24  merits on direct appeal in a reasoned opinion in which the California Supreme Court noted it had

25  upheld these instructions on more than one occasion in the past. *See Carpenter*, 15 Cal. 4th at 396.

26       The Due Process Clause of the Fourteenth Amendment protects the accused against

27  conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

28

**United States District Court**
For the Northern District of California

crime with which he or she is charged. *See In re Winship*, 397 U.S. 358, 364 (1970). This constitutional principle prohibits the state from using evidentiary presumptions in a jury charge that have the effect of relieving the state of its burden of persuasion beyond a reasonable doubt as to every essential element of a crime. *See Yates v. Evatt*, 500 U.S. 391, 400-03 (1991); *Carella v. California*, 491 U.S. 263, 265-66 (1989). As long as the trial court instructs the jury on the necessity that defendant's guilt be proved beyond a reasonable doubt, however, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. *Victor v. Nebraska*, 511 U.S. 1, 6 (1994). Rather, taken as a whole, the instructions must correctly convey to the jury the concept of reasonable doubt. *See id.* The proper inquiry is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Id.* at 6.

Here, petitioner fails to demonstrate that the state court's decision regarding CALJIC No. 3.34 was unreasonable in light of clearly established Supreme Court law. Because there was no contested issue at trial regarding petitioner's sanity or soundness of mind, the instruction directing the jury to assume petitioner was of "sound mind" served merely to properly instruct the jury to refrain from speculating regarding a subject that was not at issue. The prosecution was not required to prove petitioner was of "sound mind" as an element of any charged offense, and, consequently, the instruction did not relieve the prosecution of its burden to prove every essential element of the crime beyond a reasonable doubt. *See Francis*, 471 U.S. at 313.

Petitioner likewise has not demonstrated that the state court's decision as to CALJIC Nos. 2.01, 2.02, 8.83 and 8.83.1 is unreasonable. Petitioner cannot demonstrate that the instructions given at his trial regarding reasonable doubt were inadequate, nor is there any evidence that the challenged instructions compelled the jurors to disregard the reasonable doubt standard. Moreover, petitioner cites to no case that calls into question the constitutionality of the cited jury instructions, which permissibly instructed the jurors to accept reasonable interpretations of the evidence. *See, e.g., People v. Jennings,* 53 Cal. 3d 334, 386 (1991) (holding CALJIC Nos. 2.01 and 2.02 permissibly "require the jury to reject unreasonable interpretations of the evidence, and to accept the

United States District Court
For the Northern District of California

reasonable version of the events which fits the evidence"). Indeed, the California Supreme Court has consistently held that CALJIC No. 2.01 does not reduce the state's burden of proof. *See, e.g.*, *People v. Brasure*, 42 Cal. 4th 1037, 1058 (2008); *People v. Snow*, 30 Cal. 4th 43, 95 n.18 (2003); *Jennings*, 53 Cal. 3d at 386 (1991) (holding "[n]o reasonable juror would have interpreted these instructions to permit a conviction where the evidence shows that defendant was 'apparently' guilty, yet not guilty beyond a reasonable doubt"). Similarly, the California Supreme Court has consistently upheld CALJIC No. 2.02 and related instructions. *See*, *e.g.*, *People v. Hines*, 15 Cal. 4th 997, 1049-1050 (1997).

And while neither the United States Supreme Court nor the Ninth Circuit appear to have squarely addressed CALJIC No. 2.01, No. 2.02, or the related instructions, at least one district court has held CALJIC No. 2.01 does not reduce the state's burden of proof and is not in violation of clearly established federal law. *See Lara v. Allison*, 2011 WL 835594, *13-14 (C.D. Cal. 2011).[12] In sum, there is no "reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *See Victor*, 511 U.S. at 6.

Accordingly, this claim will be denied.

## XI.    Claim 44:        Trial Court Misconduct

In Claim 44, petitioner contends the trial court committed misconduct in the course of an exchange with a witness during the penalty phase of the trial. The exchange began with the trial judge inquiring of the witness, who was a military police officer at the Presidio, as to the age of the Presidio. When the witness replied that the Presidio had originally been Fort Point, the following occurred:

> The Court: That is the place where all the guys that are trying to escape from the prison try to swim to and don't make it?

---

[12] The version of CALJIC No. 2.01 at issue in *Lara*, as well as in *Brasure* and *Snow*, differed slightly from the version given at petitioner's trial; the instruction in *Lara* stated: "If . . . one interpretation of this [circumstantial] evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." *Lara*, 2011 WL835594, *13. The version of CALJIC No. 2.02 at issue in *Hines* was substantially similar to the one given at petitioner's trial; the instruction in *Hines* stated: "If . . . one interpretation of the evidence . . . appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and reject the unreasonable." *Hines*, 15 Cal. 4th at 1049-1050, n.11.

**United States District Court**
For the Northern District of California

1   The Witness: Well, I don't know which direction they swim, Your Honor.

2   RT 14426.  According to petitioner, the above exchange amounts to judicial misconduct in violation

3   of petitioner's rights to, *inter alia*, due process, a fair trial, and trial by an impartial jury.   This claim

4   was rejected by the California Supreme Court on the merits in a summary opinion.

5   A claim of judicial misconduct by a state judge in the context of federal habeas review does

6   not simply require that the federal court determine whether the state judge committed judicial

7   misconduct; rather, the question is whether the state judge's behavior "rendered the trial so

8   fundamentally unfair as to violate federal due process under the United States Constitution."

9   *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995).  To sustain a claim of judicial misconduct on

10  federal habeas, "there must be an extremely high level of interference by the trial judge which

11  creates a pervasive climate of partiality and unfairness."  *Id.*  Ill-considered comments do not

12  amount to judicial misconduct.  *See Lang v. Callahan*, 788 F. 2d 1416, 1418 (9th Cir. 1986).

13  Here, the trial court's brief exchange about escape attempts to Fort Point did not render

14  petitioner's trial fundamentally unfair, nor did it come close to creating "a pervasive climate of

15  partiality and unfairness."  *See Duckett*, 67 F. 3d at 740.  Petitioner argues that the trial court's

16  statements invited the penalty phase jury to speculate that a prisoner serving a life sentence would

17  perhaps be able to leave prison.  In support of his argument, however, petitioner cites to cases that

18  are readily distinguishable.  In *Simmons v. South Carolina*, 512 U.S. 154, 161-162 (1994) and

19  *Hamilton v. Vasquez*, 17 F. 3d 1149, 1159-1164 (9th Cir. 1994), for example, the issue was not

20  judicial misconduct, but instructional error, specifically, whether the trial court's instructions misled

21  the jury as to the defendant's eligibility for parole or other release if given a life sentence.

22  Moreover, there was nothing here in the trial judge's brief exchange with the witness that was

23  misleading, nor did the judge's single comment suggest that petitioner was likely to escape from

24  prison if he was given a life sentence.  Consequently, petitioner fails to demonstrate that the

25  California Supreme Court's decision denying this claim involved an unreasonable application of

26  Supreme Court law, or an unreasonable determination of the facts.

27  Accordingly, this claim will be denied.

28

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**XII.   Claim 48:       Modification of Verdict**

In Claim 48, petitioner contends the trial court's decision not to modify the death verdict was based on improper factors and violated his federal Constitutional rights.  This claim was rejected by the California Supreme Court in a reasoned opinion as follows:

E. *Automatic Motion to Modify Death Verdict*

Defendant contends the court committed several errors in denying the automatic motion to modify the judgment. (Pen. Code, § 190.4, subd. (e).) Before ruling, the court read the probation report, which attached letters containing information about the victims and urging the death penalty, and heard from Heather Scaggs's mother, who also urged the death penalty. Defendant is correct that in ruling on the motion to modify, the court reviews only the evidence presented to the jury, which included neither the probation report, nor the letters, nor the mother's statement. ( *People v. Cummings*, *supra*, 4 Cal.4th at pp. 1330-1331; *People v. Williams* (1988) 45 Cal.3d 1268, 1329 [248 Cal .Rptr. 834, 756 P.2d 221].) After the ruling of this case, we stated that "the preferable procedure is to defer reading the probation report until after ruling on the automatic application for modification of verdict." ( *People v. Lewis* (1990) 50 Cal.3d 262, 287 [266 Cal .Rptr. 834, 786 P.2d 892].)  "However, absent a contrary indication in the record, we assume that the court was not influenced by the report in ruling on the motion." ( *People v. Livaditis*, *supra*, 2 Cal.4th at p. 787.) The record here shows the court was not influenced by anything other than the evidence presented to the jury.

The court expressly recognized its duty to "review the evidence" and stated its ruling was based on "the evidence." Its discussion of the crimes and factors in aggravation mentioned only matters presented to the jury. (By contrast, the court did consider–and rejected as "incredible"–a letter from Dr. Haney trying to bolster his testimony in mitigation.) The court gave exhaustive reasons for denying the motion, "all of which were based on, and amply supported by, the evidence presented at trial." ( *People v. Livaditis*, *supra*, 2 Cal.4th at p. 787.)

Defendant argues the court found as aggravating two factors that can only be mitigating. The court stated that Penal Code section 190.3, factor (d) ("Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance."), "supports aggravation" because the "evidence shows that the defendant carefully planned each of these homicides" and "was not under the influence of any extreme mental or emotional disturbance." Defendant is correct that the mere absence of a mitigating factor is not itself aggravating ( *People v. Davenport* (1985) 41 Cal.3d 247, 289-290 [221 Cal .Rptr. 794, 710 P.2d 861]), but "the court may properly consider in aggravation the 'objective circumstances of the killing.'" ( *People v. Cooper*, *supra*, 53 Cal.3d at p. 848.) Any error in considering these circumstances under the wrong statutory factor did not affect the court's decision. ( *Ibid.*) The court also found aggravating some of the circumstances of defendant's life and relationship with his parents. The statement, while also technically error, came in the context of considering as *mitigating* other aspects of that same relationship and was not prejudicial.

Defendant argues the court misunderstood the concept of mitigation. The record does not support the claim. The court discussed the mitigating evidence in meticulous detail. Defendant pulls from context isolated statements and argues the court assumed "that mitigation meant little, if anything, more than insanity or diminished capacity."  For example, defendant quotes the court as saying, "There is,

36

United States District Court
For the Northern District of California

however, no evidence the defendant lacks the capacity to conform his conduct to the norms of society."  The court went on to observe, "There is no evidence the defendant ever suffered from any kind of insane delusion, paranoia, schizophrenia, or *any* mental disease or defect. He is described as well above average in intelligence and capable of learning. He has held good, responsible jobs during his life. He is easily trainable in various occupations."  (Italics added.) These comments were unobjectionable. Although evidence of the defendant's mental state does not have to rise to the level of insanity or diminished capacity to be offered or considered in mitigation, the fact that it is not of that caliber is certainly relevant to its weight. The court did *consider* the evidence in mitigation; it merely found the aggravating circumstances "far" outweighed the mitigating. ( *People v. Edwards*, *supra*, 54 Cal.3d at p. 847.) Defendant also argues without merit the court improperly considered his age in aggravation. ( *People v. Douglas* (1990) 50 Cal.3d 468, 539)

In addition to the mitigating and aggravating factors, the court discussed the strength of the evidence that defendant committed these crimes. In part, the court cited the fact the killings were "done with remarkable similarity." Among the similarities the court cited was that each of the victims was "a young Caucasian," and each of the women was "slender and extremely attractive."  Defendant seeks to transform this description of the similarity of the crimes into an implication "that the moral worth of the victims is, and the outcome of the sentencing should be, related to the victims' race and other immutable personal characteristics."  He suggests the court viewed the victims' race as a reason for imposing the death penalty, and goes so far as to  argue the judge must be disqualified so he can have a hearing before a court "uninfluenced by ... consideration of the victims' race."

Defendant's accusation that the court viewed race as a reason to impose the death penalty is as serious as it is baseless. The similarity of the crimes supports the inference that one person, defendant, committed each, and the court legitimately commented on that similarity in ruling on the modification motion. Nowhere in discussing the aggravating or mitigating factors did the court remotely suggest it considered the "moral worth" or race of the victims. We cannot condemn too strongly defendant's distortion of the court's comments in his attempt to inject a racial issue into this case where none exists.

Any error in the court's lengthy statement of reasons for denying the modification motion was harmless. The court did not consider the question close, which is most reasonable considering the evidence. We find no reasonable possibility any error affected the ruling. ( *People v. Benson*, *supra*, 52 Cal.3d at p. 813; *People v. Rodrigues*, *supra*, 8 Cal.4th at p. 1197.)

*Carpenter,* 15 Cal. 4th at 423-425.

Petitioner fails to demonstrate that the state court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law.[13]  *See* 28 U.S.C. § 2254(d)(1).   Petitioner first argues that it was reversible error for the trial court to rely

---

[13] As with Claim 22, the Court finds unpersuasive petitioner's argument that this claim must be considered *de novo* because the California Supreme Court did not address federal law in its rejection of the claim.  As noted, a state court's decision need not cite to, and a state court need not be aware of, federal law to pass muster under AEDPA; rather, "so long as neither the reasoning nor the result of the state-court decision contradicts [federal law]," the decision may be upheld.  *Early v. Packer*, 537 U.S. at 8.

on material contained in the probation report when it denied petitioner's motion to modify the verdict.  Petitioner's argument must fail.  To begin with, at the time of petitioner's trial, there was no California or federal law forbidding the review of a probation report prior to ruling on a motion for modification of the verdict.  Subsequently, in *People v. Lewis*, 50 Cal. 3d 262 (1990), the California Supreme Court has stated it is "preferable" for a trial court to defer review of the probation report until after a modification motion is resolved, *see id.* at 287, but even after *Lewis*, it generally is not considered reversible error for a trial court to first review the probation report, s*ee People v. Livaditis*, 2 Cal. 4th 759, 787 (1992).  Moreover, the California Supreme Court concluded that "[t]he record here shows that the [trial] court was not influenced by anything other than the evidence presented to the jury," *People v. Carpenter*, 15 Cal. 4th at 423, and petitioner fails to demonstrate such conclusion is unreasonable under clearly established federal law.

Petitioner next argues that it was error for the trial court to refer to the absence of two mitigating factors, extreme mental or emotional disturbance and certain aspects of his familial relationship, when it denied petitioner's motion to modify the verdict.  While the California Supreme Court agreed it was error to refer to the absence of a mitigating factor as potentially aggravating, the Supreme Court also held any such error was not prejudicial, in that the objective circumstances of a killing may be properly considered in aggravation and the trial court's reference to petitioner's family "came in the context of considering as *mitigating* other aspects of that same relationship." *See Carpenter,* 15 Cal. 4th at 423-424 (emphasis in original).  Further, given the strength of the aggravating evidence, including the circumstances of the charged crimes and petitioner's long criminal history of rape, robbery and murder, petitioner cannot demonstrate any such error was prejudicial; there was substantial aggravating evidence to support both the jury's sentence of death and the trial court's refusal to modify that sentence.  *See, e.g.*, *Zant v. Stephens*, 462 U.S. 862, 884 (1983) (holding "a death sentence supported by at least one valid aggravating circumstance need not be set aside . . . simply because another aggravating circumstance is "invalid."')

Petitioner also suggests that the trial court's reference to the appearance of the victims, when it cited the similarity of the charged crimes as an element of the strength of the evidence that

United States District Court
For the Northern District of California

1  petitioner was the perpetrator, in some way suggests that the trial court viewed the race of the

2  victims as a justification for imposition of the death penalty.  *See Carpenter,* 15 Cal. 4th at 424-425.

3  As the California Supreme Court reasonably found, such an accusation is "baseless"; rather, as that

4  court observed, "[t]he similarity of the crimes supports the inference that one person, defendant,

5  committed each, and the [trial] court legitimately commented on that similarity in ruling on the

6  modification motion."  *Id.*  Petitioner cites to no clearly established federal law suggesting that the

7  state court's decision was unreasonable.

8       Lastly, petitioner argues that multiple alleged errors in the trial court's decision to deny the

9  request for modification, specifically, the alleged errors discussed above, led to prejudice.  As the

10 state court reasonably found, however, there were no such errors to multiply.  At most, there was

11 one error, the trial court's reference to the absence of mitigation as potentially aggravating, and that

12 error was not prejudicial, particularly considering the exceptional number of aggravating

13 circumstances in the case.

14      Accordingly, no constitutional violation having been shown, this claim will be denied.

15 **XIII.  Claim 56:      Petitioner's Presence During Certain Discussions**

16      In Claim 56, petitioner contends his constitutional right to be present at all critical stages of

17 his criminal proceedings was violated because he was not present during certain discussions between

18 the trial court and his attorney.  In particular, petitioner alleges he was absent at five separate points

19 in the proceedings, three of which were considered by the California Supreme Court in a reasoned

20 opinion on direct appeal as follows.

21      **4.** *Defendant's Absence From Proceedings*

22            During selection of the penalty jury, defense counsel asked that the court
23      consider requests to be excused for hardship at the bench rather than in front of the
        other jurors. The court agreed if defendant waived his right to be present at the bench.
24      When defense counsel was reluctant to have defendant do so, the court considered the
        first few requests for hardship excusal in open court. Defense counsel again stated he
25      preferred to have them handled at the bench. The court yielded to this request after
        defendant personally waived his right to be present. Defendant argues his waiver was
26      invalid because the court required it as a condition to granting his request that
        hardship questions be considered at the bench. We disagree. Defendant had no right
27      to insist that hardship excuses be considered outside the presence of the other jurors.
        *(People v. Kelly* (1992) 1 Cal.4th 495, 518 & fn. 3 [3 Cal .Rptr.2d 677, 822 P.2d
28      385]; *People v. Clark* (1990) 50 Cal.3d 583, 596-597 [268 Cal .Rptr. 399, 789 P.2d
        127].) The *Hovey* rule, which requires individual questioning while death-qualifying

United States District Court
For the Northern District of California

the jury, does not extend to other matters. ( *Hovey v. Superior Court*, *supra*, 28 Cal.3d at p. 81, fn. 137.) It follows that defendant had no right to demand that the court question individual jurors at the bench and allow him to be present there, which would have created obvious logistical and security problems. Giving defendant a choice did not violate his rights. Moreover, defendant's absence from the bench conferences regarding hardship was not prejudicial. ( *People v. Hardy* (1992) 2 Cal.4th 86, 178 [5 Cal .Rptr.2d 796, 825 P.2d 781]; *People v. Beardslee*, *supra*, 53 Cal.3d at pp. 102-103; *People v. Grant* (1988) 45 Cal.3d 829, 845-846 [248 Cal .Rptr. 444, 755 P.2d 894].)

Before selecting the guilt jury, defense counsel suggested that, rather than sequestered questioning regarding the death penalty (see *Hovey v. Superior Court*, *supra*, 28 Cal.3d 1), the court explain the procedure of having two juries to the entire panel of prospective jurors and then ask if anyone could not sit on the case. The court agreed and stated it would ask necessary follow-up questions at the bench. Therefore, the court sometimes asked prospective jurors at the bench about their views on the death penalty and other matters. Apparently, defendant was not present at the bench conferences, although he was in court. Defendant contends that his "presence would have insured that the prospective jurors would have appreciated the magnitude and implication of the questions they were being asked." We disagree. Defendant was in the courtroom during the bench questioning, although apparently he was unable to hear it. The magnitude or implication of the questions was not diminished, and defendant suffered no prejudice. ( *People v. Hardy*, *supra*, 2 Cal.4th at pp. 177-178.)

Before he testified, Shane Williams, the witness who led the police to the murder weapon, asked to speak to the judge. At the prosecution's request, the court held an in camera hearing. Although defense counsel were present, the court denied their request that defendant be present. Williams expressed reluctance to testify because of concern about trial publicity. The court refused to issue an order limiting publicity and told Williams, "I don't do favors and I don't bargain and I don't make deals." Defendant contends that the hearing involved "the witness and the judge speaking on the record, under circumstances which might have a significant impact on what the witness would say when he testified before the jury." On the contrary, the hearing had nothing to do with the substance of the witness's testimony. Defendant was present at all times during the actual testimony. Moreover, defendant received daily transcripts of the proceedings. His presence at the brief proceeding bore no substantial relationship to his opportunity to defend against the charges. ( *People v. Johnson*, *supra*, 6 Cal.4th at p. 18.)

*Carpenter*, 15 Cal. 4th at 377-378.

The Supreme Court has recognized that "the right to personal presence at all critical stages of the trial . . . [is a] fundamental right[] of each criminal defendant." *Rushen v. Spain*, 464 U.S. 114, 117 (1983). The right derives from the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments. *Campbell v. Wood*, 18 F.3d 662, 671 (9th Cir. 1994) (*en banc*). The Confrontation Clause protects a defendant's right to face his accusers and applies to every stage of a trial. *See Illinois v. Allen*, 397 U.S. 337, 338 (1970); *see also United States v. Napier*, 463 F.3d 1040, 1042 (9th Cir. 2006) (holding Sixth Amendment protects

defendant's right to be present at sentencing).  Due process, on the other hand, protects a defendant's right to be present "at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure," *see Kentucky v. Stincer*, 482 U.S. 730 (1987), and not every event that occurs during such a proceeding is necessarily "critical," *see e.g., id.* at 746  (finding no due process violation based on defendant's exclusion from competency hearing of two child witnesses in sexual abuse case, where no questions regarding substantive testimony were asked); *see also United States v. Mitchell*, 502 F.3d 931, 973 (9th Cir. 2007) (*en banc*) (finding no violation under Due Process Clause or Confrontation Clause where trial judge met *ex parte* with Marshal on two occasions, the first to discuss security concerns regarding transfer for change of venue and thereafter to discuss defendant's announced refusal to be present at penalty phase).  Additionally, a  defendant can waive the right to personal presence provided he does so voluntarily, knowingly and intelligently.  *Campbell v. Wood*, 18 F.3d at 671.  Moreover, the Supreme Court has never held the exclusion of a defendant from a critical stage of the trial constitutes structural error, *see Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005) (*en banc*), and the Ninth Circuit has held the right to be present at all critical stages is subject to harmless error analysis, *see id.*

Here, as noted, the California Supreme Court found no constitutional violation occurred by reason of the above-described manner in which jury selection was conducted, and, as discussed below, the Court finds petitioner fails to demonstrate that the state court's reasoned opinion is contrary to, or an unreasonable application of, clearly established United States Supreme Court law, or that the state court's opinion relied on an unreasonable determination of the facts.

To begin with, petitioner cannot demonstrate that any of the proceedings referenced in the state court's opinion were critical under *Stincer*; "[the] privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'"  *See Stincer*, 482 U.S. at 745 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-106 (1934)).  Petitioner personally waived any right to be present during bench discussions concerning juror hardship, and cites to no case holding a defendant's presence is considered "critical" during such discussions.  Moreover, even if petitioner

41

United States District Court
For the Northern District of California

1   could show error, he cannot demonstrate his absence during those discussions, conducted at the

2   bench at his attorney's request, was in any way prejudicial to him.  *See Brecht*, 507 U.S. at 637.

3   Similarly, petitioner cannot point to any federal law establishing a right for a defendant to be

4   present at occasional discussions held at the bench during *voir dire*.  Petitioner was present in the

5   courtroom and has not shown how his presence at the bench would have contributed to the fairness

6   of the criminal proceedings.  *See, e.g. Rushen v. Spain*, 464 U.S. 114, 117-18 & n.2 (1983) (finding

7   harmless any error as to *ex parte* communication between judge and juror regarding prosecution's

8   brief reference during trial to crime, unrelated to those charged, as to which juror had knowledge).

9   Because he can show neither error nor prejudice, petitioner is not entitled to relief on the portion of

10  his claim pertaining to bench discussions during jury selection.

11  Petitioner likewise fails to demonstrate any error or prejudice resulting from his absence at

12  an *in camera* hearing regarding media coverage, held at the request of prosecution witness Shane

13  Williams, or that the state court's decision finding no error was unreasonable under federal law,

14  particularly given the trial judge's denial of the special consideration sought by the witness.

15  Consequently, petitioner fails to show he is entitled to habeas relief on this portion of his claim.  28

16  U.S.C. § 2254(d).  *See, e.g., United States v. Gagnon*, 470 U.S. 522, 527 (1985) (finding no due

17  process violation where defendant and his counsel not present at *in camera* meeting of judge, juror

18  and co-defendant's counsel concerning juror's concern on observing defendant sketching portraits of

19  jury).

20  In addition to the above claims pertaining to the conduct of various proceedings, the

21  Supreme Court, in a reasoned opinion on direct appeal, also considered a claim based on

22  proceedings concerning personal problems of petitioner's trial counsel.  Petitioner's lead attorney,

23  the Public Defender, "suffered from a chronic illness that occasionally either forced a continuance of

24  jury selection or forced the deputy [public defender] to appear alone on [petitioner's] behalf."

25  *Carpenter*, 15 Cal. 4th at 373.  Also during jury selection, the daughter of the deputy public defender

26  was a victim of a violent crime, after which he withdrew from representing petitioner and another

27  deputy public defender was appointed in his place.  Numerous discussions with the trial judge, some

28

**United States District Court**
For the Northern District of California

in open court and some in chambers, were held regarding petitioner's counsel.  On direct appeal, the

California Supreme Court found as follows:

> [D]efendant contends that some of these hearings were held in chambers in
> his absence, violating his right to be present. Although the record is not always clear,
> it appears that defendant was absent from the hearings in chambers; we will assume
> he was. We have held, however, "that the defendant's absence from various court
> proceedings, *even without waiver*, may be declared nonprejudicial in situations where
> his presence does not bear a 'reasonably substantial relation to the fullness of his
> opportunity to defend against the charge.'" ( *People v. Johnson* (1993) 6 Cal.4th 1, 18
> [23 Cal .Rptr.2d 593, 859 P.2d 673], italics added in *Johnson*.)

> Defendant's absence from some of the discussions in chambers did not
> substantially relate to his opportunity to defend against the charges. No issues related
> to guilt or innocence were considered. When defendant *was* present, the court
> explained to him the substance of what occurred. It kept him fully apprised of the
> significant events and obtained his consent to what would be done. Defendant's claim
> that he was merely "presented with a fait accompli and asked whether he concurred in
> it" unfairly characterizes the record. The court was always solicitous of defendant's
> wishes. The decisions on which everyone, including defendant, agreed–completing
> the jury selection with [the Public Defender] alone, bringing in a new attorney, and
> continuing the trial to allow new counsel to prepare–were reasonable under the
> circumstances. Nothing in the record suggests that any of the defense attorneys acted
> other than fully competently at all times. We see no error and no prejudice. (See also
> *People v. Hovey* (1988) 44 Cal.3d 543, 573-574 [244 Cal .Rptr. 121, 749 P.2d 776]
> [no error in excluding defendant from a hearing on the competency of his attorney].

*Carpenter*, 15 Cal. 4th at 376-377.

As with the above-discussed claims, petitioner fails to demonstrate that the California

Supreme Court's decision was unreasonable under clearly established federal law.  Petitioner cites to

no case law suggesting that his presence at such *in camera* hearings would have contributed "to the

fairness of the procedure."  *See Stincer*, 482 U.S. at 745.  As the state court held, and as the record

confirms, petitioner was kept fully apprised of the situation, and the trial court solicited his opinions

concerning how to proceed.  Petitioner agreed with the decisions made in that regard, and does not

contend those decisions would have been different had he been present at the *in camera* hearings.

Consequently, this portion of the claim will be denied.

The remaining events on which this claim is based were considered and rejected on the

merits by the California Supreme Court in a summary opinion.  In particular, petitioner contends that

he was not present at a hearing during the penalty phase, at which hearing certain aggravating

evidence was ruled admissible.  This portion of the claim likewise is unavailing.  Petitioner's

United States District Court
For the Northern District of California

1    counsel was present at the hearing and objected to the admission of the evidence in question, and

2    petitioner was present in court at the time the evidence was introduced at the trial.  Even assuming,

3    *arguendo*, petitioner's absence at the hearing amounted to error, this portion of the claim nonetheless

4    fails, as, given the strength and volume of the aggravating evidence in the case, petitioner is unable

5    to show prejudice.  *See Brecht*, 507 U.S. at 637.

6            Accordingly, the claim will be denied in its entirety.

7    **XIV.    Claim 58:    Fourth Amendment Claims**

8            In Claim 58, petitioner contends certain evidence was obtained through wrongful searches

9    and seizures and thereafter was improperly used against him at his trial.   Petitioner's claim is

10   unavailing.  To begin with, as petitioner must and does acknowledge, federal habeas review of

11   Fourth Amendment claims is barred by *Stone v. Powell*, 428 U.S. 465, 481-82, 494 (1976), unless

12   the state did not provide an opportunity for full and fair litigation of those claims.  Consequently,

13   even if the state court's determination of the Fourth Amendment issues was incorrect, such error will

14   not be remedied in a federal habeas corpus action so long as petitioner was provided a full and fair

15   opportunity to litigate those issues.  *See Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983).  "All

16   *Stone v. Powell* requires is the initial opportunity for a fair hearing," *Caldwell v. Cupp*, 781 F.2d

17   714, 715 (9th Cir. 1986), and "such an opportunity for a fair hearing forecloses [the federal court's]

18   inquiry, upon habeas corpus petition, into the trial court's subsequent course of action," *id.*

19           Further, it is the existence of a state procedure allowing an opportunity for full and fair

20   litigation of Fourth Amendment claims, rather than a defendant's actual use of those procedures, that

21   bars federal habeas consideration of such claims.  *See Gordon v. Duran*, 895 F.2d 610, 613-14 (9th

22   Cir. 1990) (denying habeas relief on Fourth Amendment claims; holding "[w]hether or not

23   [defendant] did in fact litigate . . . [the] Fourth Amendment claim in state court he [had] the

24   opportunity to do so").  California state procedure provides an opportunity for full litigation of any

25   Fourth Amendment claim, *see id.*; *see also Terrovona v. Kincheloe*, 912 F.2d 1176, 1178-79 (9th

26   Cir. 1990), *cert. denied*, 499 U.S. 979 (1991) (discussing factors relevant to determination of

27   opportunity for full and fair litigation).

28

Petitioner suggests that the *Stone* bar should not apply in capital habeas cases and that AEDPA calls *Stone* into question. Petitioner, however, cites to no clearly established federal law that in any way limits *Stone* to non-capital and/or pre-AEDPA cases. Indeed, as respondent correctly points out, the relevant authority is to the contrary. (*See* Respondent's Brief at 62-63 and cases cited therein.)

Accordingly, this claim will be denied.

**Conclusion**

For the foregoing reasons, Claims 19, 20, 22, 25, 26, 27, 28, 29, 30, 31, 44, 48, 56 and 58 in petitioner's First Amended Petition are DENIED.

**IT IS SO ORDERED.**

DATED: April 1, 2014



MAXINE M. CHESNEY
United States District Judge